## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

SANTA'S BEST CRAFT, LLC, a Delaware
limited liability company; SANTA'S BEST
CRAFT, an Illinois general partnership; and
H.S. CRAFT MANUFACTURING CO., a
Taiwanese corporation (Republic of China),

     Plaintiffs,

     vs.

ST. PAUL FIRE AND MARINE INSURANCE
COMPANY, a Minnesota corporation,

     Defendant.

CASE NO. **04C 1342**

**COMPLAINT FOR DECLARATORY
RELIEF AND BREACH OF CONTRACT**

**JURY TRIAL DEMANDED**

JUDGE GETTLEMAN

MAGISTRATE JUDGE DENLOW

**FILED**

FEB 2 0 2004

**MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT**



Plaintiffs SANTA'S BEST CRAFT, LLC, a Delaware limited liability company, SANTA'S BEST, an Illinois general partnership, and H.S. CRAFT MANUFACTURING CO., a Taiwanese corporation (Republic of China), Santa's Best Craft and H.S. Craft Manufacturing Co., being the members of Santa's Best Craft, LLC (collectively, "Plaintiffs"), file this Complaint seeking court-ordered relief on the grounds Defendant ST. PAUL FIRE AND MARINE INSURANCE CO. ("St. Paul"):

    (1)    Has a contractual obligation to provide Plaintiffs with a prompt and complete defense through its independent counsel in the lawsuit styled as *JLJ, Inc., et al. v. Santa's Best Craft, LLC, et al.*, pending in the United States District Court for the Southern District of Ohio, Dayton Division, Case No. C-3-02-00513, Judge Thomas M. Rose (the "*JLJ* Action");

    (2)    Has a contractual obligation to accept a reasonable settlement demand in the *JLJ* Action within St. Paul's policy limits;

    (3)    Has breached its contractual obligations to Plaintiffs by failing to promptly and completely accept its responsibility to defend Plaintiffs in the *JLJ* Action; and

(4)    St. Paul is obligated to pay all of the defense and settlement costs incurred by Plaintiffs in the *JLJ* Action.

## PARTIES

1.    Plaintiff Santa's Best Craft, LLC ("Santa's Best Craft") is a limited liability company organized under the laws of the State of Delaware with its principal place of business at 770 West Frontage Road, Suite 1130, Northfield, Illinois 60093.

2.    Plaintiff Santa's Best ("Santa's") is a general partnership under the laws of the State of Illinois with its principal place of business at 770 West Frontage Road, Suite 1160, Northfield, Illinois 60093. Santa's is a principal member of Santa's Best Craft.

3.    Plaintiff H.S. Craft Manufacturing Co. ("H.S. Craft") is a corporation organized under the laws of Taiwan (Republic of China) with its principal place of business at 4th Floor, #403, sec. 4, Jenai Road, Taipei, Taiwan, Republic of China. H.S. Craft is a principal member of Santa's Best Craft.

4.    Plaintiffs are insureds under St. Paul's policies.

5.    Defendant St. Paul is a Minnesota corporation with its principal place of business in St. Paul, Minnesota. St. Paul is in the business of issuing liability policies in Illinois and throughout the United States.

## JURISDICTION

6.    This is an action for declaratory relief pursuant to 28 U.S.C. § 2201. There is also jurisdiction pursuant to 28 U.S.C. § 1332. Santa's Best Craft is a citizen of Illinois and H.S. Craft is a citizen of Taiwan, both as to their places of principal business and states of incorporation respectively. St. Paul is a Minnesota corporation with its principal place of business in St. Paul, Minnesota.

## VENUE

7.     Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(a) and (c) in that St. Paul transacts business in the State of Illinois including the Northern District.

8.     St. Paul actively sells insurance policies in Illinois and is licensed by the Illinois Department of Insurance to do business in Illinois.

9.     Venue is proper in this district because the events giving rise to the claims alleged herein occurred in this district. Furthermore, some of the alleged wrongful conduct which provides the basis for the *JLJ* Action occurred within the Northern District of Illinois.

10.     Santa's Best Craft and Santa's maintain their principal places of business within the Northern District of Illinois.

11.     The insurance contracts, upon which this action is based, were issued in this district and were performed in the Northern District of Illinois.

## NATURE OF THE CASE

12.     This is an insurance coverage suit seeking a judicial declaration that under insurance policies issued to Plaintiffs, Defendant St. Paul had and has a contractual obligation:

a.     To defend and to reimburse defense fees (the term "defense fees" as used herein includes the total costs of defense, including attorneys' fees and other costs incurred in the *JLJ* Action) under insurance policies that provide for defense and indemnification for certain "advertising injury" claims made against Plaintiffs in lawsuits like the *JLJ* Action; and

b.     To accept and fund reasonable settlement offers within the policy limits since the potential liability faced by Plaintiffs in the *JLJ* Action is in excess of primary policy limits.

13.     This action also seeks damages for St. Paul's breach of its duty to defend Plaintiffs in the *JLJ* Action.

## ST. PAUL'S INSURANCE POLICIES

14.     St. Paul issued primary commercial general liability ("CGL") policies to Plaintiffs providing insurance coverage from January 1, 2002 through January 1, 2004.

15.     On or about January 1, 2002, St. Paul issued CGL form no. 47500, Rev. 1-01 as policy number CK01204882, providing coverage to Plaintiffs for, *inter alia*, "advertising injury." (A true and correct copy of the policy effective January 1, 2002 to January 1, 2003 is attached hereto and incorporated herein as **Exhibit "1."**)  St. Paul renewed this coverage without change effective January 1, 2003 to January 1, 2004, policy number CK01205353.

16.     The St. Paul CGL Policies provide Plaintiffs with "advertising injury" coverage with policy limits of $1 million. The Policies include the following relevant "advertising injury" provisions:

> **Advertising injury liability.** We'll pay amounts any protected person is legally required to pay as damages for covered advertising injury that:
>
> - results from the advertising of your products, your work, or your completed work; and
> - is caused by an advertising injury offense committed while this agreement is in effect.
>
> . . . .
> *Advertising injury* means injury, other than bodily injury or personal injury, that's caused by an advertising injury offense.
>
> *Advertising injury offense* means any of the following offenses:
>
> - Libel, or slander, in or with covered material.
>
> - Making known to any person or organization covered material that disparages the business, premises, products, services, work, or completed work of others.
>
> . . . .
> - Unauthorized use of any advertising idea or advertising material, or any slogan or title, of others in your advertising.
>
> *Advertising* means attracting the attention of others by any means for the purpose of:
>
> - seeking customers or supporters; or
> - increasing sales or business.
>
> *Advertising idea* means a manner or style of advertising that others use and intend to attract attention in their advertising.

*Advertising Material* means any covered material that:

- is subject to copyright law; and
- others use and intend to attract attention in their advertising.

. . . .

*Covered material* means any material in any form of expression, including material made known in or with any electronic means of communication, such as the Internet.

. . . .

*Personal injury* means injury, other than bodily injury or advertising injury, that's caused by a personal injury offense.

*Personal injury offense* means any of the following offenses:

- Making known to any person or organization covered material that disparages the business premises, products, services, work, or completed work of others.

. . . .

*Slogan* means a phrase that others use and intend to attract attention in their advertising.

But we won't consider slogan to include a phrase used as, or in, the name of:

- any person or organization, other than you; or
- any business, or any of the premises, products, services, work, or completed work, of any person or organization, other than you.

. . . .

## Who Is Protected Under This Agreement

. . . .

**Partnership or joint venture.** If you are shown in the Introduction as a named insured and a partnership or a joint venture, you are a protected person. Your partners or co-venturers, and their spouses, are protected persons only for the conduct of your business.

**Limited liability company.** If you are shown in the Introduction as a named insured and a limited liability company, you are a protected person. Your members are protected persons only for the conduct of your business. And your managers are protected persons only for their duties as your managers.

. . . .

## Exclusions – What This Agreement Won't Cover

. . . .

**Contract liability.** We won't cover injury or damage for which the protected person has assumed liability under any contract or agreement.

But we won't apply this exclusion to injury or damage for which the protected person would have liability without the contract or agreement.

Nor will we apply this exclusion to the liability of another to pay damages for:

. . . .

- personal injury or advertising injury sustained by others if you have assumed such liability under a covered contract made before the offense that causes such injury is committed.

Also, if you have agreed under the same covered contract to defend, or pay for the defense of, an indemnitee against a claim or suit for such injury or damage covered by this agreement, we'll defend the indemnitee against the claim or suit. But we'll do so because of that covered contract only if:

- that indemnitee isn't a protected person for that injury or damage;
- that claim or suit is for injury or damage for which you have assumed the liability of the indemnitee under the covered contract;
- the injury or damage is covered by this agreement;
- the claim or suit is made or brought against you and the indemnitee;
- we are defending you against the claim or suit under this agreement;
- all of our indemnitee defense control and authority requirements are fulfilled; and
- all of our indemnitee defense cooperation and notice requirements are fulfilled.

When we provide that contract liability indemnitee defense coverage, we'll do the following:

- We'll defend the indemnitee even if all of the allegations of the claim or suit are groundless, false, or fraudulent. But we won't have a duty to perform any other act or service.
- We'll pay all covered indemnitee defense expenses incurred by us in connection with such claim or suit. Such payments are in addition to the limits of coverage.

. . . .

**Intellectual property.** We won't cover injury or damage or medical expenses that result from any actual or alleged infringement or violation of any of the following rights or laws:

- Copyright.
- Patent.
- Trade dress.
- Trade name.
- Trade secret.
- Trademark.
- Other intellectual property rights or laws.

. . . .

Nor will we apply this exclusion to advertising injury that results from the unauthorized use of any:

. . . .

- copyrighted advertising material.
- trademarked slogan; . . .

. . . .
of others in your advertising.

. . . .

**Material previously made known or used.** We won't cover personal injury or advertising injury that results from:

- any material that was first made known before this agreement begins; or
- any advertising idea or advertising material, or any slogan or title, of others, whose unauthorized use in your advertising was first committed before this agreement begins.

17.     On or about January 1, 2002, St. Paul issued Umbrella Policy No. CK01204882, providing coverage to Plaintiffs for, *inter alia*, "advertising injury." (A true and correct copy of the Umbrella Policy effective January 1, 2002 is attached hereto and incorporated herein as **Exhibit "2."**) St. Paul renewed this coverage in policy number CK01205353, effective January 1, 2003 to January 1, 2004. St. Paul's Umbrella Policies provide Plaintiffs with "advertising injury" coverage with policy limits of $25 million.

18.     Relevant portions of St. Paul's Umbrella Policies are as follows:

**Advertising injury liability.** We'll pay amounts any protected person is legally required to pay as damages for covered advertising injury that:

- results from the advertising of your products, your work, or your completed work; and
- is caused by an advertising injury offense committed while this agreement is in effect.

. . . .

*Advertising injury* means injury, other than bodily injury or personal injury, that's caused by an advertising injury offense.

*Advertising injury offense* means any of the following offenses:

- Libel, or slander, in or with covered material.
- Making known to any person or organization covered material that disparages the business, premises, products, services, work, or completed work of others.

. . . .

- Unauthorized use of any advertising idea or advertising material, or any slogan or title, of others in your advertising.

*Advertising* means attracting the attention of others by any means for the purpose of:

- seeking customers or supporters; or
- increasing sales or business.

*Advertising idea* means a manner or style of advertising that others use and intend to attract attention in their advertising.

*Advertising Material* means any covered material that:

- is subject to copyright law; and
- others use and intend to attract attention in their advertising.

. . . .

*Covered material* means any material in any form of expression, including material made known in or with any electronic means of communication, such as the Internet.

. . . .

*Personal injury* means injury, other than bodily injury or advertising injury, that's caused by a personal injury offense.

*Personal injury offense* means any of the following offenses:

- Making known to any person or organization covered material that disparages the business premises, products, services, work, or completed work of others.

. . . .

*Slogan* means a phrase that others use and intend to attract attention in their advertising.

But we won't consider slogan to include a phrase used as, or in, the name of:

- any person or organization, other than you; or
- any business, or any of the premises, products, services, work, or completed work, of any person or organization, other than you.

. . . .

## Exclusions – What This Agreement Won't Cover

. . . .

**Contract liability.** We won't cover injury or damage for which the protected person has assumed liability under any contract or agreement.

. . . .

Nor will we apply this exclusion to the liability of another to pay damages if:

- you've assumed such liability under a contract or agreement; and
- such damages are covered by your Basic Insurance.

Also, we'll assume the duty to defend an indemnitee against a claim or suit for injury or damage covered by this agreement. But only when your Basic Insurer has the duty to defend that indemnitee and that duty ends because your Basic Insurer has paid:

- its limit of coverage for the event or offense that caused the claim or suit; or
- its total limit of coverage as described in the Coverage above reduced or exhausted Basic Insurance total limits section.

. . . .

**Intellectual property.** We won't cover injury or damage that results from any actual or alleged infringement or violation of any of the following rights or laws:

- Copyright.
- Patent.
- Trade dress.
- Trade name.
- Trade secret.
- Trademark.
- Other intellectual property rights or laws.

. . . .

Nor will we apply this exclusion to advertising injury that results from the unauthorized use of any:

. . . .

- trademarked slogan; . . .

. . . .

of others in your advertising.

. . . .

**Material previously made known or used.** We won't cover personal injury or advertising injury that results from:

- any material that was first made known before this agreement begins; or
- any advertising idea or advertising material, or any slogan or title, of others, whose unauthorized use in your advertising was first committed before this agreement begins.

### THE UNDERLYING ACTION

19.     On or about November 5, 2002, JLJ and Inliten (collectively, "JLJ") filed suit against Plaintiffs in federal district court for the Southern District of Ohio, Western Division, at Dayton, seeking declaratory judgment that Santa's Best Craft, LLC engaged in infringing activities via its advertisement for sale of seasonal decorative lighting products, asserting claims labeled as trademark infringement, trademark dilution, and false advertising. (A true and correct copy of the Complaint is attached hereto and incorporated herein as **Exhibit "3."**)  At the same time it filed its Complaint, JLJ sought a temporary restraining order and preliminary injunction.

20.     On January 6, 2003, Santa's Best Craft, LLC filed its Answer to the Complaint.

21.     On April 30, 2003, the court granted a preliminary injunction as to the trademark claims but denied it as to the trademark dilution, false advertising claims, and unfair competition.

22.     On September 19, 2003, plaintiffs in the underlying action filed an Amended Complaint naming as additional defendants Santa's, H.S. Craft as well as Monogram Licensing, Inc., which is Santa's Best Craft's trademark Licensor.  (A true and correct copy of the Amended

Complaint is attached hereto and incorporated as **Exhibit "4."**)

23.  The Amended Verified Complaint asserted causes of action labeled as:

a.  infringement of registered trademarks under Section 32 of the federal Lanham Act;

b.  false designation of origin under Section 43(a) of the federal Lanham Act;

c.  false advertising – 15 U.S.C. § 1125(a)(1)(B);

d.  trademark dilution under the federal Trademark Dilution Act – 15 U.S.C. § 1125(c);

e.  deceptive trade practice under Ohio Revised Code § 4165.03;

f.  civil conspiracy;

g.  piercing the veil of limited liability;

h.  unjust enrichment of Monogram Licensing.

24.  Except for the addition of Defendants Santa's, H.S. Craft and Monogram Licensing, Inc., the material allegations of the Amended Complaint regarding Plaintiffs are the same as those of the Complaint. The allegations of trademark infringement, trademark dilution, false advertising, and forms of unfair competition asserted against Plaintiffs in the *JLJ* Action trigger St. Paul's defense obligation under the "advertising injury" provisions of the policies St. Paul issued to Plaintiffs.

25.  The Answer to the Amended Complaint by Defendants therein (Plaintiffs herein) was filed on November 5, 2003.

26.  In December 2002, Santa's Best Craft, LLC filed a third-party complaint against John L. Janning individually and JLJ, Inc. ("Counterclaim"), asserting claims under the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), the Illinois Consumer Fraud and Deceptive Business Practices Act, common law, money damages pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act, commercial disparagement, and defamation. The last two counts in the Counterclaim seek monetary damages, and all other counts therein seek injunctive relief. Venue of the Counterclaim was subsequently transferred to the Southern District of

Illinois where it was consolidated with the *JLJ* Action for all purposes.

**THE ALLEGATIONS ASSERTED IN THE *JLJ* ACTION MEET EACH OF THE ELEMENTS OF THE THREE-PART TEST FOR "ADVERTISING INJURY" COVERAGE UNDER ST. PAUL'S PRIMARY AND UMBRELLA POLICIES**

27.     To establish the existence of a covered "advertising injury" claim, the following

elements must be satisfied:

(1)     an advertising activity;

(2)     allegations that fit into one of the named offenses; and

(3)     an injury that arises out of one of those offenses which was committed in

the course of advertising during the policy period.

**ELEMENT TWO OF THE THREE-PART TEST IS MET BECAUSE THE *JLJ* ACTION ALLEGES CONDUCT FALLING WITHIN THE EXPRESSLY ENUMERATED "ADVERTISING INJURY" OFFENSES CONTAINED IN ST. PAUL'S POLICIES**

**The Allegations Asserted Against Plaintiffs in the *JLJ* Action Fall Within St. Paul's "Advertising Injury" Coverage for "Unauthorized Use of Any Advertising Idea or Advertising Material . . . of Others in Your Advertising"**

28.     The "advertising injury" offense of "unauthorized use of any advertising idea or

advertising material . . . of others in your advertising" is further defined within St. Paul's primary

and umbrella policies as follows:

> ***Advertising idea*** means a manner or style of advertising that others use
> and intend to attract attention in their advertising.
>
> ***Advertising Material*** means any covered material that:
>
> •    is subject to copyright law; and
> •    others use and intend to attract attention in their advertising.

29.     As understood, the offense covers "unauthorized use of any manner or style of

advertising that others use and intend to attract attention in their advertising," and "unauthorized

use of any material that others use and intend to attract attention in their advertising that may be

copyrighted."

30.    The pertinent allegations of the Complaint establish a duty to defend under this offense based on the following allegations:

65.    Santa's Best has marketed "Stay-On" sets in such a way that, by trading on the goodwill associated with STAY LIT's name and trade dress, Santa's Best can confuse consumers in to believing that "Stay-On" sets accomplish the same thing as STAY-LIT sets at a cheaper price.

66.    Santa's Best has also used confusingly similar marks and trade dress to exploit the goodwill associated with STAY LIT light sets among retailers and other merchants who sell STAY LIT and other Christmas light products to the general public.

67.    There are numerous parallels between STAY LIT's trademarks and trade dress and the marketing of "Stay-On" sets that point to a self-evidently deliberate attempt by Santa's Best to trade off the goodwill associated with STAY LIT and confuse the public.

68.    First, Santa's Best has chosen a brand name "Stay-On" that is deliberately evocative of Plaintiff's "STAY LIT" mark.

. . . .

71.    From the beginning, STAY LIT sets have been sold in a unique and inherently distinctive packaging, featuring a dark blue box with generally white lettering and yellow and red highlights, and a clear plastic window to view the bulbs, and prominently displaying the STAY LIT name.

72.    "Stay-On" packages have all incorporated these elements in a way that is likely to confuse the public. "Stay-On" packages are all dark blue with generally white lettering and yellow and red highlights, and a clear plastic window to view the bulbs, and they prominently display the confusingly similar "Stay-On" name. (Compare Exhibits P through U with Exhibits V and W.)

73.    There is ample evidence that Santa's Best deliberately copied the STAY LIT trade dress in an effort to trade upon STAY LIT's goodwill.

. . . .

75.    In what was a self-evident attempt at deliberately copying, early versions of the "Stay On" package, which were shown to retailers buying for the 2002 Christmas season adopted all of the prominent features of the STAY LIT trade dress: the dark blue color in the background, with generally white lettering and yellow and red highlights, the clear plastic window and the deliberately similar name. (See Exhibit V). In addition, the early "Stay-On" package showed a nearly identical right panel with fir tree branches and a human hand clasping an empty socket between thumb and forefinger, while the remainder of the bulbs on the tree remain working. As on the STAY LIT package, the "Stay-On" package's photograph shows just a part of the hand, a right hand which appears to be entering the image from the right side of the package. The similarities between this package and

STAY-LIT packages are so obvious that it [*sic*] impossible to view them as a product of anything other than deliberate copying. (Compare Exhibits P and V.)

31. These allegations fairly meet each element as defined by the potential offense to be covered by the said Policy, to wit, they allege use of both the manner and style of advertising employed by JLJ, which JLJ concedes was used to attract customers to its products, and as alleged by JLJ, Plaintiffs to urge customers to buy their "Stay-On" products. The specific elements of the STAY LIT packaging and product are an "advertising idea" and "advertising material" of JLJ which was allegedly infringed by the Plaintiffs herein in their advertisements for the "Stay-On" product, including its packaging. The "Stay-On" packaging,(allegedly) like the STAY LIT packaging, is dark blue with white lettering and yellow and red highlights, as well as a clear plastic window to view the bulbs, with a prominent display of the "Stay-On" name as opposed to the STAY LIT name. As the content of Stay-On's packaging, as well as its method and mode of advertising, is alleged to be wrongful, it necessarily implicates all elements of the offense "unauthorized use of any advertising idea . . . of others in your advertising."

32. The allegations regarding the packaging of the "Stay-On" products using the same material, which may be trademarked (or copyrighted), that is used by JLJ to attract attention to its STAY LIT products necessarily implicates the offense of "unauthorized use of advertising material . . . of others in your advertising."

### The Allegations Asserted Against Plaintiffs in the *JLJ* Action Fall Within St. Paul's "Advertising Injury" Coverage for "Unauthorized Use of Any Slogan of Others in Your Advertising"

33. St. Paul's policy defines a "slogan" as "a phrase that others use and intend to attract attention in their advertising." Thus, Plaintiffs' "Stay-On" advertising slogan is allegedly evocative of JLJ's STAY LIT slogan. JLJ alleges that the identical advertising phrases which are described as slogans both of JLJ and the Plaintiffs were allegedly used by Plaintiffs and that this use in Plaintiffs' advertisements was injurious to JLJ. The above-referenced phrases are alleged by JLJ to be close enough to cause confusion among consumers as to the proper source of goods. No clearer fact allegations could exist that meet the "infringement of another's slogan in your

'advertisement'" offense in St. Paul's policy.

34.     The following pertinent paragraphs of the Complaint evidence facts that may create liability under this offense:

> 76.     Furthermore, all STAY LIT Christmas light sets from 1999 to 2001 all had a slogan imprinted on the package that read "Patent-pending 'Stay-on' feature keeps bulbs lit." This slogan still appears on STAY LIT packages of fifty bulbs.  (See Exhibits Q through S.)
>
> 77.     Santa's Best's "Stay-On" mark appears to derive directly from that phrase that appears on STAY LIT boxes.
>
> 78.     Furthermore, from 1998 through 2001, all STAY LIT's packages were printed with the slogan "String Stays Lit even if a bulb is loose or missing!"  (See Exhibits P through S.)
>
> 79.     The early "Stay-On" box was printed with the slogan: "Set Stays Lit . . . even if a bulb is loose or MISSING." (Emphasis and ellipsis original.)  This slogan, again, is a self-evident sign of deliberate copying by Santa's Best. (See Exhibit V.)
>
> 80.     From 1999 to 2000, all STAY LIT packages were labeled with the phrase: "New Technology." (See Exhibits P through S.)
>
> 81.     The early "Stay-On" box was also printed with the slogan: "New Technology." (See Exhibit V.)
>
> 82.     When combined with the use of the deliberately similar word mark, "Stay-On," Santa's Best's first trade dress was similar to the STAY LIT trade dress on nearly every particular, signifying a design on Santa's Best's part to misappropriate goodwill that was associated with STAY LIT light sets.
>
> 83.     Santa's Best used this confusingly similar trade dress to market "Stay-On" sets to retailers and other merchants who would be selling Christmas lights to consumers in the 2002 Christmas season.
>
> 84.     The deliberate copying of the STAY LIT trade dress was evidently intended to trade off the good will associated with STAY LIT lights, to convince store buyers that "Stay-On" sets incorporated a similar or identical technology, and convince buyers that they could market "Stay-On" sets to consumers as a cheaper version of STAY LIT.
>
> . . . .
> 87.     All STAY LIT sets of 100 or more bulbs have, since 2001, had the words "worry-free lighting" appearing immediately below the name "STAY LIT." The name and slogan appear together in the same configuration on five of the six panels of [*sic*] box. (See Exhibits T and U.)

88. The most recent "Stay-On" package has now incorporated the phrase "Dependable Lighting!" which appears immediately below the name "Stay-On" in the same configuration on five of the six panels of the box. (See Exhibit W.)

89. Since 2001, STAY LIT packages of 100 or more bulbs are all printed with a picture of five miniature bulbs, blown up in a larger than normal size, arranged in a cluster. (see Exhibits T and U.)

. . . .

91. The most recent "Stay-On" package also has the slogans "New Patented Technology" and "Set Stays On . . . even if a Bulb is Loose." which are strongly similar to the slogans on STAY LIT packages. (Compare Exhibits Q through S with Exhibit W.)

94. All of these similarities in name and packaging make packages of "Stay-On" lights appear confusingly similar to packages of STAY LIT lights. The self-evident reason for these similarities is that Santa's Best intended to trade off the goodwill developed by STAY LIT, among merchants and the general public.

35. The advertising slogans adopted and used for the "Stay-On" product as alleged by JLJ, include:

(1) The "Stay-On" name/slogan comes from the STAY LIT slogan "'Stay-on' feature keeps bulbs lit.";

(2) The "Stay-On" box was printed with the slogan "Set Stays Lit . . . even if a bulb is loose or MISSING." – compared to the slogan "String Stays Lit even if a bulb is loose or missing!";

(3) Both "Stay-On" and STAY LIT boxes are printed with the slogan "New Technology";

(4) "Stay-On" promotes its products with the slogan "Dependable Lighting!" – JLJ STAY LIT product uses "worry-free lighting."

### The Allegations Asserted Against Plaintiffs In The *JLJ* Action Fall Within St. Paul's "Advertising Injury" Coverage For "Disparagement"

36. St. Paul's primary and umbrella policies provide "personal injury" and "advertising injury" coverage for the offense of "making known to any person or organization covered material that disparages the business, premises, products, services, work, or completed work of others" where "covered material" is defined as "any material in any form of expression."

37. The tort of dilution under the Lanham Act, 15 U.S.C. § 1125(c) involves the tarnishment of the reputation of the trademark owner by the unauthorized association of the trademark owner's mark with something unsavory, unwholesome, or of poor quality.

38. The reputation and goodwill of a business are inextricably linked with the trademarks owned by that business.

39. Claims of dilution are within the reasonable lay person's understanding of the generic offense of "disparagement" as alleged by JLJ under federal and Ohio law. St. Paul's policies do not define what "disparagement" means.

40. Applying the common dictionary definition of the term used by St. Paul, courts have found "disparage" means "to discredit, degrade, belittle and diminish respect for." This is precisely what JLJ alleges is the injury Plaintiffs' advertising for their products has caused its products.

41. For example, JLJ alleges:

> 94. Santa's Best markets "Stay-On" sets as having a new technology that causes the bulbs to "stay on" even if a bulb is loose. However, because of the non-replaceable un-shunted "fuse bulbs," "Stay-On" sets can fail simply because a single bulb burns out. Consumers are accustomed to miniature lights with an internal shunt, which has been the standard in use for decades. Christmas light buyers expect that their sets will not fail when a single bulb burns out, which is exactly what will occur with "Stay-On" sets. Consumers also do not anticipate that if a bulb burns out, that it cannot be replaced. By representing that the "Stay-On" product is "dependable lighting" that will "stay on," Santa's Best misrepresents the nature, characteristics, and quality of its light sets.

> 95. Nowhere on the "Stay-On" package does it indicate that the light sets have a nonreplaceable bulb which, when it burns out, will cause the whole string to fail permanently. The fact that the bulb is nonreplaceable is only revealed in the instruction sheet on the inside of the package. Nowhere in the package does it reveal that, if the bulb burns out, it will ruin the whole string.

> 100. Santa's Best also used higher wattage bulbs to display the "Stay-On" set to merchants to leave the impression that "Stay-On" bulbs used brighter bulbs, just as STAY LIT sets do – in spite of their telling retail store Buyers the set used lower wattage bulbs to save energy. The sets that Santa's Best actually shipped did have the brighter bulbs, with no mention of the energy savings language they used when taking orders.

101.    Santa's Best also indicated on its first package – which deliberately copied the STAY LIT trade dress – that the sets would use the General Electric "Watt Miser" technology.    The product that Santa's Best shipped did not use Watt Miser technology.    (See Exhibits V and W.)

102.    Upon information and belief, Santa's Best has told its customers that the "Stay-On" set is the same as the STAY LIT set, only cheaper.

103.    Inliten has been told by some of its customers that they bought "Stay-On" sets because they thought they were the same thing, only cheaper.

104.    The effect of the "Stay-On" lights' infringement of STAY LIT's trademarks and trade dress has resulted in a substantial loss of sales for the 2002 Christmas season. Because of the "Stay-On" light sets' trading on the goodwill established by STAY LIT products among retailers and other vendors, many buyers purchased "Stay-On" light sets believing that they were the same thing and performed in the same manner as STAY LIT light sets.

105.    Likewise, the misrepresentation of the "Stay-On" sets nature, characteristics and quality has resulted in an increase of sales of "Stay-On" light sets and a misappropriation of sales that would otherwise have gone to STAY LIT.

107.    Furthermore, the harm caused by the deliberate confusion created by the "Stay-On" lights is not limited just to lost sales because of misappropriated goodwill by Santa's Best. Because "Stay-On" light sets contain non-replaceable, non shunted bulbs and conceal this fact from consumers by only revealing this fact on the instruction sheet *inside* the package and because these light sets will fail PERMANENTLY whenever the un-shunted bulb burns out, many consumers will regret purchasing a light set that markets itself as more likely to continue working than a standard miniature set.  As all bulbs eventually burn out, all these sets will inevitably fail and cause consumers to become angry and frustrated.

108.    Because of the confusion caused by the similarities in the "Stay-On" marks and packaging to STAY LIT's marks and packaging, the anger and frustration among consumers caused by the inferior "Stay-On" light sets will inevitably be misdirected at STAY LIT products.

109.    The similarities between the "Stay-On" and STAY LIT marks and packaging will dilute the strength of STAY LIT's marks and dress in the wholesale and retail markets, and will tarnish STAY LIT's reputation by associating it with a product that deceives the consumer and does not work as advertised.

> 110.   . . . A consumer backlash against STAY LIT caused by
> confusion and the failure of "Stay-On" light sets may completely shut
> down the burgeoning market for never-fail Christmas tree lights and
> completely destroy the results of years of building good will.  Absent
> an injunction against this misuse of marks, Inliten and JLJ will suffer
> immediate and irreparable injury.

42.     By alleging that Plaintiffs' "misuse" of a "confusing similar mark" "will continue

to cause great and irreparable injury to Inliten and JLJ, to their mark, and to the business and

goodwill represented thereby," JLJ alleges that Plaintiffs have discredited, degraded, belittled or

diminished respect for the JLJ mark, and the associated products.

43.     To the extent that St. Paul contends the dictionary definition is not appropriate for

adoption, the wording used in the "disparagement" offenses would be subject to two or more

reasonable constructions, compelling construction against St. Paul, which drafted the policy.

44.     To the extent it is alleged that the conduct at issue within St. Paul's policy period

did not constitute "advertising" so as to trigger "advertising injury" coverage for disparagement,

its "personal injury" coverage would require a defense.

45.     As a result of the foregoing, St. Paul is obligated to provide Plaintiffs with a

defense in the *JLJ* Action under the "disparagement" coverage afforded in its primary and

umbrella policies.

### ELEMENTS ONE AND THREE OF THE THREE-PART "ADVERTISING INJURY" TEST ARE SATISFIED BECAUSE JLJ'S COMPLAINT ALLEGES WRONGFUL CONDUCT "IN THE COURSE OF ADVERTISING"

46.     Plaintiffs are engaged in the business of selling decorative, long-lasting Christmas

tree lights under the moniker "STAY-ON."

47.     Plaintiffs conduct a variety of marketing activities in order to promote, advertise

and sell their products, including products bearing the "Stay-On" mark.  Plaintiffs maintained a

showroom at their Illinois corporate headquarters, where they displayed products and interacted

with customers, providing visual demonstrations of their "Stay-On" lighting products, as well as

the packaging of Plaintiffs' lights as it appeared on Plaintiffs' retail showroom floors.  Plaintiffs'

(Defendants in the JLJ Action) advertising activities include attendance at trade fairs and trade

shows in the summer of 2002, following the 2002 release of its final product and packaging which garnered Underwriters Laboratory's approval. (Copies of the visual point-of-purchase materials as they appeared for these trade show/trade fair displays exhibiting the final product during St. Paul's policy period, are attached hereto and incorporated herein as **Exhibit "5."**)

48.     The allegations asserted in the *JLJ* Action specifically allege that Plaintiffs have committed wrongful conduct through their advertising.

49.     For example, the JLJ Complaint alleges:

> 120.     Santa's Best's use of the confusingly similar "Stay-On" mark in its advertisements and on its merchandise, as described above, is a false designation of origin and is likely to cause confusion and mistake and to deceive potential consumers and the public as to the source, origin, or sponsorship of the "Stay-On" merchandise.
> . . . .
> 127.     Santa's Best, as described above, misrepresented, and continues to misrepresent, the nature, characteristics, and qualities of its "Stay-On" products in its commercial advertising and promotion.
> . . . .
> 138.     Santa's Best's use of the confusingly similar "Stay-On" mark in its advertisements and on unlicensed merchandise, as described above, is a deceptive trade practice that is likely to cause confusion and mistake and to deceive potential consumers and the public as to the source, origin, or sponsorship of Santa's Best's merchandise.

50.     Because JLJ alleges Plaintiffs' advertising activity in their advertisement of the "Stay-On" products creates liability for the torts of false advertising, deceptive trade practices under Ohio Revised Code § 4165.03, and false designation of origin under Section 43 of the Federal Lanham Act, JLJ necessarily alleges that these claims emanate from and depend upon Plaintiffs' advertising as a basis for liability. Indeed, each of the claims asserted by JLJ depends upon the similar fact allegations so that each and every asserted claim triggers a defense under St. Paul's policy.

51.     Further evidence that JLJ's claims for false advertising and various other forms of unfair competition, as well as deceptive trade practices, are, in part, based upon Plaintiffs' advertising activities, is found in JLJ's Prayer for Relief in which it asks the Court to enter judgment:

A.    Santa's Best be enjoined from:

. . . .

3.    Using any trademark, trade dress, name, logo, design or source designation of any kind in connection with Santa's Best's goods that is confusingly similar to any of Inliten's or JLJ's registered marks or is likely to cause confusion that such goods are produced or provided by Inliten, JLJ, or NOMA, or are sponsored or authorized by, or in any way connected with STAY LIT light products.

4.    Using any trademark, service mark, name, logo, design or source designation of any kind in connection with Santa's Best's goods that dilutes or is likely to dilute any of Plaintiffs' marks.

5.    Continuing to misrepresent the nature, characteristics and quality of their "Stay-On" product as it currently does on the packaging and in the advertising of the "Stay-On" light set.

B.    Santa's Best be ordered to turn over to Plaintiffs all . . . advertisements . . . or other materials that use or are marked with the Stay-On mark or any mark that is likely to cause confusion that such goods are in any way connected with STAY LIT light products.

52.    By specifically seeking an order enjoining alleged wrongful conduct by Plaintiffs and by specifically alleging the wrongful conduct, JLJ sought to enjoin the Plaintiffs herein from using packaging slogans, and trademarks as advertising, as well as requiring the defendants to turn over advertisements bearing the "Stay-On" mark or any similar mark. In addition, JLJ expressly sought to preclude Plaintiffs from engaging in categories of alleged wrongful conduct that are either expressly or impliedly advertising.

53.    Thus, the JLJ complaint alleges potentially covered claims because it seeks to attach liability under claims for relief that fall within one of the enumerated "advertising injury" offenses referenced above. These allegations depend on Plaintiffs' wrongful use of packaging for the "Stay-On" mark and products, in violation of JLJ's alleged rights to protection from false advertising and deceptive trade practices.

## ST. PAUL'S INTELLECTUAL PROPERTY EXCLUSION CANNOT BAR A DEFENSE FOR THE ASSERTED CLAIMS REFERENCED ABOVE

54.    St. Paul's primary and umbrella policies contain an exclusion for various intellectual property torts. An express exception to that exclusion, however, encompasses the

"unauthorized use of any . . . trademarked slogan of others in your 'advertising.'" The first two offenses referenced include express coverage for the fact allegations that would trigger the "trademarked slogan" exception. For the reasons referenced above, these claims also allege improper use of the "slogans" and "advertising ideas," of others in the Plaintiffs' advertising.

55.     JLJ also claims improper use of its slogans as a form of unfair competition. Thus, the alleged unauthorized use of the JLJ slogans either meets the exception for "trademarked slogan," or is a form of unfair competition, which renders the exclusion inapplicable.

56.     The offense of "unauthorized use of advertising material . . . of others in your advertising" is not subject to the intellectual property exclusion. The advertising material must simply be subject to copyright law. There is no language requiring infringement of a copyright in order for the offense to be implicated. Allegations of copyright infringement are not relevant in this case. It is only relevant that Santa's Best is alleged to be making an "unauthorized use of advertising material . . . of others in your advertising." Allegations and proof of copyright infringement are not required to trigger policy coverage.

57.     As to the "disparagement" offense, it is expressly not within the scope of the intellectual property exclusion, nor are the allegations of the complaint limited to the violation of intellectual property rights or laws. The Complaint expressly includes allegation of deceptive trade practice and false advertising claims, which are not actually or allegedly violative of any enumerated intellectual property tort. JLJ's alleged fact assertions also reasonably fall outside the scope of the undefined intellectual property rights or laws referenced in the exclusion. This is especially the case as policy exclusions are narrowly interpreted against the insurer. St. Paul cannot, therefore, assert its intellectual property exclusion to bar all potential coverage for what would otherwise be claims of "disparagement" expressly covered in the policy.

58.     The Intellectual Property Exclusion does not eliminate all potential coverage based upon the facts alleged by JLJ in its Complaint and its Amended Complaint.

## THE MATERIAL PREVIOUSLY MADE KNOWN
## EXCLUSION IS INAPPLICABLE

59.    The JLJ Complaint alleges Santa's Best engaged in wrongful conduct through its

advertising activities in 2002. There are also allegations regarding recent advertising activities in

the Amended Complaint, which could include activities in 2003, before the Preliminary

Injunction issued. The Complaint alleges:

> 39.    In 2002, after several years of watching Inliten successfully market the STAY LIT brand as a high-quality light set, Santa's Best began to market a new product, which it designated the "Stay-On" light set.
>
> . . . .
> 75.    In what was a self-evident attempt at deliberately copying, early versions of the "Stay On" package, which were shown to retailers buying for the 2002 Christmas season adopted all of the prominent features of the STAY LIT trade dress: the dark blue color in the background, with generally white lettering and yellow and red highlights, the clear plastic window and the deliberately similar name. (See Exhibit V). In addition, the early "Stay-On" package showed a nearly identical right panel with fir tree branches and a human hand clasping an empty socket between thumb and forefinger, while the remainder of the bulbs on the tree remain working. . . .
>
> . . . .
> 79.    The early "Stay-On" box was printed with the slogan: "Set Stays Lit . . . even if a bulb is loose or MISSING." (Emphasis and ellipsis original.) This slogan, again, is a self-evident sign of deliberate copying by Santa's Best. (See Exhibit V.)
>
> . . . .
> 81.    The early "Stay-On" box was also printed with the slogan: "New Technology." (See Exhibit V.)
>
> . . . .
> 83.    Santa's Best used this confusingly similar trade dress to market "Stay-On" sets to retailers and other merchants who would be selling Christmas lights to consumers in the 2002 Christmas season.

The Amended Complaint alleges:

> 87.    The most recent "Stay-On" package, which is currently being placed on store shelves and marketed to the public, copies all of the basic elements of the STAY LIT trade dress that inherently distinguish STAY LIT products: with the similar name, the dark blue box, white lettering ("Stay-On" boxes are dark blue with white lettering on one side, white with blue lettering on the other), yellow and red highlights, and the clear plastic window. This same package also deliberately copies many other features from STAY LIT trade dress in a way that will confuse the public and trade on STAY LIT's good will. (See Exhibit W.)
>
> . . . .

90.    The most recent "Stay-On" package has now incorporated the phrase "Dependable Lighting!" which appears immediately below the name "Stay-On" in the same configuration on five of the six panels of the box. (See Exhibit W.)

. . . .

93.    The most recent "Stay-On" package also has the slogans "New Patented Technology" and "Set Stays On . . . even if a Bulb is Loose." which are strongly similar to the slogans on STAY LIT packages. (Compare Exhibits Q through S with Exhibit W.)

60.    St. Paul's coverage was in effect from January 1, 2002 to January 1, 2004, during which JLJ alleges Santa's Best used JLJ''s advertising ideas, advertising materials and slogans without authorization.

61.    The exclusion requires the unauthorized use of JLJ's advertising idea, advertising material or slogan in Santa's Best advertising before January 1, 2002 and January 1, 2003 respectively.

62.    The JLJ Complaint contains no distinct allegations that the alleged wrongful conduct took place at any time prior to 2002, but the Amended Complaint contains separate and distinct allegations of wrongful acts occurring recently, which could potentially include from January 1, 2003 to April 30, 2003, when the Preliminary Injunction issued.

63.    St. Paul conceded the Complaint does not contain sufficient information to determine when the alleged improper marketing and advertising began in its December 23, 2002 denial letter. (A copy of the December 23, 2002 denial letter is attached hereto and incorporated herein as **Exhibit "6."**)

64.    St. Paul further acknowledged that the packaging and design were modified in a number of respects with the final packaging and copy being completed in May 2002. (**Exhibit "6"**)

65.    The JLJ Complaint filed November 2002 alleges that packages used in 2002 for advertising Santa's Best's products have incorporated slogans of JLJ's for which authorization was not obtained.

66.    The exclusion only applies prospectively to limit St. Paul's indemnity obligation.

By its own terms, the Material Previously Made Known Exclusion only precludes coverage for injury that actually results from material first made known or from unauthorized use of a slogan or advertising idea of another in advertising prior to policy inception.

67.     The exclusion does not preclude coverage for injury resulting from allegedly unauthorized use or material first made known during the policy period as is alleged here.

### PLAINTIFFS' TENDER OF THE *JLJ* ACTION AND ST. PAUL'S WRONGFUL DENIAL OF COVERAGE

68.     St. Paul's policies require that Plaintiffs provide notice of any claim potentially covered under the Policy. On or about August 7, 2002, Plaintiffs provided prompt notice to St. Paul of the claims by JLJ as alleged in JLJ's cease and desist letter. (A copy of the cease and desist letter is attached hereto and incorporated herein as **Exhibit "7."**)

69.     Santa's Best followed up with St. Paul by providing dates within St. Paul's policy period when the allegedly offending final package design and wording were shown to customers.

70.     On October 23, 2002, St. Paul responded, denying a defense and coverage thereunder. (A copy of St. Paul's October 23, 2002 denial letter is attached hereto and incorporated herein as **Exhibit "8."**)

71.     The St. Paul denial letter stated:

> The potentially covered claim falls squarely within the Intellectual Property exclusion of the policy. Separately and in addition, it appears that any potential advertising offense began prior to inception of the St. Paul policy and would be precluded by the Material previously made known exclusion.

72.     Nevertheless, the denial letter conceded that the packaging and copy for the "Stay-On" products was not finalized until May 2002 in order to respond to requests from Underwriters Laboratories and that these goods were separately and distinctly promoted within St. Paul's policy, thereby vitiating any potential applicability of the "material previously made known" exclusion.

73.     St. Paul also contended that the phrase STAY LIT cannot qualify as a slogan because it is not a phrase and because it is the name of a product or an organization other than

Santa's Best. A "slogan" need not be made up of multiple words. But STAY LIT is a phrase and a slogan. Additionally, the "slogans" at issue are not just STAY LIT but a number of different phrases used by JLJ to promote its STAY LIT products which became the subject of advertisements associated with the promotion of "Stay-On" products by Plaintiffs, including "string stays lit even if a bulb is loose or missing."

74.     St. Paul also denied that any claim of false representation, despite its fact content, could not fall within any "advertising injury" offense and does not seek to analyze the applicability of the "unauthorized use of an advertising idea or advertising material" offense in this context. No analysis of the fact allegations of disparagement, which create potential liability under torts not cognizable as intellectual property claims, is offered by St. Paul.

75.     On November 7, 2002, Plaintiffs provided St. Paul with a copy of the Complaint filed by JLJ.

76.     St. Paul issued a denial letter on December 23, 2002 refusing to defend Santa's Best Craft on the identical basis it denied its contractual obligations upon tender of the initial claim. (**Exhibit "6"**)

77.     On January 8, 2004, Plaintiffs provided the Amended Complaint and Answer to Amended Complaint and Counterclaims to St. Paul.

78.     On January 13, 2004, St. Paul acknowledged its denial upon tender of the Amended Complaint affirming its December 23, 2002 denial.

79.     On January 28, 2004, St. Paul contacted counsel for Plaintiffs indicating St. Paul was belatedly undertaking its coverage investigation based upon a review of the Complaint and Amended Complaint, despite the fact that the allegations in each pleading are in all material respects identical except for the addition of several defendants.

80.     St. Paul has not defended the *JLJ* Action. St. Paul has not defended the *JLJ* Action even under a reservation of rights. St. Paul has also failed to seek declaratory relief for a determination that it has no duty to defend the *JLJ* Action.

81.     St. Paul's refusal to defend Plaintiffs in the *JLJ* Action was unreasonable and in

direct contravention of established law.

82.     St. Paul's refusal to defend Plaintiffs in the *JLJ* Action was wrongful and constituted a material breach of the insurance contracts between Plaintiffs and St. Paul.

83.     Because of St. Paul's breach of its defense obligations it is estopped from denying coverage under the Policies.

84.     Should St. Paul agree to defend Plaintiffs in the *JLJ* Action based upon its review of the Amended Complaint and belated investigation, St. Paul's defense obligation will relate back to the initial tender of defense.

85.     The Amended Complaint simply adds three defendants to the *JLJ* Action, along with allegations regarding each of their alleged wrongful conduct that was not previously included in the Complaint allegations.

86.     At most, the Amended Complaint simply clarifies the allegations included in the original Complaint. However, Plaintiffs contend the Complaint allegations sufficiently establish St. Paul's duty to defend, thus any defense obligation St. Paul may agree to undertake relates back to the tender of the initial Complaint in November 2002.

## FIRST CAUSE OF ACTION

### (Declaratory Judgment re Duty to Defend and Settle)

87.     Plaintiffs incorporate by this reference each and every allegation set forth in the preceding paragraphs of this Complaint as though fully realleged herein.

88.     This is an action for declaratory judgment pursuant to the Declaratory Judgment Act. An actual controversy exists between the parties herein. This Court has authority to issue declaratory judgment concerning their respective rights and duties.

89.     It is necessary and proper that this Court adjudicate and declare that the allegations asserted in the *JLJ* Action may fall within the insurance policy provisions for "advertising injury" issued to Plaintiffs by St. Paul.

90.     Therefore, it is necessary and proper that this Court adjudicate and declare that St. Paul:

      a.     Has and had a duty to defend Plaintiffs, under its policies, in the *JLJ* Action from November 2002;

      b.     Has and had a duty to pay all attorneys' fees and costs incurred through Plaintiffs' retained independent counsel at the reasonable rates charged by said counsel, with interest accruing thereon at the legal rate; and

      c.     Has and had an obligation to accept a reasonable offer to settle the *JLJ* Action within policy limits.

      d.     Has engaged in vexatious and unreasonable conduct by refusing to defend Santa's Best when there was a clear potential for coverage based upon the Complaint allegations and for failing to seek a declaratory judgment on its duty to defend.

## SECOND CAUSE OF ACTION

### (Breach of Contract – Duty to Defend)

91.     Plaintiffs incorporate by this reference each and every allegation set forth in the preceding paragraphs of this Complaint as though fully realleged herein.

92.     As more fully alleged above, valid contracts exist between Plaintiffs and St. Paul, namely the St. Paul policies.

93.     Plaintiffs fully performed and complied with all of the obligations and conditions pursuant to the St. Paul policies, except those obligations and conditions that were waived or excused.

94.     Plaintiffs tendered the *JLJ* Action to St. Paul as required by notice provisions of St. Paul's policies.

95.     St. Paul has denied its obligation to defend Plaintiffs in the *JLJ* Action.

96.     By failing to promptly and completely accept its contractual obligation to defend Plaintiffs in the *JLJ* Action, St. Paul materially breached the terms of the St. Paul policies. As a direct and proximate result of St. Paul's material breach of the St. Paul policies, Plaintiffs have suffered and continue to suffer damage in an amount to be proven at trial, plus interest thereon at the maximum legal rate from date of invoice.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs SANTA'S BEST CRAFT, LLC, SANTA'S BEST, and H.S. CRAFT MANUFACTURING CO. pray for judgment against defendant ST. PAUL FIRE AND MARINE INSURANCE CO. as follows:

A. The Court declare that St. Paul was and is obligated to provide Plaintiffs a prompt and complete defense in the action styled as *JLJ, Inc., et al. v. Santa's Best Craft, LLC, et al.*, Case No. C-3-02-00513, United States District Court for the Southern District of Ohio, Dayton Division, Judge Thomas M. Rose;

B. The Court declare that St. Paul's obligation to provide a defense began with the tender of the Complaint on November 5, 2002 and continues;

C. The Court declare that St. Paul has and had a duty to pay all attorneys' fees and costs incurred through Plaintiffs' retained counsel at the reasonable rates charged by said counsel, with interest accruing thereon at the legal rate from date of invoice;

D. Plaintiffs may control the defense of the *JLJ* Action through their retained independent counsel;

E. The Court declare that St. Paul has a duty to accept a reasonable settlement offer, within Policy limits, to settle the *JLJ* Action;

F. The Court declare that St. Paul materially breached its contract with the Plaintiffs herein by failing to promptly and completely accept its contractual obligation to defend Plaintiffs in the *JLJ* Action;

G. The Court declare St. Paul's conduct has been vexatious and unreasonable;

H. The Court award attorneys' fees incurred by Plaintiffs in this coverage action, penalties, interest, and other damages pursuant to applicable Illinois law, including 215 Ill Comp. Stat. Ann. 5/155, against St. Paul;

I. For costs of suit herein; and

J. For such other and further relief as the Court may deem just and proper.

Dated: February 20, 2004

SANTA'S BEST CRAFT, LLC, SANTA'S BEST
and H.S. CRAFT MANUFACTURING CO.

By: _____
    One of Their Attorneys

Mitchell Bryan
Gary I. Blackman
LEVENFELD PEARLSTEIN
Attorneys for Plaintiffs
2 North La Salle Street, Suite 1300
Chicago, IL 60602
Tel:  (312) 346-8380
Fax:  (312) 346-8434

Of Counsel:
David A. Gauntlett
James A. Lowe
GAUNTLETT & ASSOCIATES
18400 Von Karman, Suite 300
Irvine, CA 92612
Tel:  (949) 553-1010
Fax:  (949) 553-2050

# DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all causes of action for which a jury trial is permitted.

Dated: February 20, 2004

SANTA'S BEST CRAFT, LLC, SANTA'S BEST
and H.S. CRAFT MANUFACTURING CO.

By: _____
One of Their Attorneys

Mitchell Bryan
Gary I. Blackman
LEVENFELD PEARLSTEIN
Attorneys for Plaintiffs
2 North La Salle Street, Suite 1300
Chicago, IL 60602
Tel: (312) 346-8380
Fax: (312) 346-8434

Of Counsel:
David A. Gauntlett
James A. Lowe
GAUNTLETT & ASSOCIATES
18400 Von Karman, Suite 300
Irvine, CA 92612
Tel: (949) 553-1010
Fax: (949) 553-2050

EXHIBIT LIST

Exhibit "1"      St. Paul CGL Policy No. CK01204882 for the period 2002 to 2003

Exhibit "2"      St. Paul Umbrella Policy No. CK01204882 for the period 2002 to 2003

Exhibit "3"      JLJ Complaint

Exhibit "4"      Amended Complaint

Exhibit "5"      Visual Point-Of-Purchase materials

Exhibit "6"      St. Paul's December 23, 2002 denial letter

Exhibit "7"      JLJ cease and desist letter

Exhibit "8"      St. Paul's October 23, 2002 denial letter



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

# Civil Cover Sheet

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use <u>only</u> in the Northern District of Illinois.

---

**Plaintiff(s): Santa's Best Craft, LLC, a Delaware limited liability company; Santa's Best Craft, an Illinois general partnership; and H.S. Craft Manufacturing Co., a Taiwanese Corporation (Republic of China)**

**Defendant(s):St. Paul Fire and Marine Insurance Company, a Minnesota corporation**

County of Residence: Cook

County of Residence:

Plaintiff's Atty:    Mitchell Bryan
Levenfeld Pearlstein
2 North LaSalle, Suite 1300,
Chicago IL 60602
312-346-8380

Defendant's Atty:

**04C 1342**

---

II. Basis of Jurisdiction:    **4. Diversity (complete item III)**

JUDGE GETTLEMAN

III. Citizenship of Principal Parties
**(Diversity Cases Only)**

MAGISTRATE JUDGE DENLOW

Plaintiff:- **4 IL corp or Principal place of Bus. in IL**
Defendant:- **5 Non IL corp and Principal place of Business outside IL**

IV. Origin :    **1. Original Proceeding**

V. Nature of Suit:    **190 Other Contract**

VI.Cause of Action:    **28 U.S.C. Section 2210 and 28 U.S.C. Section 1332; breach of contractual obligations**

VII. Requested in Complaint
Class Action:**No**
Dollar Demand:**Declaratory Relief**
Jury Demand:**No**

FILED-ED4
04 FEB 20 PM 2:21
CLERK
U.S. DISTRICT COURT

VIII. This case **IS NOT** a refiling of a previously dismissed case.

---

Signature: _Clifford E. Greene_

Date: _2/20/04_

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

### EASTERN DIVISION

In the Matter of

Santa's Best Craft, LLC, a Delaware limited liability company; Santa's Best Craft, an Illinois general partnership; and H.S. Craft Manufacturing Co., a Taiwanese corporation (Republic of China),

Plaintiffs

v.

St. Paul Fire and Marine Insurance Company, a Minnesota Corporation

Defendant

# 04C 1342

Case Number:

## JUDGE GETTLEMAN

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

## SANTA'S BEST CRAFT, LLC., SANTA'S BEST CRAFT and H.S. CRAFT MANUFACTURING CO.

MAGISTRATE JUDGE DENLOW

| (A) | (B) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME Mitchell Bryan | NAME Christopher S. Griesmeyer |
| FIRM Levenfeld Pearlstein | FIRM Levenfeld Pearlstein |
| STREET ADDRESS 2 North LaSalle, Suite 1300 | STREET ADDRESS 2 North LaSalle, Suite 1300 |
| CITY/STATE/ZIP Chicago IL 60602 | CITY/STATE/ZIP Chicago IL 60602 |
| TELEPHONE NUMBER 312-346-8380 / FAX NUMBER 312-346-8434 | TELEPHONE NUMBER 312-346-8380 / FAX NUMBER 312-346-8434 |
| E-MAIL ADDRESS mbryan@lplegal.com | E-MAIL ADDRESS cgriesmeyer@lplegal.com |
| IDENTIFICATION NUMBER 6183011 | IDENTIFICATION NUMBER 6269851 |
| MEMBER OF TRIAL BAR? YES ☑ NO ☐ | MEMBER OF TRIAL BAR? YES ☐ NO ☑ |
| TRIAL ATTORNEY? YES ☑ NO ☐ | TRIAL ATTORNEY? YES ☐ NO ☑ |
| | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |

| (C) | (D) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME | NAME |
| FIRM | FIRM |
| STREET ADDRESS | STREET ADDRESS |
| CITY/STATE/ZIP | CITY/STATE/ZIP |
| TELEPHONE NUMBER / FAX NUMBER | TELEPHONE NUMBER / FAX NUMBER |
| E-MAIL ADDRESS | E-MAIL ADDRESS |
| IDENTIFICATION NUMBER | IDENTIFICATION NUMBER |
| MEMBER OF TRIAL BAR? YES ☐ NO ☐ | MEMBER OF TRIAL BAR? YES ☐ NO ☐ |
| TRIAL ATTORNEY? YES ☐ NO ☐ | TRIAL ATTORNEY? YES ☐ NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |

# SEE CASE FILE FOR EXHIBITS