**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**

SANTA'S BEST CRAFT, LLC, a Delaware )
limited liability company; SANTA'S BEST )
CRAFT, an Illinois general partnership; and )
H.S. CRAFT MANUFACTURING CO., a )
Taiwanese corporation (Republic of China), )
)
       Plaintiffs, )
)
   vs. )
)
ST. PAUL FIRE AND MARINE INSURANCE )
COMPANY, a Minnesota corporation, )
)
       Defendant. )
)
)
)

**FILED**

APR 15 2004

Judge Robert W. Gettleman
United States District Court

CASE NO.: 04 C ~~1341~~ 1342

Hon. Robert W. Gettleman

DOCKETED
APR 22 2004

---

## NOTICE OF FILING

To: See Service List Attached

    PLEASE TAKE NOTICE that on the 15th day of April, 2004, we caused to be filed with the Clerk of Court, PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, a copy of which is attached hereto and herewith served upon you.

Dated: April 15, 2004

SANTA'S BEST CRAFT, LLC, SANTA'S BEST
and H.S. CRAFT MANUFACTURING CO.

By: _____
    One of Their Attorneys

Mitchell Bryan
Gary I. Blackman
LEVENFELD PEARLSTEIN
Attorneys for Plaintiffs
2 North La Salle Street, Suite 1300
Chicago, IL 60602
Tel: (312) 346-8380
Fax: (312) 346-8434
H:\51900\51913\NOF 4-15-04

1

| | |
|---|---|
| **STATE OF ILINOIS** | ) |
| | ) **SS.** |
| **COUNTY OF COOK** | ) |

## CERTIFICATE OF SERVICE

Sandy Brown, a non-attorney, being first duly sworn on oath, deposes and states that she served the foregoing **Notice of Filing and Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Partial Summary Judgment,** true and correct copies hand delivered via messenger from 2 North LaSalle Street, Chicago, Illinois, 60602, before 5:00 p.m., this 15th day of April, 2004, to the person(s) listed on the Service List attached.

_____
Sandy Brown

Subscribed and sworn to before me
this 15th day of April, 2004

_____
Notary Public

```
OFFICIAL SEAL
RENE WILLIAMSON
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 6-12-2004
```

## SERVICE LIST

Shaun McParland Baldwin
D.J. Sartorio
Jason M. Craft
Tressler, Soderstrom, Maloney & Priess
233 South Wacker Drive
Sears Tower, 22nd Floor
Chicago, Illinois 60606

IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF ILLINOIS

FILED

APR 15 2004

Judge Robert W. Gettleman
United States District Court

| | |
|---|---|
| SANTA'S BEST CRAFT, LLC, a Delaware limited liability company; SANTA'S BEST CRAFT, an Illinois general partnership; and H.S. CRAFT MANUFACTURING CO., a Taiwanese corporation (Republic of China), | ) CASE NO.: 04 C 1341 1342 ) ) ) |
| Plaintiffs, | ) MEMORANDUM OF LAW IN ) SUPPORT OF SANTA'S' MOTION FOR ) PARTIAL SUMMARY JUDGMENT |
| vs. | ) ) |
| ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a Minnesota corporation, | ) ) ) |
| Defendant. | ) ) |

DOCKETED
APR 22 2004

# TABLE OF CONTENTS

**Page**

I. SUMMARY OF FACTS................................................................................................1

    A.    Relief Sought by Santa's Herein ..............................................................1

    B.    St. Paul's Policies Provide Coverage for the Claims of Unauthorized Use of Another's Slogans, Advertising Ideas or Advertising Materials ..........1

    C.    Santa's Business Is Advertising and Selling Christmas Lights .....................2

    D.    Claim and Suit Against Santa's, Defense Denied....................................2

    E.    St. Paul Refuses to Defend Complaint and Amended Complaint .....................3

II. ST. PAUL OWES SANTA'S A DEFENSE UNDER ILLINOIS LAW .......................4

    A.    The Duty to Defend Arises When the Complaint Allegations State a Claim Potentially Within Coverage .........................................................4

    B.    The Allegations in the JLJ Complaint Assert Claims for "Advertising Injury" Offenses Potentially Covered by the St. Paul Policy.........................4

          1.    The Complaint Allegations Satisfy Each Element of the Three-Part Test for "Advertising Injury" .................................................4

          2.    Part One of Element One Is Satisfied by the Offense of "Unauthorized Use of Any Advertising Idea or Advertising Material . . . of Others".......................................................5

          3.    The Allegations Asserted Against Santa's in the *JLJ* Action Also Fall Within St. Paul's "Advertising Injury" Coverage for the Offense of "Unauthorized Use of Any Slogan of Others . . . ."............................................................................7

          4.    Part Two of Element One and Element Two of the Three-Part "Advertising Injury" Test Is Satisfied Because JLJ'S Complaint Alleges Wrongful Conduct "in the Course of Advertising"..............................................................................8

          5.    Element Three Is Satisfied Because No Policy Exclusion Completely Eliminates the Potential for Coverage....................10

               a.    St. Paul Has Burden of Proving Application of an Exclusion..........................................................10

               b.    The "Material Previously Made Known" Exclusion Does Not Apply Because the Complaint Alleges Wrongful Conduct During St. Paul's Policy Period..............10

               c.    The Intellectual Property Exclusion Is Inapplicable to the JLJ Claims..............................................12

III.  ST. PAUL IS ESTOPPED FROM RAISING ANY DEFENSES TO COVERAGE BY ITS OUTRIGHT DENIAL OF IT DEFENSE DUTY ...................14

IV.  CONCLUSION .........................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Central Mut. Ins. Co. v. StunFence, Inc.,*
  292 F. Supp. 2d 1072 (N.D. Ill. 2003) .......................................................4, 5, 6, 9

*Cincinnati Ins. Co. v. Zen Design Group, Ltd.,*
  329 F.3d 546 (6th Cir. (Mich.) 2003) ..........................................................7, 8, 13

*Corporate Risk Int'l, Inc. v. Assicurazioni Generali, S.p.A.,*
  No. 95-1440-A, 1996 U.S. Dist. LEXIS 19720 (E.D. Va. Mar. 15, 1996).........................13

*Curtis-Universal, Inc. v. Sheboygan Emerg. Med. Servs., Inc.,*
  43 F.3d 1119 (7th Cir. (Wis.) 1994) .................................................................9

*U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia,*
  898 F.2d 914 (3d Cir. (Pa.) 1990) .................................................................13

*Hugo Boss Fashions, Inc. v. Federal Ins. Co.,*
  252 F.3d 608 (2d Cir. (N.Y.) 2001) ...............................................................14

*Petersen Sand & Gravel, Inc. v. Maryland Cas. Co.,*
  881 F. Supp. 309 (N.D. Ill. 1995) ................................................................14

*SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharms., Inc.,*
  211 F.3d 21 (2nd Cir. 2000).......................................................................13

## STATE CASES

*Employers Ins. v. Ehlco Liquidating Trust,*
  186 Ill. 2d 127 (1999) ...........................................................................14

*Illinois Emasco Ins. Co. v. Northwestern Nat'l Cas. Co.,*
  337 Ill. App. 3d 356 (1st Dist. 2003) ...........................................................4, 11

*Johnson Press of Am., Inc. v. Northern Ins. Co.,*
  339 Ill. App. 3d 864 (2003) ......................................................................10

*Lexmark Int'l, Inc. v. Transp. Ins. Co.,*
  327 Ill. App. 3d 128 (1st Dist., 3d Div., 2001) ....................................................8

*Murphy v. Urso,*
  88 Ill. 2d 444 (1981) ............................................................................14

*United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.,*
  144 Ill. 2d 64 (1991) .............................................................................4

## DOCKETED CASES

*KLA-Tencor Corp. v. Travelers Indemnity Co. of Illinois,*
  No. C-02-05641 RMW, 2003 U.S. Dist. LEXIS 10456 (N.D. Cal.
  (San Jose Div.) Apr. 11, 2003) ........................................................................................12

*Taco Bell Corp. v. Continental Casualty Co.,*
  No. 01 C 0438, 2003 U.S. Dist. LEXIS 4289 (N.D. Ill. March 12, 2003) ........................11

## FEDERAL STATUTES

Section 5(k) (1909 Copyright Act) ........................................................................................13

17 U.S.C. § 102(a)5 (Copyright Act)....................................................................................13

17 U.S.C. § 302 (Copyright Act) ..........................................................................................13

## I.  SUMMARY OF FACTS

### A.  Relief Sought by Santa's Herein

Santa's, Santa's Best Craft, LLC, ("SBC") Santa's Best and H.S. Craft Manufacturing Co. (collectively "Santa's"), seek summary adjudication of St. Paul Fire and Marine Insurance Company's ("St. Paul") duty to defend Santa's in a suit styled as *JLJ, Inc., et al. v. Santa's Best Craft, LLC, et al.*, Case No. C-3-02-00513, Southern District of Ohio, Western Division, at Dayton (the "*JLJ* Action"). Santa's further seek adjudication that St. Paul breached its defense obligation by refusing to defend Santa's in the *JLJ* Action from the date of tender of the claim.

### B.  St. Paul's Policies Provide Coverage for the Claims of Unauthorized Use of Another's Slogans, Advertising Ideas or Advertising Materials

The St. Paul policies that were in effect from January 1, 2002 to January 1, 2004, policy numbers CK01204882 and CK0205353 (collectively referred to as "Policies"), contain the following pertinent provision [**Separate Statement of Undisputed Facts ("SSUF") ¶ 8**]:

> **Right and duty to defend a protected person.**
>
> **We'll have the right and duty to defend** any protected person against a **claim or suit for injury or damage covered by this agreement.** We'll have such right and duty even if all of the allegations of the claim or suit are groundless, false or fraudulent. [Emphasis added.]

The same St. Paul Policies also contain the following "advertising injury" provisions [**SSUF ¶ 9**]:

> **Advertising injury liability.** We'll pay amounts any protected person is legally required to pay as damages for covered advertising injury that:
>
> • results from the advertising of your products, your work, or your completed work; and
> • is caused by an advertising injury offense committed while this agreement is in effect. . . . .
>
> *Advertising injury* means injury, other than bodily injury or personal injury, that's caused by an advertising injury offense.
>
> *Advertising injury offense* means any of the following offenses: . . . .
>
> • Unauthorized use of any advertising idea or advertising material, or any slogan or title, of others in your advertising.
>
> *Advertising* means attracting the attention of others by any means for the purpose of:

- seeking customers or supporters; or
- increasing sales or business.

*Slogan* means a phrase that others use and intend to attract attention in their advertising.
But we won't consider slogan to include a phrase used as, or in, the name of:

- any person or organization, other than you; or
- any business, or any of the premises, products, services, work, or completed work, of any person or organization, other than you.

## C.  Santa's Business Is Advertising and Selling Christmas Lights

Santa's are in the business of manufacturing and selling to retailers decorative, long-lasting Christmas tree lights under the moniker "Stay-On." [SSUF ¶¶ 4, 5]  Santa's conducts a variety of marketing activities to promote, advertise and sell their products, including the products bearing the "Stay-On" mark.  Santa's maintained a showroom at their Illinois headquarters, where they display products (including accused packaging), providing visual demonstrations of their "Stay-On" lighting products and interacting with customers.  Santa's advertising activities include attendance at trade fairs and trade shows in the fall of 2002, following the 2002 release of its final product and packaging after receiving Underwriters Laboratory's approval. [SSUF ¶ 6]

## D.  Claim and Suit Against Santa's, Defense Denied

On August 7, 2002, JLJ and Inliten (collectively, "JLJ") sent a cease and desist letter to Santa's asserting claims including use of advertising materials and slogans.  [SSUF ¶ 12] Santa's immediately notified St. Paul of the claim.  [SSUF ¶ 13]  On October 23, 2002, St. Paul denied any defense or indemnity obligation for the claims asserted by JLJ. [SSUF ¶ 14]  In its letter, St. Paul claimed that the phrase STAY LIT was not a slogan because it is not a JLJ phrase, was the name of a product or organization other than SBC, and that "the potentially covered claim falls squarely within the Intellectual Property exclusion of the policy."  St. Paul also claimed that "it appears that any potential advertising offense began prior to inception of the St. Paul policy and would be precluded by the Material previously made known exclusion." [SSUF ¶ 14]  Contrary to that assertion, St. Paul conceded the packaging and copy for SBC's products remained in development and was not finalized until May 2002, and that these goods

were separately and distinctly promoted during the St. Paul policy period. [SSUF ¶ 15]

On November 5, 2002, JLJ sued SBC for damages and injunctive relief under claims for trademark infringement, trademark dilution, and false advertising, alleging that SBC engaged in infringing activities via its advertisement for sale of seasonal decorative lighting products. [SSUF ¶¶ 16, 17] At the same time, JLJ also sought a temporary restraining order and preliminary injunction. SBC tendered the defense on November 7, 2002. [SSUF ¶ 24]

### E. St. Paul Refuses to Defend Complaint and Amended Complaint

On December 23, 2002, St. Paul essentially reissued its previous denial letter and refused to defend SBC in the *JLJ* Action. [SSUF ¶ 25] St. Paul did not identify any new facts nor did it rely on any additional provisions of the policy in disclaiming its defense obligation. *Id.* St. Paul asserted that "[g]iven the absence of coverage under the insuring agreement and Intellectual Property exclusion, there is no need at this time to investigate further . . ." St. Paul requested no additional information including on the progress of the underlying case. *Id.* On September 19, 2003, JLJ filed an Amended Complaint naming as additional defendants Santa's Best, H.S. Craft Manufacturing ("H.S. Craft") and Monogram Licensing, Inc., which is SBC's trademark Licensor. [SSUF ¶ 26] **Except for the addition of the identified defendants, the material allegations of the Amended Complaint regarding Santa's allegedly wrongful conduct are essentially the same as those of the Complaint.** [SSUF ¶ 27] Santa's provided the Amended Complaint to St. Paul on January 8, 2004. [SSUF ¶ 29] On January 28, 2004, St. Paul belatedly reported it was undertaking its coverage investigation to investigate JLJ's claims, although the Complaint and Amended Complaint are identical in all material respects. [SSUF ¶¶ 27, 31]

**Both the Complaint and Amended Complaint include allegations of Santa's' wrongful conduct in its advertising and marketing of its "Stay On" products.** [SSUF ¶ 28] The alleged wrongful conduct includes unauthorized use of JLJ's slogans and advertising materials associated with its STAY LIT products. [SSUF ¶ 20] While JLJ alleged trademark infringement, JLJ also alleged Santa's wrongfully used its slogans and other advertising materials, potentially covered claims within the Policy's "advertising injury" coverage.

## II.    ST. PAUL OWES SANTA'S A DEFENSE UNDER ILLINOIS LAW

### A.    The Duty to Defend Arises When the Complaint Allegations State a Claim Potentially Within Coverage

Illinois courts have long held that an insurer owes a duty to defend its insured when the complaint alleges facts stating a claim potentially within the policy's coverage.[1]  The Illinois Supreme Court provided a synopsis of how an insurer should determine its defense obligation:[2]

> To determine an insurer's duty to defend its insured, the court must look to the allegations of the underlying complaints.  **If the underlying complaints allege facts within or potentially within policy coverage, the insurer is obliged to defend** its insured even if the allegations are groundless, false, or fraudulent. (*Thornton v. Paul* (1978), 74 Ill. 2d 132.)  **An insurer may not justifiably refuse to defend an action against its insured unless it is clear from the face of the underlying complaints that the allegations fail to state facts which bring the** case within, or potentially within, the policy's coverage.  (*Conway v. Country Casualty Insurance Co.* (1982), 92 Ill. 2d 388.)  Moreover, if the underlying complaints allege several theories of recovery against the insured, **the duty to defend arises even if only one such theory is within the potential coverage of** the policy. *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187.  [Emphasis added.]

An insurer may refuse to defend only when the complaint, considered with the policy, precludes all possibility of coverage.[3]

### B.    The Allegations in the JLJ Complaint Assert Claims for "Advertising Injury" Offenses Potentially Covered by the St. Paul Policy

#### 1.    The Complaint Allegations Satisfy Each Element of the Three-Part Test for "Advertising Injury"

The existence of a potentially covered "advertising injury" claim is established under the policy language, here at issue,[4] by allegations in the complaint which meet each of the following elements:

---

[1] *Maryland Cas. Co. v. Peppers*, 64 Ill. 2d 187, 193 (1976) ("If the complaint alleges facts within the coverage of the policy or potentially within the coverage of the policy the duty to defend has been established.").

[2] United States Fidelity & Guaranty Co. v. Wilkin Insulation Co., 144 Ill. 2d 64, 73 (1991).

[3] *Illinois Emasco Ins. Co. v. Northwestern Nat'l Cas. Co.*, 337 Ill. App. 3d 356, 358 (1st Dist. 2003).

[4] *Central Mut. Ins. Co. v. StunFence, Inc.*, 292 F. Supp. 2d 1072, 1076 n.3 (N.D. Ill. 2003) ("*Winklevoss Consultants v. Federal Ins. Co.*, 991 F. Supp. 1024, 1030-31 (N.D. Ill. 1998) applied a somewhat similar test, but it listed factors that were uniquely related to the policy at issue in that case and that are not at all applicable here.").

(1)     allegations that fit into one of the named offenses, including an advertising activity and causal nexus between advertising and the offense where that is an element of the offense;

(2)     an injury that arises out of one of those offenses; and

(3)     none of the specified exclusions apply.[5]

### 2.    Part One of Element One Is Satisfied by the Offense of "Unauthorized Use of Any Advertising Idea or Advertising Material . . . of Others"

The "advertising injury" offense of "unauthorized use of any advertising idea or advertising material . . . of others in your advertising" is sub-defined in the Policy [SSUF ¶ 9]:

*Advertising idea* means a manner or style of advertising that others use and intend to attract attention in their advertising.

*Advertising Material* means any covered material that:

- is subject to copyright law; and
- others use and intend to attract attention in their advertising.

A reasonable understanding of this offense in the Policy is that it contemplates: unauthorized use of any manner or style of advertising that others use intending to attract attention in their advertising, or unauthorized use of any copyrightable material that others use intending to attract attention in their advertising. The Complaint and its exhibits establish a duty to defend under this offense based on the following allegations:

65.     Santa's Best has marketed "Stay-On" sets in such a way that, by trading on the goodwill associated with STAY LIT's name and trade dress, Santa's Best can confuse consumers in to believing that "Stay-On" sets accomplish the same thing as STAY-LIT sets at a cheaper price.
. . . .
67.     There are numerous parallels between STAY LIT's trademarks and trade dress and the marketing of "Stay-On" sets that point to a self-evidently deliberate attempt by Santa's Best to trade off the goodwill associated with STAY LIT and confuse the public.
. . . .
71.     From the beginning, STAY LIT sets have been sold in a unique and inherently distinctive packaging. featuring a dark blue box with generally white lettering and yellow and red highlights, and a clear plastic window to view the bulbs, and prominently displaying the STAY LIT name.

72.     "Stay-On" packages have all incorporated these elements in a way that is likely to confuse the public. "Stay-On" packages are all dark blue with

---

[5] *StunFence*, 292 F. Supp. 2d 1072.

generally white lettering and yellow and red highlights, and a clear plastic window to view the bulbs, and they prominently display the confusingly similar "Stay-On" name. (Compare Exhibits P through U with Exhibits V and W.) [SSUF ¶ 19]

These allegations state a potential claim for "unauthorized use of another's advertising ideas or advertising material" in that they assert use of both the manner and style of advertising employed by JLJ, which JLJ alleges was used to attract customers to its products, and that Santa's used the ideas and material to urge customers to buy their "Stay-On" products. The specific content and elements of the STAY LIT packaging and product are an "advertising idea" and "advertising material" of JLJ which was allegedly infringed by Santa's in their advertising and marketing of the "Stay-On" products. The content of the Stay-On packaging, and Santa's' method and mode of advertising, is alleged to be wrongful, thus, necessarily implicating all elements of the offense "unauthorized use of any advertising idea . . . of others in your advertising."

In *StunFence*, 292 F. Supp. 2d at 1079, Judge Shadur, analyzing similar policy language, found that a straightforward reading required only that the claimant "suffered an injury that arose out of StunFence's use of its 'advertising idea.'" While trademark infringement claims (here excluded by the intellectual property exclusion) met the test in *StunFence*, so did analogous unfair competition claims not predicated on the use of the trademark there at issue, "Power Fence."[6] So, here, the distinct term "Stay-On" was used instead of the trademarked phrase "STAY LIT," and consumer confusion over the use of the former phrase was asserted that did not depend upon trademark infringement.

---

[6]The court reasoned (*Id.* at 1079-80):

> [The claimant alleged] that StunFence made statements in trade industry periodicals that StunFence owned and developed the technology and maintained proprietary rights over that technology – characteristics that purportedly describe the Power Fence. And of course [the claimant] asserted that it suffered harm as a result of StunFence's advertising. In combination those allegations are more than sufficient to generate Central's duty to defend under the Primary Policy's coverage of injuries arising from the "use of another's advertising idea in your 'advertising.'"

### 3. The Allegations Asserted Against Santa's in the *JLJ* Action Also Fall Within St. Paul's "Advertising Injury" Coverage for the Offense of "Unauthorized Use of Any Slogan of Others . . . ."

St. Paul's policy defines a "slogan" as "a phrase that others use and intend to attract attention in their advertising." [SSUF ¶ 9] The Complaint alleges facts that create potential liability for "unauthorized use of another's slogan."

77. Santa's Best's "Stay-On" mark appears to derive directly from that phrase that appears on STAY LIT boxes.

78. Furthermore, from 1998 through 2001, all STAY LIT's packages were printed with the **slogan** "String Stays Lit even if a bulb is loose or missing!" (See Exhibits P through S.)

79. The early "Stay-On" box was printed with the **slogan**: "Set Stays Lit . . . even if a bulb is loose or MISSING." (Emphasis and ellipsis original.) This **slogan**, again, is a self-evident sign of deliberate copying by Santa's Best. (See Exhibit V.)

. . . .

87. All STAY LIT sets of 100 or more bulbs have, since 2001, had the words "worry-free lighting" appearing immediately below the name "STAY LIT." The name and **slogan** appear together in the same configuration on five of the six panels of [*sic*] box. (See Exhibits T and U.)

88. The most recent "Stay-On" package has now incorporated the phrase "Dependable Lighting!" which appears immediately below the name "Stay-On" in the same configuration on five of the six panels of the box. (See Exhibit W.)

. . . .

91. The most recent "Stay-On" package also has the **slogans** "New Patented Technology" and "Set Stays On . . . even if a Bulb is Loose." which are **strongly similar to the slogans** on STAY LIT packages. (Compare Exhibits Q through S with Exhibit W.) [Emphasis added.] [SSUF ¶ 20]

JLJ alleges that Santa's use virtually identical advertising phrases, which JLJ describes as slogans, in Santa's' advertisements. JLJ claims Santa's' use of the term "Stay-On" derives directly from its slogan "'Stay-on' feature keeps bulbs lit," which is not JLJ's business or product name. [SSUF ¶ 21] JLJ further claims that Santa's' use of JLJ's phrases/slogans is wrongful and allegedly results in consumer confusion as to the source of goods and leads to lost sales and injury to JLJ. [SSUF ¶ 18]

The phrases JLJ alleges Santa's wrongfully use to advertise their products satisfy the definition of "slogan." While "phrase" is not defined, the criteria set forth in numerous recent cases is satisfied by JLJ's allegations. [SSUF ¶ 21] In *Cincinnati Ins. Co. v. Zen Design Group,*

*Ltd.*, 329 F.3d 546, 557 (6th Cir. (Mich.) 2003), the wrongful use of the moniker "Wearable Light" stated a potential claim for infringement of a slogan, triggering the insurer's defense duty, even though stated causes of action were trademark and trade dress infringement. *Id.* at 547-48.[7] Here, JLJ states claims for trademark infringement and trade dress infringement, yet specifically alleges that the phrases used to advertise its products are "slogans," which it claims Santa's wrongfully used in advertising Santa's' products. These distinct allegations of wrongful use of JLJ's slogans distinguish this case from others where the underlying plaintiff failed to plead factual allegations that certain phrases were its slogans or advertising idea.[8]

   4.   **Part Two of Element One and Element Two of the Three-Part "Advertising Injury" Test Is Satisfied Because JLJ'S Complaint Alleges Wrongful Conduct "in the Course of Advertising"**

JLJ specifically asserts that Santa's committed wrongful conduct through their advertising. JLJ makes numerous allegations of Santa's' wrongful advertising conduct.

   120.   Santa's Best's use of the confusingly similar "Stay-On" mark in its **advertisements** and on its merchandise, as described above, is a *false designation of origin* and is likely to cause confusion and mistake and to deceive potential consumers and the public as to the source, origin, or sponsorship of the "Stay-On" merchandise.
   . . . .
   127.   Santa's Best, as described above, misrepresented, and continues to misrepresent, the nature, characteristics, and qualities of its "Stay-On" products **in its commercial advertising and promotion.**
   . . . .
   138.   Santa's Best's use of the confusingly similar "Stay-On" mark in its **advertisements and on unlicensed merchandise**, as described above, is a deceptive trade practice that is likely to cause confusion and mistake and to deceive potential consumers and the public as to the source, origin, or sponsorship of Santa's Best's merchandise. [SSUF ¶ 18] [Emphasis added.]

JLJ's allegations that Santa's' advertisements using the "Stay-On" mark creates liability show that JLJ's claims emanate from and depend upon Santa's' advertising as a basis for liability.

---

[7]*Zen Design Group*, 329 F.3d at 556-57 ("Slogan is defined in the dictionary as a 'distinctive cry, phrase, or motto of any party, group, manufacturer, or person; catchword or catch phrase.' RANDOM HOUSE UNABRIDGED DICTIONARY 1800 (2d ed. 1993). . . . Relying on other common definitions of slogan, 'The Wearable Light,' as used in the ASP advertisement also can be considered '[a] brief attention-getting phrase used in advertising or promotion.' *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1120, 988 P.2d 568, 90 Cal. Rptr. 2d 647 (1999).").

[8]*Lexmark Int'l, Inc. v. Transp. Ins. Co.*, 327 Ill. App. 3d 128, 141-42 (1st Dist., 3d Div., 2001).

Indeed, each of the claims asserted by JLJ depends upon the same fact allegations so that each and every asserted claim triggers a defense under St. Paul's policy. St. Paul has not disputed that JLJ alleged Santa's committed wrongful acts in its advertising.

Further evidence that JLJ's claims for false advertising, unfair competition and deceptive trade practices are in part based upon Santa's' advertising is found in JLJ's Prayer for Relief:

> A.   Santa's Best be enjoined from:
> . . . .
> 5.    Continuing to misrepresent the nature, characteristics and quality of their "Stay-On" product as it currently does **on the packaging and in the advertising** of the "Stay-On" light set.
>
> B.    Santa's Best be ordered to turn over to Santa's all . . . **advertisements** . . . or other materials that . . . is likely to cause confusion that such goods are in any way connected with STAY LIT light products. [SSUF ¶ 22] [Emphasis added.]

JLJ sued expressly to enjoin Santa's from using slogans on its packaging and in advertising. The JLJ complaint alleged liability for claims that potentially fall within one of the enumerated "advertising injury" offenses. These potentially covered claims allege Santa's' wrongful use of slogans and advertising material in their packaging and in advertising their "Stay-On" products, which slogan and advertising materials JLJ exclusively claims. Although the causes of action are labeled as false advertising and deceptive trade practices, the fact allegations state claims for unauthorized use of another's advertising material, advertising ideas and slogans, which are covered offenses that have no commensurately named tort.[9]

As in *StunFence*, "[A]llegations that [the insured] . . . made false representations related to its own product provide a sufficient link between [the insured's] advertising and the injury – and the [policy] demands no more." *StunFence*, 292 F. Supp. 2d at 1080.

---

[9] *Curtis-Universal, Inc. v. Sheboygan Emerg. Med. Servs., Inc.*, 43 F.3d 1119, 1122 (7th Cir. (Wis.) 1994) ("The insurer's obligations are not circumscribed by the plaintiff's choice of legal theories. The plaintiff's complaint, upon which the insurer's duty depends, need not even set forth the plaintiff's legal theories. *See, e.g.*, Fed. R. Civ. P. 8(a); Fed. R. Civ. P. Form 9. What is important is not the legal label that the plaintiff attaches to the defendant's (that is, the insured's) conduct, but whether that conduct as alleged in the complaint is at least arguably within one or more of the categories of wrongdoing that the policy covers. . . . **Nor is the insurer allowed to escape from his duties of defense and indemnification by reference to the core or dominant character of the plaintiff's allegations.**" (emphasis added)).

5. **Element Three Is Satisfied Because No Policy Exclusion Completely Eliminates the Potential for Coverage**

   a. **St. Paul Has Burden of Proving Application of an Exclusion**

St. Paul bears the burden of establishing the applicability of an exclusion, its concession of inability to prove exclusions eliminates its ability to satisfy that burden.

> In Illinois, **it is the insurer's burden to affirmatively demonstrate the applicability of an exclusion.** *Board of Education of Maine Township High School District No. 207 v. International Insurance Co.*, 292 Ill. App. 3d 14, 18, 225 Ill. Dec. 987, 684 N.E.2d 978 (1997). Furthermore, **Illinois courts will liberally construe any doubts as to coverage in favor of the insured**, especially when the insurer seeks to avoid coverage based on an exclusion to the policy. *Yamada Corp. v. Yasuda Fire & Marine Insurance Co.*, 305 Ill. App. 3d 362, 371, 238 Ill. Dec. 822, 712 N.E.2d 926 (1999).[10] [Emphasis added.]

   b. **The "Material Previously Made Known" Exclusion Does Not Apply Because the Complaint Alleges Wrongful Conduct During St. Paul's Policy Period**

The St. Paul Policies [SSUF ¶ 9] contains the following exclusion:

> **Material previously made known or used.** We won't cover personal injury or advertising injury that results from:
> - any material that was first made known before this agreement begins; or
> - any advertising idea or advertising material, or any slogan or title, of others, whose unauthorized use in your advertising was first committed before this agreement begins.

JLJ alleges Santa's engaged in wrongful conduct through their advertising in 2002 and 2003, the St. Paul policy periods. [SSUF ¶¶ 17, 19] The Complaint contains no distinct allegations that the wrongful conduct occurred at any time prior to 2002. JLJ specifically alleges Santa's Best marketed its new "Stay-On" light set in 2002. [SSUF ¶ 19] Both the Complaint and the Amended Complaint juxtapose "early" use of JLJ's slogans with the "most recent" incorporation of other JLJ slogans indicating two separate time periods. [SSUF ¶¶ 19, 28] Since the Complaint was filed in late 2002, the "most recent" wrongful use of JLJ's slogans is logically within 2002, during the St. Paul policy term.[11]

St. Paul has conceded there is insufficient information to determine when Santa's'

---

[10]*Johnson Press of Am., Inc. v. Northern Ins. Co.*, 339 Ill. App. 3d 864, 871-72 (2003).

[11]The same analysis applies to allegations in the Amended Complaint, filed in late 2003, which alleges "recent" wrongful acts in Santa's' advertising.

alleged improper marketing and advertising began. [SSUF ¶ 15] St. Paul further acknowledged that Santa's' packaging and design were modified in a number of respects with the final packaging and copy being completed in May 2002, well within St. Paul's policy period. *Id.* Based on St. Paul's own admissions, the Material Previously Made Known exclusion cannot eliminate all potential for coverage, as Santa's may be liable for damages that result from unauthorized use of JLJ's slogans and advertising materials that first occurred in 2002 or 2003.

The JLJ complaint explicitly identifies the slogans allegedly wrongfully used by Santa's, separate and distinct material in different time periods, even though the product being advertised is the same. [SSUF ¶ ¶ 19, 20, 21] Recently, Judge Leinenweber of this court issued an opinion discussing applicability of a similar exclusion, *Taco Bell Corp. v. Continental Casualty Co.*, No. 01 C 0438, 2003 U.S. Dist. LEXIS 4289 (N.D. Ill. March 12, 2003). In *Taco Bell*, the court found that the prior publication exclusion applicable there did not eliminate any potential for coverage because the insurer could not establish that different advertising ideas and concepts utilized in numerous commercials were the same material as one commercial that aired prior to inception of the insurer's second policy. *Id.* at *26-27. The court's construction of the exclusion required that the complaint unambiguously allege that all of the offending commercials featuring the Chihuahua be published prior to the policy's inception. *Id.* at *27-28.

Given this recent interpretation of similar exclusionary language, St. Paul would have to prove that all of Santa's' allegedly unauthorized use of JLJ's slogans, advertising ideas and advertising materials first occurred before January 1, 2002. The JLJ complaint specifically alleged wrongful conduct in 2002 and is silent as to any unauthorized use of JLJ's slogans, advertising ideas or advertising materials in advertising before 2002. St. Paul has conceded that it cannot discern when all of the allegedly offending material was first made known. Since St. Paul bears the burden of establishing the applicability of an exclusion **only by considering the allegations on the face of the complaint,**[12] St. Paul has effectively conceded it cannot satisfy its

---

[12] *Ill. Emasco Ins. Co. v. Northwestern Nat'l Cas. Co.*, 337 Ill. App. 3d 356, 360 (2003) ("The insurer may refuse to defend **only if the insurance contract cannot possibly cover the liability arising from the facts alleged** . . . 'an insurer can justifiably refuse to defend **only when the**

burden of proving the applicability of this exclusion.

### c.   The Intellectual Property Exclusion Is Inapplicable to the JLJ Claims

St. Paul's denial letter asserts that the Intellectual Property exclusion precludes all potential coverage for the *JLJ* Action. [SSUF ¶ 14]  Not so.

> **Intellectual property.** We won't cover injury or damage or medical expenses that result from any actual or alleged infringement or violation of any of the following rights or laws:
>
> •   Copyright.   •   Trade dress.   •   Trade name.
> •   Patent.   •   Trade secret.   •   Trademark.
> •   Other intellectual property rights or laws.
>
> . . . .
>
> Nor will we apply this exclusion to advertising injury that results from the unauthorized use of any:
>
> . . . .
>
> •   copyrighted advertising material.
> •   trademarked slogan . . . of others in your advertising.  [SSUF ¶ 9]

In an analogous case, *KLA-Tencor Corp. v. Travelers Indemnity Co. of Illinois*, No. C-02-05641 RMW, 2003 U.S. Dist. LEXIS 10456 (N.D. Cal. (San Jose Div.) Apr. 11, 2003), Judge Whyte explained that the insurer has the burden of proving the exclusion applies by showing that no conceivable theory of liability could bring the claim within the policy's coverage. *Id.* at *13. Rejecting Travelers' overbroad reading of the exclusion, he clarified that the exclusion must apply in all possible worlds. *Id.* at *14. Travelers urged that the exclusion precluded any potential for coverage because the insured had affirmatively prosecuted a patent infringement action, and the allegedly defamatory statements made by the insured related to patent infringement. The disparaging statements, standing alone, however, provided a sufficient basis for finding potential coverage. Although the allegations here may relate in some way to excluded infringement of intellectual property rights (i.e., trademark infringement), they also provided a basis for liability in addition to any excluded conduct, thereby triggering a defense.

The Intellectual Property exclusion does not apply to JLJ's claims of Santa's' unauthorized use of slogans, advertising ideas and advertising materials of JLJ (which are each

---

**allegations of the complaint clearly show on their face that the claim is beyond the coverage of the policy.'"** Citation omitted. Emphasis supplied.)

covered "advertising injury" offenses) because not all of JLJ's allegations implicate the Intellectual Property exclusion. Here, the claims alleged against Santa's include unauthorized use of another's slogan, advertising ideas and advertising materials which are not excluded by the Policy exclusion. The exclusion precludes coverage for "advertising injury" arising out of infringement or violation of intellectual property rights or laws. Since not all of JLJ's claims necessarily arise out of infringement or violation of any intellectual property rights or laws,[13] the exclusion does not avoid potential coverage here.

Even if the claims of unauthorized use of slogans implicated the exclusion for trademark infringement, the language of the exclusion excepts from application copyrighted "advertising material" and "trademarked slogans." JLJ claims that "STAY-LIT" is a slogan subject to trademark protection. [SSUF ¶¶ 17 – 19] JLJ also alleges Santa's infringe the trademark through their use of the phrase "Stay-On." [SSUF ¶ 18] Significantly, JLJ also claims Santa's use of copyrightable box art and other slogans belonging to JLJ to advertise their products without authorization [SSUF ¶¶ 19, 20] – conduct falling outside the scope of the exclusion.

It is clear that the JLJ box art is copyrightable (and thus copyrighted[14] ) advertising material. The Copyright Act, 17 U.S.C. § 102(a)5 provides for the copyrightability of such materials as a "pictorial, graphic or sculptural work[]." This carried over the category of "prints and labels used for articles of merchandise" covered in Section 5(k) of the 1909 Copyright Act. *SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharms., Inc.*, 211 F.3d 21, 29 n.5 (2nd Cir. 2000), for example, held that product packages were copyrightable and only denied copyright injunctive relief for infringement of packages of Nicorette Gum because the Food,

---

[13]*Zen Design*, 329 F.3d at 554 n.7 ("It is clear that not all slogans are trademarks."). False advertising claims relate to the publication of false or misleading statements about any product (including one's own product) and are not dependent on or related to trademark infringement claims. *Corporate Risk Int'l, Inc. v. Assicurazioni Generali, S.p.A.*, No. 95-1440-A, 1996 U.S. Dist. LEXIS 19720, at *7-8 (E.D. Va. Mar. 15, 1996); *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 922-23 (3d Cir. (Pa.) 1990).

[14] Under the Copyright Act of 1976, copyright adheres in all works from the moment of fixation in any tangible medium of expression. 17 U.S.C. § 302 ("**Copyright in a work created on or after January 1, 1978, subsists from its creation . . .**") Copyright arises by operation of law and no notice, registration or other act is required to make material "copyrighted."

Drug and Cosmetics Act *required* similar packages for generic versions of such products. [15] The alleged copying of the JLJ package thus satisfies the "copyrighted advertising material" exception to the IP exclusion.[16] **[SSUF ¶¶ 19-21]**

In *Hugo Boss Fashions, Inc. v. Federal Ins. Co.*, 252 F.3d 608, 625 (2d Cir. (N.Y.) 2001), the Second Circuit said that federal trademark law has clarified "that a 'trademarked slogan' is a word or phrase used to promote or advertise a house name or product name." Since St. Paul does not define the term "trademarked slogan," the Court may adopt the Second Circuit's definition. Applied here, JLJ's use of "STAY-LIT" to promote and advertise its product name satisfies the definition of "trademarked slogan" under trademark law and the exception to the exclusion.

**III.    ST. PAUL IS ESTOPPED FROM RAISING ANY DEFENSES TO COVERAGE BY ITS OUTRIGHT DENIAL OF IT DEFENSE DUTY**

St. Paul's failure to comply with Illinois law, requiring the insurer to either defend under a reservation of rights or seek a declaratory judgment that there is no coverage, triggers application of the estoppel doctrine.[17] As evidenced herein, St. Paul owes a defense to Santa's. In refusing to defend Santa's, by simply issuing a denial letter, St. Paul chose to bear the risk of its actions.[18] The most significant risk borne by its actions is application of the estoppel doctrine.[19] Illinois has long imposed a penalty on insurers who wrongfully refuse to defend their

---

[15]("[C]ommercial labeling is clearly copyrightable. 'include[ing] prints and labels used for articles of merchandise under the general protection accorded to pictorial, graphic and sculptural works.' (citing H.R. Rep. No. 94-1476, at 54 (1976) ('There is no intention whatever to narrow the scope of the subject matter now characterized in section 5(k) as 'prints and labels used for articles of merchandise.') it has been recognized that the 'danger lurking in copyright protection for labels is that the tail threatens to wag the dog proprietors at times seize on copyright protection for the label in order to leverage their thin copyright protection over the text . . . on the label into a monopoly on the typically uncopyrightable product to which it is attached.' 'Used in that fashion, the copyright serves 'primarily as a means of harassing competitors' . . .'")

[16]The JLJ package meets the definition of "advertising material" contained in the policy which includes "material that is subject to copyright law," and that "others use and intend to attract attention in their advertising.

[17]*Murphy v. Urso*, 88 Ill. 2d 444, 452 (1981) (If the insurer fails to defend under reservation or seeks declaratory judgment, it is estopped from raising defenses to coverage at a later time.).

[18]*Petersen Sand & Gravel, Inc. v. Maryland Cas. Co.*, 881 F. Supp. 309, 315 (N.D. Ill. 1995) ("If an insurer fails to defend its insured or file a 'prompt declaratory judgment action,' it is estopped from raising policy defenses, including late notice.").

[19]*Employers Ins. v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 153 (1999).

insured without seeking declaratory relief.[20] An insurer who wrongfully denies its duty outright is estopped from raising any defenses to coverage it would otherwise have, had it complied with its obligations and Illinois law.[21] St. Paul's denial has that consequence here.

## IV. CONCLUSION

Santa's have demonstrated JLJ alleged claims potentially within the coverage of St. Paul's policies. Santa's have further shown that no policy exclusions eliminate potential coverage. St. Paul refused to defend Santa's in the *JLJ* Action. Thus, Santa's have established St. Paul breached its defense duty. St. Paul is now estopped from asserting any defenses to coverage it would otherwise have, if it had defended under reservation or sought a declaratory judgment. St. Paul must provide a complete, unlimited defense to Santa's.

Dated: April 16, 2004

SANTA'S BEST CRAFT, LLC, SANTA'S BEST and H.S. CRAFT MANUFACTURING CO.

By: _____

One of Their Attorneys

Mitchell Bryan
Gary I. Blackman
LEVENFELD PEARLSTEIN
2 North La Salle Street, Suite 1300
Chicago, IL 60602
Tel: (312) 346-8380
Fax: (312) 346-8434

David A. Gauntlett
James A. Lowe
GAUNTLETT & ASSOCIATES
18400 Von Karman, Suite 300
Irvine, CA 92612
Tel: (949) 553-1010
Fax: (949) 553-2050

Attorneys for Plaintiffs

---

[20]*Id.* at 151 ("The estoppel doctrine has deep roots in Illinois jurisprudence. It arose out of the recognition that an insurer's duty to defend . . . is so fundamental an obligation that a breach of that duty constitutes a repudiation of the contract.").

[21]*Id.* at 151-52 ("Once the insurer breaches its duty to defend, however, the estoppel doctrine has broad application and operates to bar the insurer from raising policy defenses to coverage, even those defenses that may have been successful had the insurer not breached its duty to defend.").