FILED

JUN 2 3 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

DOCKETED

JUN 2 4 2004

# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

|  |  |  |
|---|---|---|
| SANTA'S BEST CRAFT, LLC, a Delaware limited liability company; SANTA'S BEST CRAFT, an Illinois general partnership; and H.S. CRAFT MANUFACTURING CO., a Taiwanese corporation (Republic of China), | ) ) ) ) ) |  |
| Plaintiffs, | ) ) | **CASE NO.: 04 C 1341** |
| vs. | ) ) ) |  |
| ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a Minnesota corporation, | ) ) ) | **Hon. Robert W. Gettleman** |
| Defendant. | ) ) ) ) ) |  |

## NOTICE OF FILING

To: See Service List Attached

PLEASE TAKE NOTICE that on the 23rd day of June, 2004, we caused to be filed with the Clerk of Court, Memorandum of Law in Opposition to St. Paul's Motion for Partial Summary Judgment, a copy of which is attached hereto and herewith served upon you.


SANTA'S BEST CRAFT, LLC, SANTA'S BEST and H.S. CRAFT MANUFACTURING CO.

By: _____
One of Their Attorneys


Mitchell Bryan
Gary I. Blackman
LEVENFELD PEARLSTEIN, LLC
Attorneys for Plaintiffs
2 North La Salle Street, Suite 1300
Chicago, IL 60602
Tel: (312) 346-8380
Fax: (312) 346-8434
H:\51900\51913\NOF 6-14-04


1

26

STATE OF ILLINOIS      )
                       ) SS.
COUNTY OF COOK         )

## CERTIFICATE OF SERVICE

Joanne M. Magee, a non-attorney, being first duly sworn on oath, deposes and states that she served the foregoing **Notice of Filing and Memorandum of Law in Opposition to St. Paul's Motion for Partial Summary Judgment**, true and correct copies via Hand Delivery from 2 North LaSalle Street, Chicago, Illinois, 60602, before 5:00 p.m., this 23rd day of June, 2004, to the person(s) listed on the Service List attached.

_____
Joanne M. Magee

Subscribed and sworn to before me
this 23rd day of June, 2004

_____
Notary Public

OFFICIAL SEAL
APRIL BERNATH
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES:06/12/06

## SERVICE LIST

Shaun McParland Baldwin
D.J. Sartorio
Jason M. Craft
Tressler, Soderstrom, Maloney & Priess
233 South Wacker Drive
Sears Tower, 22nd Floor
Chicago, Illinois 60606



**IN THE UNITED STATES DISTRICT COURT FOR THE**

**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| SANTA'S BEST CRAFT, LLC, a Delaware limited liability company; SANTA'S BEST CRAFT, an Illinois general partnership; and H.S. CRAFT MANUFACTURING CO., a Taiwanese corporation (Republic of China), | ) ) ) ) ) **CASE NO.: 04 C 1342** ) ) ) |
| Plaintiffs, | ) **MEMORANDUM OF LAW IN** ) **OPPOSITION TO ST. PAUL'S MOTION** ) **FOR PARTIAL SUMMARY** ) **JUDGMENT** |
| vs. | ) ) |
| ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a Minnesota corporation, | ) **Hon Robert W. Gettleman** ) ) ) |
| Defendant. | ) ) ) |



# TABLE OF CONTENTS

Page

I.     INTRODUCTION...................................................................................................1

II.    ST. PAUL DOES NOT CONTEST POTENTIAL FOR COVERAGE UNDER INSURING GRANT ..................................................................................3

    A.     St. Paul Concedes That JLJ Made Slogan Allegations That Are Covered ...................................................................................................3

    B.     St. Paul Has the Burden of Proving Application of Any Exclusion .................4

III.   ESTOPPEL BARS ALL POLICY DEFENSES.................................................4

    A.     Estoppel Applies Because of St. Paul's Refusal to Defend or Bring Action .....................................................................................................4

    B.     St. Paul Establishes No Exception to General Estoppel Rule ............................8

IV.   ST. PAUL DOES NOT PROVE THAT ANY EXCLUSION APPLIES ......................8

    A.     The "Intellectual Property" Exclusion Does Not Apply to JLJ's Allegations of Unauthorized Use of Slogans .......................................................8

          1.     St. Paul's Own Definition of "Slogan" Defeats Exclusion......................8

          2.     "Trademarked Slogans" Are Excepted from Exclusion ......................9

          3.     The "Gravamen" of the Case Does Not Affect the Duty to Defend ...................................................................................................10

          4.     Alleged Unauthorized Use of Slogans Is Not a Trade Dress Claim......................................................................................................11

          5.     "Copyrighted Advertising Materials" Are Excepted from Exclusion..............................................................................................12

    B.     "Material Previously Made Known" Exclusion Does Not Apply ..................13

    C.     "Poor Quality or Performance" Exclusion Does Not Apply............................14

V.     CONCLUSION .........................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Central Mut. Ins. Co. v. StunFence, Inc.*,
  292 F. Supp. 2d 1072 (N.D. Ill. 2003) ........................................................................10, 11

*Cincinnati Ins. Co. v. Zen Design Group, Ltd.*,
  329 F.3d 546 (6th Cir. (Mich.) 2003) ..............................................................................12

*Curtis-Universal, Inc. v. Sheboygan Emerg. Med. Servs., Inc.*,
  43 F.3d 1119 (7th Cir. 1994) ....................................................................................10, 14

*Petersen Sand & Gravel, Inc. v. Maryland Cas. Co.*,
  881 F. Supp. 309 (N.D. Ill. 1995) .......................................................................................5

*Stephen & Hayes Constr. v. Meadowbrook Homes*,
  988 F. Supp. 1194 (N.D. Ill. 1998) ..................................................................................13

## STATE CASES

*Atlantic Mutual Ins. Co. v. J. Lamb, Inc.*,
  100 Cal. App. 4th 1017 (2002) .........................................................................................11

*Central Mut. Ins. Co. v. Kammerling*,
  212 Ill. App. 3d 744 (1991) ...............................................................................................8

*Conway v. Country Casualty Ins. Co.*,
  92 Ill. 2d 388 (1982) ..........................................................................................................3

*County of Massac v. United States Fidelity & Guaranty Co.*,
  113 Ill. App. 3d 35 (1983) ..................................................................................................8

*Employers Ins. v. Ehlco Liquidating Trust*,
  186 Ill. 2d 127 (1999) ......................................................................................................5, 7

*Employers Reinsurance Corp. v. E. Miller Ins. Agency, Inc.*,
  332 Ill. App. 3d 326 (2002) ................................................................................................7

*Gibraltar Cas. Co. v. Sargent & Lundy*,
  214 Ill. App. 3d 768 (1991) .............................................................................................13

*Guillen v. Potomac Ins. Co.*,
  203 Ill. 2d 141 (2003) ......................................................................................................10

*HPF, L.L.C. v. General Star Indem. Co.,*
    338 Ill. App. 3d 912 (2003) ............................................................................9

*Johnson Press of Am., Inc. v. Northern Ins. Co.,*
    339 Ill. App. 3d 864 (2003) ...........................................................1, 3, 4, 14

*Korte Constr. Co. v. American States Ins.,*
    322 Ill. App. 3d 451 (2001) .........................................................................6, 7

*LaGrange Mem'l Hosp. v. St. Paul Ins. Co.,*
    317 Ill. App. 3d 863 (2000) ...........................................................................7

*La Rotunda v. Royal Globe Ins. Co.,*
    87 Ill. App. 3d 446 (1980) .............................................................................5

*McKinney v. Allstate Ins. Co.,*
    188 Ill. 2d 493 (1999) ..................................................................................10

*Murphy v. Urso,*
    88 Ill. 2d 444 (1981) ...................................................................................2, 5

*Safeco Ins. Co. v. Robert S.,*
    26 Cal. 4th 758 (2001) ...................................................................................9

*Sears, Roebuck & Co. v. Seneca Ins. Co.,*
    254 Ill. App. 3d 686 (1993) ...........................................................................8

*Shell Oil Co. v. AC&S, Inc.,*
    271 Ill. App. 3d 898 (1995) ........................................................................6, 7

*State Sec. Ins. Co. v. Burgos,*
    145 Ill. 2d 423 (1991) ..................................................................................10

*Village of Melrose Park v. Nautilus Ins. Co.,*
    214 Ill. App. 3d 864 (1991) ...........................................................................8

*West Am. Ins. Co. v. J.R. Constr. Co.,*
    334 Ill. App. 3d 75 (2002) .............................................................................7

*Westchester Fire Ins. Co. v. G. Heileman Brewing Co.,*
    321 Ill. App. 3d 622 (2001) ...........................................................................4

# DOCKETED CASES

*Coltec Indus. v. Zurich Ins. Co.,*
    Nos. 99 C 1087, 99 C 3192, 2004 U.S. Dist. LEXIS 1207 (N.D. Ill. Jan 29, 2004) ...........7

*Commercial Underwriters v. Utica Mut. Ins. Co.,*
    No. 98 C 5484, 2002 U.S. Dist. LEXIS 19879 (N.D. Ill. Oct. 18, 2002) ...........................8

*Finger Furniture Co. v. Travelers Indem. Co.,*
    No. H-01-2797, 2002 U.S. Dist. LEXIS 15351 (S.D. Tex. Aug. 19, 2002) ......................12

*Ultra Coachbuilders, Inc. v. General Sec. Ins. Co.,*
    No. 02 CV 675(LLS), 2002 U.S. Dist. LEXIS 13027 (S.D.N.Y. July 15, 2002) ...............12

# FEDERAL RULES AND STATUTES

17 U.S.C. § 102(a) ...............................................................................................................12

17 U.S.C. § 106.....................................................................................................................13

Local Rule 56.1(b)(3).............................................................................................................1

Local Rule 56.1(a)(3).............................................................................................................1

Plaintiffs Santa's Best Craft, LLC ("SBC"), Santa's Best and H.S. Craft Manufacturing Co. (collectively "Santa's") oppose the motion for partial summary judgment of Defendant St. Paul Fire and Marine Insurance Company ("St. Paul"). Santa's relies on the Local Rule 56.1(b)(3) and 56.1(a)(3) statements and objections, including its separate statement of undisputed facts with corrected exhibits ("SSUF") previously filed in connection with Santa's concurrently pending motion for partial summary judgment.

## I. INTRODUCTION

St. Paul admitted that a comparison of the face of both JLJ complaints with its policies shows the potential for coverage: **"The underlying JLJ complaints contain allegations concerning SBC's copying of certain of JLJ's slogans."** St. Paul thus concedes that JLJ's allegations of Santa's unauthorized use of its slogans and advertising materials establishes the potential for "advertising injury" coverage under the policies but argues that it does not have to defend because of the alleged application of certain policy exclusions which St. Paul has the obligation to prove. St. Paul has not proved the application of any exclusion so its cross-motion must be denied. Moreover, St. Paul is estopped from raising any policy defenses because it failed to defend or to promptly seek declaratory relief. Its motion should be denied for that, too.

St. Paul does not deny that JLJ alleged unauthorized advertising use by Santa's in its "earlier" packaging of the slogans **"Stay-On," "New Technology,"** and **"String Stays Lit . . . even if bulb is loose or MISSING."** JLJ alleged unauthorized use by Santa's in its later packaging of the slogans **"Stay-On," "New Patented Technology," "Set Stays On . . . even if a Bulb is loose,"** and **"Dependable Lighting!" (Separate Statement of Undisputed Facts ("SSUF") (SSUF ¶¶ 18-21))** St. Paul admits five of the six are slogans. **(Memo. p. 10)**

St. Paul's only real argument is that policy exclusions eliminate potential coverage that otherwise exists. St. Paul must prove that any exclusion eliminates its defense duty, *Johnson Press of Am., Inc. v. Northern Ins. Co.*, 339 Ill. App. 3d 864, 871-72 (2003), but has not done so. **First,** St. Paul's intellectual property exclusion only precludes coverage for "advertising injury" that "results from" infringement or violation of intellectual property rights or laws. The distinct

allegations of unauthorized advertising use of JLJ's slogans and advertising materials do not necessarily arise out of infringement or violation of any intellectual property rights or laws. Nor need JLJ have particular "intellectual property" rights in slogans and advertising materials (box art and graphics) in order to complain about Santa's unauthorized use of them. Even if the allegations of unauthorized use of slogans were encompassed by the trademark infringement exclusion, an exception to the exclusion specifically provides coverage for claimed infringement of "trademarked slogans." Another exception to the IP exclusion applies here also, where there are allegations of unauthorized use of others' "copyrighted advertising material." Thus, the intellectual property exclusion does not apply or an exception applies.

**Second**, the "material previously made known" exclusion is not even argued to apply to the first policy at issue. St. Paul does not even claim that this exclusion avoids its duty to defend thereunder. **Third**, the "poor quality or performance" exclusion concerns consumer claims of products that do not meet advertised quality standards and does not apply here where there is only a competitor's complaint of unauthorized use of slogans and art in advertising. St. Paul has failed to prove the application of any exclusion.

More critically, and presumptively fatal to St. Paul's entire motion, eliminating this Court's need to even consider the exclusion arguments, is that St. Paul's conduct simply estops it from asserting any policy defenses.[1] An insurer must either defend under a reservation of rights when a suit is tendered or it must promptly file a declaratory judgment action to establish that it has no duty. St. Paul knew that the JLJ allegations on their face showed potential coverage under the policy (but for exclusions that might apply), and yet it refused to take either action mandated by the Illinois Supreme Court. After 20 months it has still done nothing except to file its so-called "cross-motion" after refusing to Answer or to file a counterclaim for declaratory

---

[1] *Murphy v. Urso*, 88 Ill. 2d 444, 451 (1981) ("An insurer taking the position that a complaint potentially alleging coverage is not covered by a policy which provides that the insurer has the right and duty to defend any claims brought against the insured cannot simply refuse to defend the insured. It must defend the suit under a reservation of rights or seek a declaratory judgment that there is no coverage. If the insurer fails to do this, it is estopped from later raising policy defenses to coverage and is liable for the award against the insured and the costs of the suit, because the duty to defend is broader than the duty to pay.").

relief. Its action is insufficient, it is not prompt and it is not reasonable. Therefore, St. Paul is estopped.

## II. ST. PAUL DOES NOT CONTEST POTENTIAL FOR COVERAGE UNDER INSURING GRANT

### A. St. Paul Concedes That JLJ Made Slogan Allegations That Are Covered

St. Paul admits that "Unauthorized use of . . . slogan" is covered under St. Paul's policies.

**"Unauthorized use of** any advertising material or **any slogan** . . . of others in your advertising" is an enumerated "advertising injury" offense covered under the insuring agreement and that "**slogan means a phrase that others use** and intend **to attract attention in their advertising.**" (SSUF ¶ 9)

**St. Paul specifically admits** that a comparison of the face of both JLJ complaints with the policies shows **the potential for coverage.** For example, **"The underlying JLJ complaints contain allegations concerning SBC's copying of certain of JLJ's slogans."** (Memorandum of Law in Support of St. Paul's Cross-Motion for Partial Summary Judgment ("**Memo**"), p. 10)

It is undisputed that in the original complaint (against Santa's Best Craft) JLJ alleged unauthorized use of slogans and advertising phrases in at least eight separate paragraphs (**SSUF ¶¶ 20, 21**) and that in the amended complaint (against all defendants) JLJ alleged unauthorized use of slogans and advertising phrases in at least six separate paragraphs. (**SSUF ¶ 28**) **St. Paul's Memorandum** concedes that the "advertising injury" offense requirements are satisfied when it **admits that "the . . . JLJ complaints contain allegations concerning SBC's copying of certain of JLJ's slogans."** St. Paul even itemizes five separate slogans in the complaints while quibbling as to whether a sixth is really a slogan (p. 10). Coverage is conceded but for an exclusion; however, no exclusion applies.[2]

St. Paul has two distinct sets of obligations under its CGL policies,-the duty to defend and the duty to indemnify. The insurer's duty to defend is broader than its duty to indemnify. *See Conway v. Country Casualty Ins. Co.*, 92 Ill. 2d 388, 394 (1982). The existence of a duty to defend is governed by the "four corners" rule:

---

[2]*Johnson Press*, 339 Ill. App. 3d at 871-72 ("In Illinois, it is the insurer's burden to affirmatively demonstrate the applicability of an exclusion.").

> To determine whether an insurer has a duty to defend its insured, the court must consider the allegations in the underlying complaint and compare them to the relevant provisions of the insurance policy. If the court determines that these allegations fall within or *potentially* within the policy's coverage, the insurer has the duty to defend the insured against the underlying complaint. The underlying complaint must be construed liberally so that all doubts are resolved in favor of the insured.

*Westchester Fire Ins. Co. v. G. Heileman Brewing Co.*, 321 Ill. App. 3d 622, 632-33 (2001) (emphasis added; citations omitted).

St. Paul's cross-motion does not argue that there is no potential for coverage under the insuring grant of its policies St. Paul makes only a passing reference to the three-part test under which Illinois courts determine the duty to defend **(Memo, p. 2),** but does not argue there is no coverage and effectively concedes the argument on coverage in Santa's motion for partial summary judgment, which arguments are incorporated herein. St. Paul only asserts that three exclusions apply, "intellectual property," "poor quality or performance" and (argued to apply only to the last policy at issue) "material previously made known or used." Because of the nature of St. Paul's arguments, the Court should find there is a duty to defend unless the exclusions apply.

**B.      St. Paul Has the Burden of Proving Application of Any Exclusion**

St. Paul has the burden of proving the application of its exclusions and the Court must liberally construe any doubts in Santa's favor. *Johnson Press*, 339 Ill. App. 3d at 871-72:

> In Illinois, **it is the insurer's burden to affirmatively demonstrate the applicability of an exclusion.** *Board of Education of Maine Township High School District No. 207 v. International Insurance Co.*, 292 Ill. App. 3d 14, 18, 225 Ill. Dec. 987, 684 N.E.2d 978 (1997). Furthermore, Illinois courts will liberally **construe any doubts as to coverage in favor of the insured,** especially when the insurer seeks to avoid coverage based on an exclusion to the policy. *Yamada Core. v. Yasuda Fire & Marine Insurance Co.*, 305 Ill. App. 3d 362, 371, 238 Ill. Dec. 822, 712 N.E.2d 926 (1999). [Emphasis added.]

St. Paul has not met its burden of proving the application of any exclusion to coverage.

## III.      ESTOPPEL BARS ALL POLICY DEFENSES

**A.      Estoppel Applies Because of St. Paul's Refusal to Defend or Bring Action**

St. Paul cannot raise any defenses to its duty to defend (or indemnify) Santa's in the *JLJ*

Action because it failed to defend Santa's under a reservation of rights and it failed to file a prompt declaratory judgment action to determine its duty to defend although the face of the underlying complaint compared with the policies showed the potential that coverage might exist. The Illinois estoppel doctrine provides that when a defense is requested for a suit that is within, or potentially within, the coverage of the policy, the insurer must either: (1) defend its insured under a reservation of rights, or (2) promptly seek a declaratory judgment of noncoverage. Doing neither breaches its duty to defend and subjects the insurer to the following consequences: (a) it is estopped to raise policy defenses or noncoverage and must pay any judgment or settlement the insured incurs; (b) it must pay the insured's reasonable defense costs; and (c) it will be liable for any other damages resulting from the breach of its duty to defend. *Murphy*, 88 Ill. 2d at 452; *Employers Ins. v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 151-52 (1999).[3]

**St. Paul admits** that a comparison of the face of both JLJ complaints with the policies shows **the potential for coverage**. For example, **"The underlying JLJ complaints contain allegations concerning SBC's copying of certain of JLJ's slogans."** (Memo, p. 10) St. Paul then only argues that exclusions might apply here, but it failed to take any action to prove the application of its exclusions.[4] St. Paul nevertheless failed to defend under a reservation of rights. St. Paul also failed to promptly seek a declaratory judgment that there is no coverage. Indeed, **St. Paul has NEVER filed a declaratory judgment action**. Therefore Illinois law estops St. Paul from raising any coverage defenses. *Petersen Sand & Gravel, Inc. v. Maryland Cas. Co.*, 881 F. Supp. 309, 315 (N.D. Ill. 1995).[5]

---

[3]*Ehlco*, 186 Ill. 2d at 151-52 ("Once the insurer breaches its duty to defend, however, the estoppel doctrine has broad application and operates to bar the insurer from raising policy defenses to coverage, even those defenses that may have been successful had the insurer not breached its duty to defend.").

[4]*See, e.g., La Rotunda v. Royal Globe Ins. Co.*, 87 Ill. App. 3d 446, 452 (1980) ("Royal Globe thus knew when it refused to defend the second amended complaint that despite the . . . exclusion in the policy, there was a possibility that the exclusion did not apply. There was potential coverage, and the insurer should have taken up the defense.").

[5]"If the insurer believes that it has a valid case of non-coverage, the insurer has several options available. **If the insurer wilfully forgoes these options** and an underlying complaint against its insured contains allegations potentially within the coverage of the policy, **the insurer will be estopped** from asserting defenses to noncoverage . . . . **To decide otherwise would be**

> Maryland could have filed a **prompt** declaratory judgment action in an effort to establish its . . . defense. Maryland could have similarly preserved the defense by defending . . . under a reservation of rights. **Having failed** to pursue either available recourse, Maryland is **now estopped** from litigating any defenses to coverage . . . . [Emphasis added.]

**St. Paul has never filed a declaratory judgment action.** Instead, St. Paul moved to Strike the Complaint to avoid a determination of its duty to defend. St. Paul has still not filed an Answer. St. Paul has never filed a Counterclaim seeking a determination of its duty to defend. Therefore, its "motion for partial summary judgment" cannot result in a determination that it has no duty to defend. At most, St. Paul can only defeat Santa's present claim (i.e., avoid a judgment for Santa's). Since it has not made any claim for relief, it cannot obtain a judgment granting it any relief. Finally, over 21 months after tender, it simply opposes Santa's motion. St. Paul's motion for partial summary judgment is not "fil[ing] a prompt declaratory judgment action," especially where it has not filed an Answer but has instead filed a Motion to Strike the Complaint and where it merely opposes Santa's motion for partial summary judgment with its cross-motion.

Recent Illinois case law forbids St. Paul from now claiming that Santa's declaratory judgment action satisfies its own legal obligations. St. Paul's argument that it can do nothing to defend its insured for a year, refuse to file a declaratory judgment action to determine its duty to defend and rather wait until its insured files an action, was specifically rejected in *Shell Oil Co. v. AC&S, Inc.*, 271 Ill. App. 3d 898, 903 (1995).[6] Under this case, St. Paul is estopped.

It is undisputed that the defense of the case was tendered to St. Paul on August 7, 2002 (SSUF ¶ 13) and that it did not defend. Doing nothing for more than 20 months is not acting promptly or reasonably, and St. Paul is estopped for that reason alone.[7] The insurer must file a

---

tantamount to granting the insurance companies free reign to deny coverage where potential policy coverage exists, while completely undermining the equitable considerations behind the Illinois estoppel rule." (Emphasis added.)

[6]"Having failed to take the necessary legal action *prior to* plaintiff's declaratory judgment action, National Union is now estopped from disputing the question of coverage." (Emphasis added.)

[7]*Korte Constr. Co. v. American States Ins.*, 322 Ill. App. 3d 451, 458 (2001) ("When an insured tenders to an insurer the defense of the underlying cause, **the insurer may not** simply

declaratory judgment action within a reasonable time after learning of the underlying action.
"[T]he insurer must take some action to adjudicate the issue of coverage or undertake to defend
the insured under a reservation of rights, and **it must take that action within a reasonable time**
of a demand by the insured." *Korte Constr. Co.,* 322 Ill. App. 3d at 458 (emphasis added). *See*
*Employers Reinsurance Corp. v. E. Miller Ins. Agency, Inc.,* 332 Ill. App. 3d 326, 342 (2002):

> This much we can glean from *Ehlco* [186 Ill. 2d at 157], where **the court, in
> determining the timeliness** of a declaratory judgment action, **considered the
> time period between the insurer's notice** of the underlying suit and **when it
> filed its declaratory judgment action.** To hold **otherwise** would be to find that
> **estoppel will never apply** to an insurer as long as it eventually gets to court
> before the conclusion of the underlying case. This, we think, is not the principle
> the supreme court intended in *State Farm.* [Emphasis added.]

*West Am. Ins. Co. v. J.R. Constr. Co.,* 334 Ill. App. 3d 75, 87 (2002) held that "failure to
take the necessary action for 21.5 months from the time the defense was tendered was
unreasonable as a matter of law." Recently this court followed these cases and found an insurer
was estopped from raising policy defenses because it did not file a prompt declaratory judgment
action within a reasonable time. *Coltec Indus. v. Zurich Ins. Co.,* Nos. 99 C 1087, 99 C 3192,
2004 U.S. Dist. LEXIS 1207, at *30 (N.D. Ill. Jan 29, 2004):

> [U]nder Illinois law, an **"insurer must take some action to adjudicate the issue
> of coverage or undertake to defend** the insured under a reservation of rights,
> and it must take that action **within a reasonable time of a demand** by the
> insured." *Korte Constr. Co. v. American States Ins.,* 255 Ill. Dec. 847, 322 Ill.
> App. 3d 451, 458, 750 N.E.2d 764, 770 (Ill. App. 5th Dist. 2001). If an insurer
> fails to defend its insured or file a "prompt declaratory judgment action," it is
> estopped from raising policy defenses, including late notice. *Petersen Sand &
> Gravel, Inc. v. Maryland Cas. Co.,* 881 F. Supp. 309, 315 (N.D. Ill. 1995).
> [Emphasis added.]

The *Coltec* court cited cases holding that insurer inaction for less time than existing here
"cannot be considered 'prompt' under Illinois law" and therefore estopped the insurer.[8] This

---

refuse to participate in the litigation of the underlying cause and **wait for the insured to
institute litigation** against the insurer to determine the insurer's respective rights and duties.
*Shell Oil Co.,* 271 Ill. App. 3d at 902. This is precisely what American States did in the case at
bar. **It is now estopped** from raising noncoverage as a defense to Korte's action for declaratory
judgment and indemnification." (emphasis added)).

[8]*See Ehlco,* 186 Ill. 2d at 160 (insurer estopped from raising policy defenses because it
waited over **one year** to file a declaratory judgment action because "it was searching for its
policies"); *LaGrange Mem'l Hosp. v. St. Paul Ins. Co.,* 317 Ill. App. 3d 863, 872-73 (2000) **(two**

Court need go no further after finding that St. Paul's conduct estops it from raising **any** defense.

**B.    St. Paul Establishes No Exception to General Estoppel Rule**

St Paul is not, contrary to its argument (**Memo,** p. 15), seeking a declaratory judgment through its motion but is only opposing the relief requested by Santa's. Even *Martin*, 186 Ill. 2d at 374, does not support St. Paul's argument, but instead

> reaffirm[s] that when a complaint against the insured alleges facts potentially
> within the scope of the policy coverage, **an insurer** taking the position that the
> complaint is not covered by its policy **must defend** the suit under a reservation of
> rights *or* **seek a declaratory judgment**." [Bold emphasis added.]

St. Paul's statement of the holding in *Sears, Roebuck & Co. v. Seneca Ins. Co.*, 254 Ill. App. 3d 686, 694 (1993) is incorrect. *Sears* found a special exception to the general estoppel rule because **the insurance policy was never found,** many years passed between the events in the case, and the court found that the "[defendant] actively sought, through a motion for summary judgment, an adjudication of its rights and duties." No facts similar to *Sears* or to *Village of Melrose Park v. Nautilus Ins. Co.*, 214 Ill. App. 3d 864, 867 (1991) exist here where St. Paul wants to strike Santa's complaint[9] and has not filed even an Answer or a Counterclaim of its own.[10]

**IV.    ST. PAUL DOES NOT PROVE THAT ANY EXCLUSION APPLIES**

**A.    The "Intellectual Property" Exclusion Does Not Apply to JLJ's Allegations of Unauthorized Use of Slogans**

**1.    St. Paul's Own Definition of "Slogan" Defeats Exclusion**

Nothing in St. Paul's own definition of "slogan" ("a phrase that others use and intend to

---

**and a half months**); *Central Mut. Ins. Co. v. Kammerling*, 212 Ill. App. 3d 744 (1991) (**10 months**).

[9]*County of Massac v. United States Fidelity & Guaranty Co.*, 113 Ill. App. 3d 35, 41 (1983) (**"It is the duty of an insurer to secure a declaratory judgment determination** of its obligations and rights under the policy . . . **not to take action to prevent such a conclusive and binding determination** from being obtained." (emphasis added)).

[10]*See Commercial Underwriters v. Utica Mut. Ins. Co.*, No. 98 C 5484, 2002 U.S. Dist. LEXIS 19879, at *31-32 (N.D. Ill. Oct. 18, 2002) (noting that *Nautilus* does not represent the uniform law of Illinois and also holding that "Utica did not promptly seek a judgment that there was no coverage under its policy. In fact, it seems that the earliest time that Utica arguably [was] when it answered CUIC's cross-claim.").

attract attention in their advertising" (SSUF ¶ 9)) suggests or requires that a slogan be protected by any intellectual property rights listed in its IP exclusion. There is no basis for St. Paul's arguments (Memo, p. 10) that slogans must be trademarked in order to be slogans.[11] While some slogans may be trademarked, it is not necessary. If only "trademarked slogans" were covered, St. Paul should have used that phrase in its coverage grant instead of the broader "slogans." St. Paul's argument requires the Court to read its "slogan" definition in a peculiar way, to the exclusion of all other (and more reasonable) understandings: The definition would have to be read as "a [TRADEMARKED] phrase [THAT IS INHERENTLY DISTINCTIVE OR HAS ACQUIRED SECONDARY MEANING] that others use and intend to attract attention in their advertising [BUT THAT IS NOT MERELY AN UNPROTECTABLE GENERIC SLOGAN OR NOTHING MORE THAN ELEMENTS OF A CLAIMED TRADE DRESS INFRINGEMENT]." St. Paul's rewriting of its policy language cannot be permitted but it is essential to its argument.[12] Unless this is the only permissible reading, St. Paul's argument fails.

### 2. "Trademarked Slogans" Are Excepted from Exclusion

The intellectual property exclusion has an express exception for "trademarked slogans." The exception says, "Nor will we apply this exclusion to advertising injury that results from the unauthorized use of any ... trademarked slogan ... of others in your advertising." Read together with the intellectual property exclusion, it is clear that all slogans, including "trademarked slogans," are potentially covered in the policy, notwithstanding the application of the exclusion to other trademarks. In other words, claims of unauthorized use of any slogan, including trademarked slogans, are covered. If this is not clear then the exclusion is ambiguous

---

[11]It does not matter whether Santa's would actually be liable under trademark law. **If JLJ alleges unauthorized use of advertising slogans within the meaning of the policy, it does not matter that other non-covered theories of liability are also raised.** *HPF, L.L.C. v. General Star Indem. Co.*, 338 Ill. App. 3d 912, 915 (2003) (Illinois law is well established that where an "underlying complaint alleges facts within or potentially within policy coverage, the insurer is obliged to defend its insured even if the allegations are groundless, false, or fraudulent. *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73, 578 N.E.2d 926, 161 Ill. Dec. 280 (1991).").

[12]*Safeco Ins. Co. v. Robert S.*, 26 Cal. 4th 758, 764 (2001) ("[W]e cannot read into the policy what Safeco has omitted. To do so would violate the fundamental principle that in interpreting

because it is more than reasonable for a layman to understand the exclusion and the exception in this light. *McKinney v. Allstate Ins. Co.*, 188 Ill. 2d 493, 497 (1999) ("[I]f the [policy] terms are susceptible to more than one meaning, they are considered ambiguous and will be construed strictly against the insurer who drafted the policy.").

St. Paul's intellectual property exclusion is not precise and understandable to the average layperson. To understand the exclusion one must understand a variety of "intellectual property" "rights or laws." One must be able to understand when a slogan is a trademark or a trade dress and understand intricacies of copyright law that have eluded even St. Paul's trained lawyers. Ambiguous policy terms, especially exclusions, must be construed against the insurer. *State Sec. Ins. Co. v. Burgos*, 145 Ill. 2d 423, 438 (1991):

> It has consistently been held that **insurance policies are to be liberally construed in favor of coverage** and where an ambiguity exists in the terms, the ambiguity will be resolved in favor of the insured and against the insurer. This **rule is particularly applicable to ambiguities in clauses which purport to take away coverage otherwise granted by the policy**. Accordingly, all conditions, exclusions or exceptions are to be most strictly construed against the insurer. [Emphasis added; citations omitted.]

St. Paul's policy simply covers all unauthorized use of "slogans." Either a slogan is not trademarked and is therefore not subject to the IP exclusion for trademarks or else it is trademarked and falls within the "trademarked slogan" exception to the IP exclusion. Either way, St. Paul's arguments fail. *See Guillen v. Potomac Ins. Co.*, 203 Ill. 2d 141, 161 (2003) (" '[A]n insurer who has abandoned the insured by refusing to defend a claim should not be allowed to 'hide behind' the policy language.' ").

### 3.    The "Gravamen" of the Case Does Not Affect the Duty to Defend

St. Paul engages in a forbidden effort **(Memo, p. 14)** to avoid coverage by referring to the "gravamen," "core" or "dominant character" of the case. *Curtis-Universal, Inc. v. Sheboygan Emerg. Med. Servs., Inc.*, 43 F.3d 1119, 1122 (7th Cir. 1994):[13]

> **The insurer's obligations are not circumscribed by the plaintiff's choice of legal theories.** The plaintiff's complaint, upon which the insurer's duty depends,

contracts, including insurance contracts, courts are not to insert what has been omitted.").

[13]*Central Mut. Ins. Co. v. StunFence, Inc.*, 292 F. Supp. 2d 1072, 1081 (N.D. Ill. 2003).

need not even set forth the plaintiff's legal theories. . . . **What is important is not the legal label** that the plaintiff attaches to the defendant's (that is, the insured's) conduct, but whether that conduct as alleged in the complaint is at least arguably within one or more of the categories of wrongdoing that the policy covers. . . . **Nor is the insurer allowed to escape from his duties of defense and indemnification by reference to the core or dominant character of the plaintiff's allegations.** [Emphasis added.]

### 4.  Alleged Unauthorized Use of Slogans Is Not a Trade Dress Claim

St. Paul improperly attempts to relabel the express allegations of infringement of slogan as trademark or trade dress allegations.  (**Memo**, p. 7)  St. Paul claims without factual or legal basis that, absent the allegations of trademark and trade dress infringement, none of the claims in the JLJ complaints allege or seek damages for injury caused by an "advertising injury" offense. St. Paul, however, admits that there are allegations of unauthorized use of "generic 'slogans.' " (**Memo,** p. 7)  St. Paul then dismisses that clear language by asserting that JLJ actually must be alleging some other offense that is not covered.  JLJ claims damages caused by the unauthorized use of slogans and all other conduct.[14]

St. Paul then attempts to avoid the effect of its admission that infringement of slogans is alleged by JLJ by arguing that "[t]he phrases are merely cited as components of the alleged trade dress infringement."  St. Paul improperly speculates about one possible trial outcome rather than consider all possibilities, including that JLJ's allegations of unauthorized slogan use will not turn out to be excluded from coverage.  *StunFence, Inc.*, 292 F. Supp. 2d at 1081.[15]  The allegations could potentially support an award of damages for things outside the intellectual property exclusion, including unfair competition, disparagement, antitrust, etc.  St. Paul cannot prove that such an event is impossible where the case is still pending.  *See Atlantic Mutual Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1038-39 (2002) (**"[A]n insurer that wishes to rely on an exclusion has the burden of proving,** through conclusive evidence, **that the exclusion applies**

---

[14](SSUF ¶ 17) (*See, e.g.*, **Exhibits 3 and 4**; Prayer for Relief.)

[15]"[I]t must also be remembered that exclusions are subject to the same interpretive rule that all ambiguities are resolved in favor of the insured.  Thus **the insurer may refuse to defend only if** it is clear from the face of the pleading that **all of the allegations** in the Underlying Action **fall outside** of the policy's actual or **potential coverage.**" (Emphasis added, citations omitted.)

in all possible worlds." (emphasis added)). Many courts have found potential coverage for "infringement of slogan" or "unauthorized use of slogan" when the allegations were far less explicit and repetitive than in the *JLJ* Action.[16]

> **5.  "Copyrighted Advertising Materials" Are Excepted from Exclusion**

An independent exception to the intellectual property exclusion covers allegations of unauthorized use of others' "copyrighted advertising material."[17]   Any material that is copyrightable is, in fact, copyrighted under the current Copyright Act and does not require any independent action, such as registration of the copyright. St. Paul evidences a fundamental misunderstanding of the Copyright law. If there is any advertising material that is used without authorization by Santa's and it has any minimal level of originality so that it is subject to copyright, it is, in fact, copyrighted (whether registered or not) and would, therefore, be within the exception to the intellectual property exclusion as copyrighted advertising material. JLJ alleges infringement of copyright by Santa's use of certain words and box graphics. This is an independent potential trigger of the duty to defend. 17 U.S.C. § 102(a) provides: "Copyright protection **subsists** . . . in original works of authorship fixed in any tangible medium of expression . . . ." (Emphasis added.) JLJ's allegations are sufficient for the "copyrighted advertising material" exception to the exclusion. **(SSUF ¶¶ 7, 9, 17-21).** It does not matter whether JLJ expressly claimed infringement of "copyrighted advertising material" because it did

---

[16]*Cincinnati Ins. Co. v. Zen Design Group, Ltd.,* 329 F.3d 546 (6th Cir. (Mich.) 2003) (Court concluded that the underlying action alleged a potentially covered "advertising injury" offense of "infringement of . . . slogan," even though there was no express cause of action for an infringement of slogan. The court found it plausible that WEARABLE LIGHT could be more of a slogan used to promote the product mark SAPPHIRE than a product mark.); *Ultra Coachbuilders, Inc. v. General Sec. Ins. Co.,* No. 02 CV 675(LLS), 2002 U.S. Dist. LEXIS 13027, at *7 (S.D.N.Y. July 15, 2002) (Court concluded that even though there was no express cause of action for an infringement of slogan, the underlying action alleged a potentially covered "advertising injury" offense of "infringement of . . . slogan," because there was a reasonable possibility that the descriptive phrase "Quality Vehicle Modifier" was a Ford slogan.); *Finger Furniture Co. v. Travelers Indem. Co.,* No. H-01-2797, 2002 U.S. Dist. LEXIS 15351, at *31-32 (S.D. Tex. Aug. 19, 2002) ("TruServ claimed that its 'advertising idea,' 'TRUE VALUE' was used 'extensively' to 'sell products.' As a result, the court concluded that, " 'TRUE VALUE' could certainly be considered a 'title or slogan,' and an infringement of that mark potentially fits within the Policy, under the fourth definition of 'advertising injury.' ").

[17]*See* discussion in Santa's Motion for Partial Summary Judgment, pp. 13-14.

assert improper use by JLJ of its "box art."

JLJ's copyright arises by operation of law and is potentially an independent basis for the duty to defend. JLJ used certain words, designs and graphics on boxes of its products, satisfying the "fixed in any tangible medium of expression" requirement of the Copyright Act. JLJ expressly asserts that these are original works of authorship belonging to itself. This is more than enough to create a potential copyright infringement claim (display of copyrighted material of another)[18] clearly within an exception to the intellectual property exclusion ("unauthorized use of any copyrighted advertising material").

## B. "Material Previously Made Known" Exclusion Does Not Apply

The "material previously made known" exclusion has no bearing on St. Paul's duty to defend. St. Paul only argues that its exclusion for material previously made known applies to its Policy No. CK01205353 for the single policy year 1/1/2003 to 1/1/2004. Whether or not this is true is irrelevant to St. Paul's duty to defend when St. Paul argues that the material alleged to be the basis for the "advertising injury" claims was first made known during 2002. St. Paul does not argue that the previous Policy No. CK01204882 for the policy year 1/1/2002 to 1/1/2003 would be affected by this alleged exclusion. Indeed, St. Paul's argument appears to concede that the events leading to the JLJ allegations occurred during its first policy year. It does not matter whether the first policy or the second policy applies because St. Paul has a duty to defend under either policy. *Gibraltar Cas. Co. v. Sargent & Lundy*, 214 Ill. App. 3d 768, 787 (1991) ("If an exclusion clause is relied upon to deny coverage, **its applicability must be clear and free from doubt** at the time the insurer is requested to defend because any doubts as to coverage will be resolved in the insured's favor." (emphasis added)). The only reason St. Paul can give that this exclusion does not apply to the second year is that the prior year's policy covered it. St. Paul has

---

[18] 17 U.S.C. § 106; *see Stephen & Hayes Constr. v. Meadowbrook Homes*, 988 F. Supp. 1194, 1200-01 (N.D. Ill. 1998) (wherein the court found that allegations couched as unfair competition and unjust enrichment were actually allegations of copyright infringement where it was alleged that copyrightable material of one builder was used and shown by another builder for its own profit "to sell its own products").

not proven a clear application of the exclusion to all policy years.[19]

### C. "Poor Quality or Performance" Exclusion Does Not Apply

St. Paul spends a total of five sentences in its Memorandum (p. 14) to argue that the Poor Quality or Performance exclusion applies to part of the JLJ complaint (Count III) because the real "gravamen" of the allegations is "premised upon allegedly false statements by Plaintiffs regarding their own product" (**Memo,** p. 14), thereby triggering an exclusion based on advertising injury "that results from the failure of Plaintiffs' products to conform with advertised quality or performance." This illogical make-weight argument does not conclusively prove the application of the exclusion to all allegations in the JLJ complaints (or any of them). St. Paul cites no authority for its interpretation of this exclusion.

There are at least two fatal flaws in St. Paul's position, in addition to the overall weaknesses of its motion which have been detailed previously). **First,** St. Paul cannot avoid defending based upon its convenient characterization of the "gravamen" of the underlying complaint, even if it were true, and it is not. *Curtis-Universal, Inc.*, 43 F.3d at 1122 ("Nor is the insurer allowed to escape from his duties of defense and indemnification by reference to the core or dominant character of the plaintiff's allegations."). That argument is the sole underpinning of this alleged exclusion and without it the argument fails completely. **Second,** JLJ did not sue as a consumer complaining about the failure of Santa's products to "conform to quality or performance" as advertised. Rather, JLJ sued as a competitor, complaining broadly about Santa's unauthorized use of its advertising slogans and box art on competing packages and advertising.

---

[19]St. Paul claims (**Memo,** p. 13) that it is "reserv[ing] its right to seek summary judgment on the duty to defend and indemnify under Policy No. CK01204882 . . . based upon the 'material previously made known' exclusion." St. Paul cannot avoid its defense duty where it presents no facts or law to conclusively prove application of an exclusion. *Johnson Press of Am., Inc.*, 339 Ill. App. 3d at 871.

## V.    CONCLUSION

For these reasons, St. Paul's motion for partial summary should be denied.

Dated:   June 23, 2004

**SANTA'S BEST CRAFT, LLC, SANTA'S BEST and H.S. CRAFT MANUFACTURING CO.**

By: _____
One of Their Attorneys

Mitchell Bryan
Gary I. Blackman
Christopher S. Griesmeyer
LEVENFELD PEARLSTEIN
2 North La Salle Street, Suite 1300
Chicago, IL 60602
Tel:  (312) 346-8380
Fax:  (312) 346-8434

David A. Gauntlett
James A. Lowe
GAUNTLETT & ASSOCIATES
18400 Von Karman, Suite 300
Irvine, CA 92612
Tel:   (949) 553-1010
Fax:   (949) 553-2050