# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | **04 C 1342** | **DATE** | July 28, 2004 |
| **CASE TITLE** | Santa's Best Craft v St. Paul Fire & Marine Ins. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOJune 14, 2004CKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Hearing

(5) ■ Status hearing set for 8/3/04, at 9:00 a.m.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Memorandum opinion and order entered. Accordingly, defendant's R. 12(f) motion to strike plaintiffs' first amended complaint is denied; defendant's motion to strike certain portions of plaintiffs' L.R. 56.1 statement is granted in part and denied in part; plaintiffs' partial motion for summary judgment is granted; plaintiffs' motions to strike defendant's counterclaim and second partial summary judgment motion is denied; defendant's motoins for partial summary judgment are both denied..

(11) ● [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JUL 3 0 2004 | |
| | Docketing to mail notices. | | date docketed | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | 33 |
| GDS | courtroom deputy's initials | U.S. DISTRICT COURT CLERK 2004 JUL 29 AM 11:37 Date/time received in central Clerk's Office | date mailed notice | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SANTA'S BEST CRAFT, LLC, a Delaware )
limited liability company; SANTA'S BEST )
CRAFT, an Illinois general partnership; and H.S. )
CRAFT MANUFACTURING CO., a Taiwanese )
corporate (Republic of China), )
)
Plaintiffs, )
) No. 04 C 1342
v. )
) Judge Robert W. Gettleman
ST. PAUL FIRE AND MARINE INSURANCE )
COMPANY, a Minnesota corporation, )
)
Defendant. )

**DOCKETED**
JUL 3 0 2004

## MEMORANDUM OPINION AND ORDER

Plaintiffs Santa's Best Craft, LLC, Santa's Best, and H.S. Craft Manufacturing Co.

initiated the instant lawsuit against defendant St. Paul Fire and Marine Insurance Co., seeking,

inter alia, a declaratory judgment that defendant "was and is obligated to provide plaintiffs a

prompt and complete defense" in JLJ, Inc., et al. v. Santa's Best Craft, LLC, et al., which is

currently pending in the Southern District of Ohio. Defendant moved to strike plaintiffs'

amended complaint under Fed. R. Civ. P. 12(f) and, while that motion was pending, plaintiffs

filed a motion for partial summary judgment. Defendant subsequently filed a cross-motion for

partial summary judgment, as well as a motion to strike certain portions of plaintiffs' Local Rule

56.1 statement. While these motions were pending, defendant filed a counterclaim for a

declaratory judgment that it is not obligated to defend plaintiffs and an additional motion for

partial summary judgment, and plaintiffs filed motions to strike defendant's counterclaim and

second partial summary judgment motion.

53

For the reasons stated herein, the court: (1) denies defendant's Rule 12(f) motion to strike plaintiffs' first amended complaint; (2) grants in part and denies in part defendant's motion to strike certain portions of plaintiffs' L.R. 56.1 statement; (3) grants plaintiffs' partial motion for summary judgment; (4) denies plaintiffs' motions to strike defendant's counterclaim and second partial summary judgment motion; and (5) denies both of defendant's motions for partial summary judgment.

## FACTS[1,2]

Plaintiff Santa's Best Craft, LLC ("SBC"), Santa's Best (a partnership), and H.S. Craft Manufacturing Co., are in the business of, among other things, manufacturing and distributing seasonal decorative lighting products. H.S. Craft Manufacturing Co. and Santa's Best are two principal members of SBC. SBC manufactures and distributes strings of Christmas lights under the name "STAY-ON."

Defendant St. Paul Fire & Marine Insurance Co. ("St. Paul") issued two Commercial General Liability Coverage policies to Santa's Best: policy no. CK01204882 for the period of January 1, 2002, through January 1, 2003 (the "2002 policy"), and policy no. CK0205353 for the period of January 1, 2003, through January 1, 2004 (the "2003 policy"). Both the 2002 and 2003

_____

[1]Unless noted otherwise, the following facts, taken from the parties L.R. 56.1 statements and exhibits attached thereto, are not in dispute.

[2]Defendant has moved to strike portions of plaintiffs' L.R. 56.1 statement. Specifically, defendant characterizes paragraphs 23, 30, and 32 as "extraneous," and paragraphs 17, 21, 23, and 31 as "contain[ing] legal conclusions." Although the court denies defendant's motion to strike "extraneous" allegations, the court grants defendant's motion to strike the legal conclusions contained within paragraphs 17, 21, 23 and 31. See Malec v. Sanford, 191 F. R. D. 581, 583 (N.D.Ill. 2000) ("[A] movant's 56.1(a) statement should contain only factual allegations.") (Emphasis in original).

policies list Santa's Best as the first insured, and SBC is listed separately as an insured. Among

other things, the 2002 and 2003 policies included the following "advertising injury" provisions:

> **Advertising Injury Liability.** We'll pay amounts any protected person is legally
> required to pay as damages for covered advertising injury that:
> - results from the advertising of your products, your work, or your
>   completed work; and
> - is caused by an advertising injury offense committed while this agreement
>   is in effect.
>
> *Advertising injury* means injury, other than bodily injury or personal injury, that's
> caused by an advertising injury offense.
>
> *Advertising injury offense* means any of the following offenses:
> - Libel, or slander, in or with covered material.
> - Making known to any person or organization covered material that
>   disparages the business, premises, products, services, work, or completed
>   work of others.
> ...
> - Unauthorized use of any advertising idea or advertising material, or any
>   slogan or title, of others in your advertising.
>
> *Advertising* means attracting the attention of others by any means for the purpose
> of:
> - seeking customers or supporters; or
> - increasing sales or business.
>
> *Advertising idea* means a manner or style of advertising that others use and intend
> to attract attention in their advertising....
>
> *Advertising material* means any covered material that:
> - is subject to copyright law; and
> - others use and intend to attract attention in their advertising.
>
> *Slogan* means a phrase that others use and intend to attract attention in their
> advertising.
>
> But we won't consider slogan to include a phrase used as, or in, the name of:
> - any person or organization, other than you; or
> - any business, or any of the premises, products, services, work, or
>   completed work, of any person or organization, other than you.

The 2002 and 2003 policies further provided certain exclusions, including:

**False material.** We won't cover personal injury or advertising injury that results from false material that:
- was made known by or for the protected person; and
- the protected person knew was false when it was made known.

...

**Intellectual property.** We won't cover injury or damage or medical expenses that result from any actual or alleged infringement or violation of any of the following rights or laws:
- Copyright.
- Patent.
- Trade dress.
- Trade name.
- Trade secret.
- Trademark.
- Other intellectual property rights or laws.

But we won't apply this exclusion to bodily injury or property that results from your products or your completed work.

Nor will we apply this exclusion to advertising injury that results from the unauthorized use of any:
- copyrighted advertising material;
- trademarked slogan; or
- trademarked title
of others in your advertising.

...

**Material previously made known or used.** We won't cover personal injury or advertising injury that results from:
- any material that was first made known before this agreement begins; or
- any advertising idea or advertising material, or any slogan or title, of others, whose unauthorized use in your advertising was first committed before this agreement begins.

...

**Poor quality or performance.** We won't cover advertising injury that results from the failure of your products, your work, or your completed work to conform with advertised quality or performance.

On or about August 7, 2002, SBC received a cease and desist letter from counsel for JLJ, Inc., another company that manufactures and distributes seasonal decorative lighting products, which stated that SBC "has been marketing a competing product, STAY-ON, in packaging that is virtually identical to the packaging that our client used for several years. Such conduct constitutes trade dress infringement in violation of Section 43(a) of the federal Lanham Act, 15 U.S.C. § 1125(a), as well as the unfair competition laws of various states." SBC forwarded the August 7, 2002, letter to defendant, which responded in a letter dated October 23, 2002, that "there is no coverage available for this matter." According to defendant's letter, "The potentially covered claim falls squarely within the Intellectual property exclusion of the policy. Separately and in addition, it appears that any potential advertising offense began prior to inception of the St. Paul policy and would be precluded by the Material previously made known exclusion." With respect to the Material Previously Made Known or Used exclusion, defendant noted that "available information indicates that your STAY-ON product, including one or more versions of the prototype packaging, was marketed in October, November and December 2001."

JLJ, Inc. and Inliten (a seasonal decorative lighting products supplier that markets STAY LIT light sets) filed <u>JLJ, Inc. et al. v. Santa's Best Craft, LLC</u>, Case No. C-3-02-00513, on November 5, 2002, in the Southern District of Ohio. In their five-count complaint, the JLJ plaintiffs asserted five claims: infringement of JLJ's STAY LIT mark (Count I); false designation of origin under 15 U.S.C. 1125(a)(1)(A) (Count II); false advertising under 15 U.S.C. § 1125(a)(1)(B) (Count III); trademark dilution under 15 U.S.C. § 1125(c) (Count IV); and deceptive trade practices under Ohio Revised Code § 4165.03 (Count V).

In a section of the complaint titled, "Early 2002 'Stay-On Packages copied STAY LIT marks and dress," JLJ and Inliten alleged that:

¶ 76. [A]ll STAY LIT Christmas light sets from 1999 to 2001 all had a slogan imprinted on the package that read "Patent-pending 'Stay-On' feature keeps bulbs lit." This slogan still appears on STAY LIT packages of fifty bulbs.

¶ 77. Santa's Best's "Stay-On" mark appears to derive directly from that phrase that appears on STAY LIT boxes.

¶ 78. Furthermore, from 1998 through 2001, all STAY LIT's packages were printed with the slogan "String Stays Lit even if a bulb is loose or missing!"

¶ 79. The early "Stay-On" box was printed with the slogan: "Set Stays Lit... even if a bulb is loose or MISSING." (Emphasis and ellipsis in original.) This slogan, again, is a self-evident sign of deliberate copying by Santa's Best.

¶ 80. From 1999 to 2000, all STAY LIT packages were labeled with the phrase: "New Technology."

¶ 81. The early "Stay-On" box was also printed with the slogan: "New Technology."

¶ 82. When combined with the use of the deliberately similar word mark, "Stay-On," Santa's Best first trade dress was similar to the STAY LIT trade dress on nearly every particular, signifying a design on Santa's Best's part to misappropriate goodwill that was associated with STAY LIT light sets.

In the next section of the JLJ complaint, entitled, "Current 'Stay-On' Packages copy STAY LIT marks and dress," JLJ and Inliten alleged:

¶ 87. All STAY LIT sets of 100 or more bulbs have, since 2001, had the words "worry-free lighting" appearing immediately below the name "STAY LIT." The name and slogan appear together in the same configuration on five of the six panels of box.

¶ 88. The most recent "Stay-On" package has now incorporated the phrase "Dependable Lighting!" which appears immediately below the name "Stay-On" in the same configuration on five of the six panels of the box.

...

¶ 91. The most recent "Stay-On" package also has the slogans "New Patented Technology" and "Set Stays On ... even if a Bulb is Loose." which are strongly similar to the slogans on STAY LIT packages.

In a December 23, 2002, letter, defendant denied coverage to SBC for the JLJ action, stating that the claims asserted were "either outside the coverage grant in the policy or fall squarely within the Intellectual Property exclusion of the policy." Defendant also noted that,

although the JLJ complaint did not state when the allegedly improper marketing or advertising began, "materials originally provided" to defendant indicated that "any potential advertising injury began prior to inception of St. Paul's coverage." Later in that letter, defendant asserted that the first prototype STAY-ON lights and packaging were shown to customers beginning in October 2001, and were finalized in May 2002.

On September 16, 2003, the JLJ and Inliten plaintiffs were granted leave to file an amended complaint, naming as additional defendants Santa's Best, H.S. Craft Manufacturing Co., and Monogram Licensing, Inc. The amended complaint in the JLJ action included all five counts of the original complaint, as well as three additional counts: piercing the veil of limited liability (Count VI); unjust enrichment of Monogram Licensing (Count VII); and civil conspiracy (Count VIII). The allegations relating to wrongful use of trademark, trade dress, and slogans alleged in the amended complaint are substantially the same as those asserted in the original complaint.[3]

On January 13, 2004, defendant acknowledged receipt of the amended complaint and reaffirmed its December 23, 2002, denial of a defense obligation. In an email dated January 28, 2004, Michelle Enright, a claim representative for defendant, indicated to plaintiffs' counsel that she needed additional information to assess the demand for coverage, and that defendant's investigation of plaintiffs' claim was "proceeding under a full reservation of rights, including the right to determine there is no coverage for the claim."

Before that investigation was concluded, plaintiffs filed the instant action in this court.

---

[3]The only difference in these allegations that the court has discerned is the identity of the allegedly offending parties, which, in the amended complaint, includes Santa's Best and H.S. Craft Manufacturing Co.

# DISCUSSION

1. <u>Defendant's Motion to Strike Pursuant to Rule 12(f)</u>

Prior to filing a responsive pleading, defendant moved to strike plaintiffs' amended complaint pursuant to Fed. R. Civ. P. 12(f), arguing that:

> [T]he amended complaint and the averments contained therein are neither short and plain statements of plaintiffs' claims nor simple, concise and direct, as is required under Rule 8. The amended complaint reads more like a summary judgment brief than a complaint under the "short and plain" standard espoused in Rule 8, complete with arguments, legal conclusions, and vague reference to legal authority. Moreover, the content of the amended complaint is vague, confusing, redundant, and prolix.

Defendant also disputed whether plaintiff was entitled to attorneys' fees, and further alleged that the amended complaint misstated portions of the 2002 and 2003 policies.

Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Further, Rule 8(e)(1) states that "[e]ach averment of a pleading shall be simple, concise, and direct." "The primary purpose of these provisions is rooted in fair notice: Under Rule 8, a complaint 'must be presented with intelligibility sufficient for a court or opposing party to understand whether a valid claim is alleged and if so what it is.'" <u>Vicom, Inc. v. Harbridge Merchant Services, Inc.</u>, 20 F.3d 771, 775 (7th Cir. 1994) (quoting <u>Wade v. Hopper</u>, 993 F.2d 1246, 1249 (7th Cir. 1993)).

Fed. R. Civ. P. 12(f) permits a court to strike from any pleading "any redundant, immaterial, impertinent, or scandalous matter." Motions to strike under Rule 12(f) are not favored, however, and "to strike allegations, they must be so unrelated to the party's claims as to be [de]void of merit and unworthy of any consideration." <u>Robinson v. SABIS Educ. Sys., Inc.</u>, 2000 WL 343251, at *4 (N.D.Ill. March 31, 2000). <u>See also</u> <u>Safe Bed Technologies Co. v. KCI</u>

USA, Inc., 2003 WL 21183948, at *2 (N.D.Ill. May 20, 2003) ("Motions to strike under Rule 12(f) are generally not favored, and are usually denied unless the pleading's language is clearly prejudicial"); Vakharia v. Little Co. of Mary Hosp. & Health Care Ctrs., 2 F. Supp. 2d 1028, 1033 (N.D.Ill. 1998) ("A movant bears the burden of demonstrating that the challenged allegations are so unrelated to plaintiff's claim as to be devoid of merit, unworthy of consideration, and unduly prejudicial.").

Although the amended complaint in the instant case is arguably verbose and argumentative at times, and some of its allegations may be characterized as superfluous, the court denies defendant's motion to strike pursuant to Rule 12(f). The court is capable of disregarding any extraneous and argumentative allegations. Moreover, based on defendant's voluminous motions in the instant case, defendant appears quite capable of crafting a response to the allegations contained in the amended complaint. With three summary judgment motions pending, the court is simply not inclined to grant the "drastic remedy," Vakharia, 2 F. Supp. 2d at 1033, requested by defendant.

2.    Plaintiffs' Motions to Strike

On April 15, 2004, while defendant's motion to strike pursuant to Rule 12(f) was pending, plaintiffs filed a motion for partial summary judgment, seeking a declaration that, (1) defendant has a duty to defend, (2) defendant breached its defense obligation, and (3) defendant is estopped from raising coverage defenses. The next day, plaintiffs filed a response to defendant's Rule 12(f) motion to strike.

On May 27, 2004, defendant filed a cross-motion for partial summary judgment, as well as a motion to strike certain portions of plaintiffs' L.R. 56.1 statement. While these motions

were pending, defendant filed a counterclaim for declaratory judgment against plaintiffs on June 29, 2004, and then a second motion for partial summary judgment on June 30, 2004. Plaintiffs responded by moving to strike defendant's counterclaim, as well as its June 30, 2004, motion for partial summary judgment.[4]

A. *Plaintiffs' Motion to Strike Defendant's Counterclaim*

Plaintiffs argue that the court should strike defendant's counterclaim for failure to comply with Fed. R. Civ. P. 7 and 13. Rule 7 provides that a counterclaim "shall" (if compulsory) or "may" (if permissive) be stated as part of a pleading. Fed. R. Civ. P. 7(a) defines allowable pleadings as including complaints, answers, and replies. "No other pleading shall be allowed...." Id.

As noted above, defendant did not answer plaintiffs' amended complaint, but instead filed its motion to strike pursuant to Rule 12(f), which remained pending until this date. Accordingly, defendant's counterclaim was not stated as part of pleading, as required by Rule 13. Notwithstanding this procedural deficiency, the court denies plaintiffs' motion to strike the counterclaim.

Although defendant should have sought leave of court to file its counterclaim, the court will not strike the counterclaim as a result of defendant's failure to do so. Plaintiffs invited the instant procedural quandary by filing their motion for summary judgment prior to this court's

---

[4]The court is dissatisfied with the proliferation of motions in this rather straight-forward insurance coverage dispute. The parties have filed a total of 136 pages of briefs and motions, along with L.R. 56.1 statements, exhibits and affidavits. The court cannot understand why defendant saw fit to file two motions for summary judgment, raising issues that were evident prior to the time the complaint was filed (unless it was an attempt to avoid the page limitations of L.R. 7.1 or to get in the last word). This is the type of litigation practice that gives lawyers a bad name and judges headaches.

10

resolution of defendant's motion to strike and before defendant had filed its answer to the amended complaint. Once plaintiffs thrust the merits of the instant dispute before the court, defendant had little choice but to respond and advance the litigation forward, even though its motion to strike the amended complaint was still pending.

Moreover, defendant's counterclaim seeks the same relief that it sought in its first cross-motion for summary judgment: a declaration that defendant has no duty to defend plaintiffs in the ILJ action. Accordingly, plaintiffs cannot claim unfair surprise or prejudice[5] in the instant action by the filing of the counterclaim, and the court denies plaintiffs' motion to strike.

B.    *Plaintiffs' Motion to Strike Defendant's Second Motion for Summary Judgment*

Plaintiffs also ask the court to strike defendant's second motion for summary judgment, arguing that defendant circumvented the page limitations of L.R. 7.1 by filing a second partial summary judgment motion that covers the same issues as its first motion. Although, as mentioned above, the court is dismayed that defendant has not explained why it failed to consolidate all of its arguments in support of summary judgment in one brief, the court will not strike defendant's second motion for summary judgment on this basis.

Plaintiffs raise two other arguments in support of "striking" defendant's second motion for summary judgment: (1) defendant is estopped from raising the coverage defenses raised in its second motion for summary judgment; and (2) defendant's second summary judgment motion relies on evidence outside the four corners of the ILJ complaint. These criticisms are more properly directed to the merits of defendant's arguments, however, and thus do not compel

_____

[5]Plaintiffs maintain that defendant improperly filed its counterclaim to avoid estoppel (discussed infra). The court, however, expresses no opinion on the effect, if any, of the filing of defendant's counterclaim on any future proceedings involving these parties.

striking the motion. Accordingly, plaintiffs' motion to strike defendant's second motion for summary judgment is denied.

3. <u>Plaintiffs' Motion and Defendant's Motions for Summary Judgment</u>

Plaintiffs have moved for partial summary judgment, seeking an adjudication that, (1) defendant is obligated to defend them in the <u>JLJ</u> action, and (2) defendant breached its duty to defend. Defendant cross-moved for partial summary judgment on the issue of its duty to defend plaintiffs, and subsequently filed a second partial summary judgment motion on that issue.

The parties do not dispute the key terms of the 2002 and 2003 policies, or their enforceability. Rather, the parties' disagreement centers on the applicability of the "advertising injury offense" provision, as well as its exclusions, to the underlying <u>JLJ</u> suit.

Defendant maintains that the Intellectual Property exclusion absolves defendant of its duty to defend, and that the "trademarked slogan" exception to that exclusion does not apply. In the alternative, defendant contends that the Material Previously Made Known or Used exclusion in the 2002 policy bars plaintiffs' claims because plaintiffs used the slogans at issue in the <u>JLJ</u> suit as early as 2001.

Plaintiffs, in contrast, argue that the Intellectual Property exclusion does not apply. Further, plaintiffs suggest that, if that exclusion does apply to the underlying <u>JLJ</u> action, the court must conclude that the "trademarked slogan" exception also applies, or alternatively, is sufficiently ambiguous that it must be construed against defendant. Last, plaintiffs contend that defendant's argument regarding the Material Previously Made Known or Used exclusion

improperly relies on material extraneous to the underlying JLJ action.[6] The court addresses each of these issues in turn below.

i.   Application of the Intellectual Property Exclusion & Its Exception for "Trademarked Slogan"

In Maneikis v. St. Paul Ins. Co. of Illinois, 655 F.2d 818, 822 (7th Cir. 1981) (citations omitted), the Seventh Circuit explained:

> Since an insurer's duty to defend is broader than its duty to indemnify in Illinois, an insurer's refusal to defend is wrongful if the allegations in the underlying lawsuit are even potentially within the scope of the policy, with any doubts as to coverage to be resolved in favor of the insured. Even if recovery in the underlying suit is premised upon several theories of liability, some of which are excluded from policy coverage, the insurer is still obligated to defend if even one theory falls within the policy's coverage.

In the 2002 and 2003 policies, "advertising injury offense" is defined as "unauthorized use of ... any slogan... of others in your advertising." In its cross-motion, defendant concedes that "the underlying JLJ complaints contain allegations concerning SBC's copying of certain of JLJ's slogans." Defendant maintains, however, that those allegations are merely "components of the

---

   [6]Plaintiffs also argue at great length that defendant is estopped from asserting all policy defenses. See, e.g., Maneikis v. St. Paul Ins., 655 F.2d 818, 821 (7th Cir. 1981) ("Once an insurer violates its duty to defend, it is estopped to deny policy coverage in a subsequent lawsuit by the insured or the insured's assignee."). Estoppel in this context, however, arises only after it has been determined that the insurer breached its duty to defend. See Employers Ins. of Wausau v. Ehlco Liquidating Trust, 186 Ill.2d 127, 151-54 (Ill. 1999) ("This estoppel doctrine applies only where an insurer has breached its duty to defend. Thus, a court inquires whether the insurer had a duty to defend and whether it breached that duty.... With regard to the Wyoming site, we determine, infra, that Wausau breached its duty to defend in the Wyoming action. Since Wausau breached its duty to defend, the estoppel doctrine applies.").

   Korte Constr. Co. v. Am. States Ins., 322 Ill. App. 3d 451, 458 (Ill. App. 5th Dist. 2001), in which the Illinois Appellate Court applied estoppel, does not compel a contrary result. The court specifically noted that, "[Defendant] American States does not argue on appeal that the trial court erred in finding that the allegations of the Voigt complaint bring the action within, or potentially within, the scope of its insurance policy. Instead, American States argues only that it did properly seek a declaratory judgment that there was no coverage for Korte under its policy and therefore it should not be estopped from raising policy defenses."

alleged trade dress infringement," and thus fall under the Intellectual Property exclusion contained in the 2002 and 2003 policies. Further, defendant contends that, because the slogans at issue are not alleged to be trademarked, the "trademarked slogan" exception to the Intellectual Property exclusion does not apply.

Plaintiffs respond that defendant is improperly trying to relabel the express allegations of the underlying complaints in the JLJ action in order to dodge coverage. The court agrees.

"[The court] give[s] little weight to the legal label that characterizes the underlying allegations. Instead, [the court] determine[s] whether the alleged conduct arguably falls within at least one of the categories of wrongdoing listed in the policy." Lexmark Intern., Inc. v. Transportation Ins. Co., 327 Ill. App. 3d 128, 135-36 (Ill. App. 1st Dist. 2001) (citation omitted). In the instant case, the JLJ complaints explicitly reference at least four "slogans" from the STAY LIT package that were "copied" by SBC: "Patent-pending 'Stay-On' feature keeps bulbs lit."; "New Technology"; "String Stays Lit even if a bulb is loose or missing!"; and "worry-free lighting." Although these allegations may indeed support the JLJ plaintiffs' arguments regarding trade dress, the fact remains that these allegations also clearly fall within the category of "advertising injury offense" and may potentially yield a judgment for the JLJ plaintiffs based on plaintiffs' "unauthorized use of [JLJ's] slogan," separate and apart from JLJ's trade dress claims. Cf. Cincinnati Ins. Co. v. Zen Design Group, Ltd., 329 F.3d 546 (6th Cir. 2003) (insurer owed duty to defend in action alleging, inter alia, trademark and trade dress infringement, because insured's use of competitor's trademarked phrase "The Wearable Light" was potentially within "infringement of slogan" coverage).

14

To conclude otherwise would be inconsistent with Illinois law, which requires the court

to resolve all ambiguities in favor of the insured, including ambiguities regarding exclusions.

See Central Mutual Ins. Co. v. StunFence, Inc, 292 F. Supp. 2d 1072, 1081 (N.D.Ill. 2003) ("[I]t

must also be remembered that exclusions are subject to the same interpretive rule that all

ambiguities are resolved in favor of the insured.") (citation omitted). The court thus concludes

that the Intellectual Property exclusion does not apply.

Even if the court concluded otherwise, and held that the Intellectual Property exclusion

did in fact apply, defendant would still have a duty to defend. As described above, the

Intellectual Property exclusion contains an exception for "trademarked slogans," which would at

least potentially apply in the instant case. Defendant contends that although the slogans are

protected by intellectual property laws to the extent that such protection would trigger application

of the Intellectual Property exclusion, that protection stops short of meriting application of the

"trademarked slogan" exception because, defendant contends, the slogans at issue are not

"trademarked." The court is troubled by defendant's assertion that, because the slogans at issue

are part of a larger trade dress claim, the slogans should qualify as "trade dress" for the purposes

of applying the Intellectual Property exclusion, but not count as "trademarked" for the purposes

of the exception to that exclusion. Such a result would be difficult to reconcile with this court's

obligation to resolve all doubts in favor of the insured, and the fact that historical distinctions

between "trade dress" and "trademark" have gradually disappeared over the past century. See J.

THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 8.1 (4th ed.).

Moreover, the court is reluctant to conclude that the slogans at issue could never be

characterized as "trademarked." Although defendant argues at great length that the slogans at

issue are not worthy of trademark protection, it is not appropriate for this court to resolve that issue, which is clearly a matter to be decided by the court adjudicating the underlying JLJ action.

ii.      Application of the Material Previously Made Known or Used Exception

In its second motion for summary judgment, defendant argues that plaintiffs first used the slogans at issue in the JLJ dispute in 2001, which would mean that the Material Previously Made Known or Used exclusion "operates to preclude a defense and indemnity obligation owing to plaintiffs" under the 2002 and 2003 policies. In support of this contention, defendant directs the court's attention to pleadings and opinions in the JLJ case, as well as a complaint for declaratory relief and breach of contract brought by plaintiffs against Zurich American Insurance Company, which insured plaintiffs during 2001.

More specifically, defendant notes that, in their answer to the amended complaint in the JLJ case, plaintiffs admitted, inter alia, that: (1) in 2001 and 2002 SBC and Santa's Best marketed its "Stay-On" light sets as sets that "Stays On... even if a Bulb is Loose"; (2) Santa's Best began to market "Stay-On" light sets in 2001; and (3) the package for Stay-On light sets marketed in 2001 and 2002 states that the product features "New In Circuit Current Limiting Technology." The district court presiding over the JLJ action similarly found, in its preliminary injunction order, that "SBC... began marketing its new [Stay-On] sets to retailers in late 2001 and early 2002."

Moreover, in their complaint against their former insurer, Zurich American Insurance Company, plaintiffs stated that, "[t]he advertising and marketing activity referred to in the [JLJ] complaint clearly took place in part or in its entirety during the last three months of 2001 and within the Zurich policy period." Defendant also directs the court's attention to an email from Bill Protz of Santa's Best to Jerry Gallivan at St. Paul, in which he stated in part, "The first prototype along

16

with a prototype package was shown to customers in Oct 2001. The package design and copy was not finalized until May of 2002. There were many changes made to the design and the copy."

Plaintiffs respond that the court should not consider any material that falls outside the four corners of the complaints in the JLJ action. See, e.g., Atlantic Mutual Insurance Co. v. American Academy of Orthopaedic Surgeons, 315 Ill. App. 3d 552, 567 (Ill. App. 1st Dist. 2000) ("[W]here summary judgment is sought in the context of a declaratory judgment action to determine whether an insurer has a duty to defend, the use of extrinsic evidence is inappropriate."); Bituminous Casualty Corp. v. Fulkerson, 212 Ill. App. 3d 556, 562 (Ill. App. 3d Dist. 1991) ("Where a declaratory judgment action is brought to determine an insurer's duty to defend, the rule in this State is that the court must look only to the complaint in the underlying action to see if the allegations set forth therein show that the insured's conduct is within or potentially within coverage.").

In support of its reliance on extrinsic evidence, defendant directs the court's attention to Fidelity & Casualty Co. Of New York v. Envirodyne Engineers, Inc., 122 Ill. App. 3d 301, 304 (Ill. App. 1st Dist. 1983), in which the Illinois Appellate Court explained, "To require the trial court to look solely to the complaint in the underlying action to determine coverage would make the declaratory proceeding little more than a useless exercise possessing no attendant benefit and would greatly diminish a declaratory action's purpose of settling and fixing the rights of the parties." Accordingly, the Envirodyne court held that if an insurer opts to file a declaratory judgment proceeding, it may properly challenge its duty to defend by offering extrinsic evidence to prove that the insured's actions fell within a policy exclusion, so long as that evidence would not determine an issue critical to the underlying lawsuit. Id. at 304-05. Defendant argues that "[s]uch a rule is particularly appropriate when the complaint is silent as to the timing of the conduct at issue, but the

insured has affirmatively admitted to its insurer and to courts in Illinois and Ohio in judicial pleadings that its conduct began prior to the inception of St. Paul's policies."

Even assuming arguendo that the rule announced in Envirodyne is applicable to the instant case, consideration of the extrinsic evidence produced by defendant would not persuade the court that defendant has no duty to defend plaintiffs. The Material Previously Made Known or Used exclusion provides that, "We won't cover personal injury or advertising injury that results from...any advertising idea or advertising material, or any slogan or title, of others, whose unauthorized use in your advertising was first committed before this agreement begins." The extrinsic evidence relied on by defendant demonstrates that, at most, plaintiffs' alleged use of two of JLJ's slogans (or portions thereof) began in 2001: "Patent-pending 'Stay-On' feature keeps bulbs lit." and "String Stays Lit... even if a bulb is loose or missing!".

According to the complaint in the JLJ action, however, there are two other "slogans" that plaintiffs allegedly infringed: "New Technology" and "worry-free lighting." Even assuming arguendo that "New Technology" was used in 2001 on "early packages" of Stay-Lit sets - a fact that was not established in any of the extrinsic materials provided by defendant - the JLJ complaints state that plaintiffs' alleged infringement of "worry-free lighting" first occurred in plaintiffs' "current" packages, which use the phrase "Dependable lighting!" and were allegedly marketed in 2002. Accordingly, not all of the slogan infringement allegations in the JLJ complaints appear to relate to conduct occurring before 2002. Resolving all doubts regarding coverage in plaintiffs' favor, the court thus concludes that defendant has a duty to defend plaintiffs in the JLJ action based on the 2002 policy.

This conclusion is consistent with plaintiffs' allegations from their complaint against their former insurer, Zurich American Insurance Company, in which they stated that, "[t]he advertising and marketing activity referred to in the [JLJ] complaint clearly took place in part or in its entirety during the last three months of 2001 and within the Zurich policy period." (Emphasis added). Quite simply, plaintiffs never conceded that all of the marketing and advertising activity alleged in the JLJ complaints took place entirely in 2001; rather, the materials relied on by defendant establish only that some of that activity began in 2001. Taken together with Bill Protz's email, which stated that "[t]he [Stay-On] package design and copy was not finalized until May of 2002," and "[t]here were many changes made to the design and the copy," the court concludes that the Material Previously Made Known or Used exclusion does not apply to all of the slogans at issue in the JLJ complaints.

For these reasons, the court concludes that defendant is obligated to defend plaintiffs in the JLJ action under policy no. CK01204882 covering the period January 1, 2002, through January 1, 2003. Because "the insurer is... obligated to defend if even one theory falls within the policy's coverage," Maneikis v. St. Paul Ins., 655 F.2d 818, 822 (7th Cir. 1981), the court need not address whether the other theories of liability in the JLJ complaint give rise to a duty to defend. Accordingly, the court grants plaintiffs' motion for partial summary judgment and denies both of defendant's motions for partial summary judgment.

## CONCLUSION

For the reasons stated herein, the court, (1) denies defendant's Rule 12(f) motion to strike plaintiffs' first amended complaint; (2) grants in part and denies in part defendant's motion to strike certain portions of plaintiffs' L.R. 56.1 statement; (3) grants plaintiffs' partial motion for summary judgment; (4) denies plaintiffs' motions to strike defendant's counterclaim and second partial

summary judgment motion; and (5) denies both of defendant's motions for partial summary judgment. The parties are directed to appear for a report on status on August 3, 2004, at 9:00 a.m.

**ENTER:**     **July 28, 2004**

_____

**Robert W. Gettleman**
**United States District Judge**