IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SANTA'S BEST CRAFT, LLC, a Delaware limited liability company; SANTA'S BEST CRAFT, an Illinois general partnership; and H.S. CRAFT MANUFACTURING CO., a Taiwanese corporation (Republic of China),<br><br>Plaintiffs,<br><br>v.<br><br>ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a Minnesota corporation,<br><br>Defendant. | No. 04 C 1342<br><br>Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Despite this court's comment in a previous opinion in this matter expressing dissatisfaction with the "proliferation of motions" and labeling this "the type of litigation practice that gives lawyers a bad name and judges headaches," plaintiffs have brought a motion for partial summary judgment and defendant has filed a motion to stay that together have generated 77 pages of motions and briefs, accompanied by several hundred pages of affidavits and exhibits, which are riddled with premature, tangential, and redundant arguments and extraneous facts. The court's headache has increased in severity and the lawyers have done nothing to improve their performance. The court is thus burdened with deciding issues that could and should have been resolved in a more efficient, comprehensive manner.

Plaintiffs Santa's Best Craft, LLC, Santa's Best, and H.S. Craft Manufacturing Co. initiated the instant lawsuit against defendant St. Paul Fire and Marine Insurance Co. ("St. Paul"), seeking, inter alia, a declaratory judgment that defendant had a duty to defend plaintiffs in

JLJ, Inc., et al. v. Santa's Best Craft, LLC, et al., which was pending in the Southern District of Ohio. According to plaintiffs, subsequent to the filing of the instant motion, the JLJ litigation settled in early December 2004 for $3.5 million to be paid by plaintiff. This court ruled, inter alia, in its July 30, 2004, Memorandum Opinion and Order that St. Paul had a duty to defend plaintiffs. Santa's Best Craft, et al. v. St. Paul Fire and Marine Ins. Co., 2004 WL 1730332 (N.D. Ill. July 30, 2004). Plaintiffs bring the instant motion for partial summary judgment quantifying defense expenses. On December 23, 2004, defendant filed a motion to vacate the date set for the court's January 27, 2005, ruling date on the pending motion and to stay the ruling. At a status hearing on January 4, 2005, the court denied without prejudice defendant's motion to vacate the court's ruling date and stay the action, but indicated that it would consider defendant's arguments in support of defendant's motion to stay with plaintiffs' motion for partial summary judgment.

For the reasons stated herein, the court denies plaintiffs' motion for partial summary judgment to quantify defense expenses, and the court grants defendant's motion to stay.

## FACTS[1]

The following are the facts relevant to the instant motion for partial summary judgment quantifying defenses expenses.[2] Plaintiffs Santa's Best (a partnership) and H.S. Craft Manufacturing Co. are two principal members of plaintiff Santa's Best Craft, LLC ("SBC"). Plaintiffs manufacture and distribute, among other things, seasonal decorative lighting products.

---

[1] Unless noted otherwise, the following facts, taken from the parties L.R. 56.1 statements and exhibits attached thereto, are not in dispute.

[2] For a fuller recitation of the underlying facts, see Santa's Best, 2004 WL 1730332.

2

Defendant St. Paul issued Santa's Best a Commercial General Liability Coverage policy no. CK01204882 for the period of January 1, 2002, through January 1, 2003 (the "2002 policy"). The 2002 policy lists Santa's Best as the first insured, and SBC is listed separately as an insured.

On November 5, 2002, JLJ, Inc., another company that manufactures and distributes seasonal decorative products, filed a five-count complaint against SBC in the Southern District of Ohio, alleging trade dress infringement and other violations of unfair competition laws of various states ("the JLJ action"). SBC tendered its defense in the JLJ action to defendant. In a December 23, 2002, letter, defendant denied coverage for the JLJ action. The JLJ plaintiffs filed an amended complaint adding Santa's Best, H.S. Craft, and Monogram Licensing, Inc. ("Monogram"), a licensee of Santa's Best.[3] On January 13, 2004, defendant acknowledged receipt of an amended complaint in the JLJ action and reaffirmed its December 23, 2002, denial of a defense obligation. According to plaintiffs, plaintiffs agreed to pay for Monogram's defense in the JLJ suit, and to coordinate defense of the JLJ suit with Monogram. At least one of the law firms involved in the defense of the JLJ action was directly retained by Monogram and invoiced Monogram directly, which sent the invoices to SBC for reimbursement. Plaintiffs argue that defendant is obligated had duty to defend Monogram because Monogram is an indemnitee of plaintiffs.

---

[3] On June 7, 2000, Santa's Best entered into a trademark license agreement with Monogram permitting Santa's Best to market and sell Santa's Best products under the brand name GE (i.e., General Electric Company), and using GE's trademarks. Santa's Best's license agreement with Monogram contains an indemnity provision requiring Santa's Best to defend and hold Monogram harmless against various claims made by third parties arising from activities under the license.

On February 20, 2004, plaintiffs filed a action in this court seeking a declaratory judgment that defendant "was and is obligated to provide plaintiffs a prompt and complete defense" in the JLJ action. Plaintiffs filed an amended complaint on March 8, 2004. Plaintiffs and defendant filed motions for partial summary judgment. While these motions were pending, defendant filed a counterclaim for a declaratory judgment that it is not obligated to defend plaintiffs and an additional motion for partial summary judgment, and plaintiffs filed motions to strike defendant's counterclaim and second partial summary judgment motion. In its July 30, 2004, Memorandum Opinion and Order this court found, inter alia, that defendant had a duty to defend plaintiffs in the JLJ action, and denied plaintiffs motion to strike defendant's counterclaim. Santa's Best, 2004 WL 1730332.

Zurich American Insurance Company ("Zurich") insured plaintiffs for a period of time directly prior to the 2002 policy issued by defendant St. Paul. In November 2002, plaintiffs also tendered their defense in the JLJ action to Zurich. Zurich initially denied a defense, but subsequently agreed on May 3, 2003, to defend plaintiffs in the JLJ action. In January 2003, plaintiffs filed a suit against Zurich in the Circuit Court of Cook County, Chancery Division, alleging that Zurich had paid only a portion of the defense costs and expenses in the JLJ action. See Santa's Best Craft, LLC v. Zurich American Ins. Co., case no. 04 CH 01885 ("the Zurich action"). Plaintiff's first amended complaint in the Zurich action was filed on or about July 23, 2004, and alleges that Zurich had paid one-third of plaintiffs' defense expenses to date. In August 2004, Zurich filed a third-party complaint against St. Paul in the Zurich action, seeking contribution. St. Paul has filed a motion to strike or dismiss Zurich's third-party complaint in the Zurich action.

4

On October 12, 2004, plaintiffs filed a motion for partial summary judgment in the Zurich action quantifying defense expenses. Plaintiffs' motion against Zurich seeks an order from the state court declaring that Zurich owes expense reimbursement for the attorneys' fees incurred by plaintiffs and Monogram from approximately December 2002 through June 30, 2004, in the amount of $1,411,617.64, which is $2,023,874.64 less $650,016.00 in payment of defense fees previously made by Zurich. Plaintiffs also seek interest on the $1,411,617.64.

Plaintiffs' instant motion in this court seeks a judgment that defendant St. Paul must reimburse all legal expenses and costs related to the JLJ action from plaintiffs' tender of their defense to defendant through June 30, 2004. Plaintiffs claim total expenses of $2,023,874.64. Plaintiffs also seek $99,378.37 in prejudgment interest through August 26, 2004, plus $277.24 in daily interest thereafter. Following the filing of plaintiffs' motion for partial summary judgment to quantify defense expenses, defendant paid plaintiffs $854,259.44 on August 26, 2004. According to defendant, this represents 50% of the total defense expenses claimed by plaintiffs, less allegedly duplicative charges and certain categories of charges for which defendant claims it is not responsible.

Because the parties have not exchanged their Rule 26(a)(1) initial disclosures or held a Rule 26(f) scheduling conference, no interrogatories or production requests have been served.

## SUMMARY JUDGMENT STANDARD

A movant is entitled to summary judgment under Fed. R. Civ. P. 56 when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Unterreiner v. Volkswagen of America, Inc., 8 F.3d 1206, 1209 (7th Cir. 1993).

Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Becker v. Tenenbaum-Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. See Fisher v. Transco Services-Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Stewart v. McGinnis, 5 F.3d 1031, 1033 (7th Cir. 1993). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.

## DISCUSSION

The instant motion represents the most recent round in an insurance coverage dispute that has already spawned two separate actions in two different courts, countless motions and cross-motions, a district court opinion, and hundreds of pages of briefs and exhibits. The underlying suit, the JLJ action, was settled in December 2004. Litigation is pending against both of plaintiffs' insurers - defendant St. Paul and Zurich - and plaintiffs seek full payment of defense expenses from each insurer, although only St. Paul is before this court.

For the reasons discussed below, plaintiffs' motion for partial summary judgment is denied, and defendant's motion to stay is granted.

1.  Estoppel

Plaintiffs argue that defendant is estopped from raising any coverage defenses because defendant breached its duty to defend, and that defendant must therefore reimburse SBC for all of its expenses related to the JLJ action. It is well established under Illinois law that estoppel applies only when there it a duty to defend and that duty has been breached. See e.g., Maneikis v. St. Paul Ins. Co., 655 F.2d 818, 821 (7th Cir. 1981)(collecting cases); Employers Inc. of Wausau v. Ehlco Liquidating Trust 186 Ill.2d 127, 151-54 (Ill. 1999). The court rejects plaintiffs' estoppel argument for the reasons discussed herein.

Plaintiffs' assertion that defendant is estopped from raising coverage defenses is premised in part on a misinterpretation of this court's previous opinion. Contrary to plaintiffs' contention, this court did not find in its July 30, 2004, opinion that defendant had breached its duty to defend plaintiffs. Rather, this court held, inter alia, that "defendant is obligated to defend plaintiffs in the JLJ action under policy no. CK01204882 covering the period January 1, 2002, through January 1, 2003." Santa's Best, 2004 WL 1730332, at *10. In support of their argument that this court also found that defendant had breached its duty, plaintiffs point to the court's concluding statement that the court "grants plaintiffs' partial motion for summary judgment," which the court had earlier described as "seeking an adjudication that, (1) defendant is obligated to defend them in the JLJ action, and (2) defendant breached its duty to defend." 2004 WL 1730332, at * 6. A complete reading of the court's opinion, however, establishes that the court did not find breach or estoppel. In fact, the court noted that estoppel "arises only after it has been determined

7

that the insurer breached its duty to defend," and that it was not reaching the issue of estoppel. 2004 WL 1730332, at *6 n. 6. To eliminate any remaining ambiguity, the court now clarifies that its July 30, 2004, opinion held only that defendant owed plaintiffs a duty to defend, and did not find that defendant had breached that duty or was estopped from raising coverage defenses.

Alternatively, plaintiffs argue that even if this court did not previously hold that defendant breached its duty to defend, the court should now find breach by defendant because defendant failed to defend plaintiffs or file a declaratory judgment action until after plaintiffs filed a motion for partial summary judgment. Plaintiffs argue that defendant is estopped because defendant filed a responsive motion seeking a declaratory judgment, rather than initiating a declaratory judgment action. The Seventh Circuit, in Roman Catholic Diocese v. Maryland Casualty Co., 139 F.3d 561 (7th Cir. 1998), recently rejected an identical argument. Roman Catholic denied the plaintiff's argument that, because the defendant insurance company denied the plaintiff a defense without filing its own suit for a declaratory judgment relieving it of that obligation, the defendant insurance company was estopped from denying coverage and thus obligated to pay any and all of the plaintiff's legal fees. The Seventh Circuit noted:

> That contention is frivolous. We have repeatedly noted that under Illinois law, an insurer has three choices when its insured is sued on a claim that the insurance company believes is beyond the policy's coverage: (1) it may seek a declaratory judgment relieving it of the obligation to defend; (2) it may defend the insured under a reservation of rights; or (3) it may do neither and risk a subsequent finding that it breached the duty to defend, a finding that would require it to indemnify the insured for any liability the insured incurs in the underlying action." Id. at 565-66 (citations omitted).

Roman Catholic defeats plaintiffs' argument in the instant case. Plaintiffs assert that defendant chose the third option (i.e., to "do neither"), but in fact defendant clearly availed itself of the

8

second option when it filed a counterclaim and cross-motion for summary judgment seeking a declaratory judgment that it did not have a duty to defend.

Contrary to plaintiffs' contention, it is of no consequence to the estoppel doctrine which party initiates the declaratory judgment. Roman Catholic, 139 F.3d at 566 ("The fact that [the defendant] decided to put [the plaintiff] to the bother of seeking a declaratory judgment rather than doing so itself does not estop the insurance company from arguing that it is has no duty to defend."); see also Industrial Coatings Group, Inc. v. American Motorists Ins. Co., 276 Ill. App. 3d 799, 811-812 (1995)(collecting cases); Village of Melrose Park v. Nautilus Ins. Co., 214 Ill. App. 3d 864, 866 (1st Dist. 1991)(holding that the fact that the plaintiff brought the action is "irrelevant; it is the fact of the declaratory judgment that is of legal import, and not the identity of the party initiating the proceeding." Defendant in the instant case sought a declaratory judgment, both through its cross-motion for summary judgment and its counterclaim.

Lastly, plaintiffs argue that even if defendant's counterclaim could serve as a sufficient adjudication of its rights and duties, it was untimely, and therefore does not prevent defendant from being estopped. Plaintiffs cite Insurance Co. of State of Pa. v. Protective Ins. Co, 227 Ill. App. 3d 360 (1st Dist. 1992), which holds that an insurance company may be estopped if it unjustifiably delays filing a declaratory judgement motion. The insurance company in Protective Insurance, however, waited more than two years to file, while defendant here filed its counterclaim and cross-motions for summary judgment only three months after defendant received notice of the amended complaint in the JLJ action. In the context of the instant case, the court does not find this delay to be unjustifiable. Moreover, recent expressions of Illinois law support defendant's contention that a declaratory judgment action is timely any time before the

9

underlying case is resolved. See State Farm Fire & Cas. Co. V. Martin, 186 Ill.2d 367, 374 (1999); Pekin Ins. Co. v. Allstate Ins. Co., 329 Ill. App. 3d 46 (1st Dist. 2002); Farmers Auto Ins. Ass'n v. Country Mut. Ins. Co., 309 Ill. App. 3d 694, 700 (4th Dist. 2000).

The court is unpersuaded by plaintiffs' other citations, which are either inapposite or mischaracterized. For example, plaintiffs cite Peterson Sand & Gravel, Inc. v. Maryland Cas. Co., 881 F. Supp. 309, 315 (N.D. Ill. 1995), in which the court noted in dicta that the defendant insurer, which had never sought declaratory judgment, could have filed "a prompt declaratory judgment action." Contrary to plaintiffs' reading, the court finds nothing in Peterson to suggest that only a "prompt" filing would be sufficient. Plaintiffs also repeatedly cite Employers Ins. v. Ehlco Liquidating Trust, 186 Ill.2d 127 (1999), in which the Illinois Supreme Court imposed estoppel on the defendant insurer. Plaintiffs fail to note, however, that the insurer in Ehlco filed its motion for declaratory judgment three months after the underlying case settled.

Defendant in the instant case sought a proper, timely adjudication of its rights and duties through its counterclaim and cross-motions for summary judgment. Accordingly, the court denies plaintiffs' motion for partial summary judgment on the ground that defendant is estopped from raising coverage defenses.

2.  Conflict of interest

Plaintiffs argue, alternatively, that defendant must reimburse all of SBC's defense expenses because defendant and plaintiffs have conflicting interests with respect to the defense of the JLJ suit, and therefore defendant cannot control SBC's defense by "second-guessing" the legal bills. Under Illinois law, if a conflict of interest exists, an insurer must decline to defend, and instead of participating in the defense itself, the insurer must pay the costs of independent

10

counsel for the insured. Thorton v. Paul, 74 Ill.2d 132, 152 (1978); Maryland Casualty Co. v. Peppers, 64 Ill.2d 187, 198-99 (1976). The court notes that a conflict of interest is typically raised by an insurer, not an insured, that seeks to avoid providing a defense for a insured. See e.g., Illinois Tool Works v. Home Indem. Co., 998 F. Supp. 868 (N.D. Ill. 1998); Murphy v. Urso, 88 Ill.2d 444 (1981).

Plaintiffs are correct in their general statement of Illinois insurance law regarding payment of defense costs when a conflict of interest exists, but mistaken in their application of this doctrine to this case. By selectively quoting conflict of interest cases, sometimes without clarifying that they are conflict of interest cases, plaintiffs attempt to create the impression that there is a general rule requiring insurers, regardless of whether a conflict of interest has been claimed or established, to reimburse the defense costs of an insured as they are incurred.[4] This is simply neither the law in Illinois, nor a sensible approach to insurance coverage disputes.

The opinions relied on by plaintiffs in support of their sweeping proposition - including In re New Era, 135 F.3d 1206 (7th Cir. 1998), LaSalle Nat'l Trust v. Schaffner, 818 F. Supp. 1161 (N.D. Ill. 1993), and Murphy v. Urso, 88 Ill.2d 444 (1981) - are distinguishable from the instant case because, unlike in those cases, plaintiffs here have not established a conflict of interest. For example, the insurer in Murphy represented two insureds with mutually exclusive theories of the case that "were diametrically opposed, creating an ethical conflict for [the insurer], which was charged with providing a full and vigorous defense to each." 88 Ill.2d at 453. Here, plaintiffs

---

[4]For example, plaintiffs cite LaSalle Nat'l Trust v. Schaffner, 818 F. Supp. 1161, 1172 (N.D. Ill. 1993), for the proposition that "reimbursement should be provided as defense costs are incurred." Plaintiffs fail to inform the court, however, that the LaSalle court's opinion was premised the insurer's assertion of a conflict of interest, which defendant here has not made.

11

assert that SBC has a conflict of interest with defendant merely because defendant "continues to deny coverage on grounds that trigger a conflict of interest," without further explanation. Such a conclusory statement does not establish a conflict of interest. An insurer's interest in denying coverage does not, by itself, create a conflict of interest. See Illinois Tool Works v. Home Indem. Co., 998 F. Supp. 868, 874 (N.D. Ill. 1998).

Accordingly, the court denies plaintiffs' motion for partial summary judgment on the grounds that a conflict of interest between plaintiffs and defendant.

3. Reasonable fees as matter of law

Lastly, plaintiffs argue that the defense fees submitted are reasonable as a matter of law because SBC "incurred all the expenses in high-stakes litigation with no guarantee that the expenses would be repaid by St. Paul," and because SBC "has already paid the majority of the billed fees and costs in its normal course of business." Plaintiffs seek a declaratory judgment that defendant is obligated to pay the total expenses submitted, without any reduction or allocation with Zurich.

Defendant identifies multiple material issues of fact, including: (1) whether and what fees have been paid by plaintiffs; (2) whether plaintiffs had a reasonable expectation of reimbursement of the fees at issue when they paid them; (3) the amount of payment by Zurich and the entities for whom defense costs have been paid; (4) whether H.S. Craft qualifies as a "protected person" under the 2002 policy[5]; and (5) whether all prerequisites to coverage for

---

[5] The court has previously determined that St. Paul owed all plaintiffs - including H.S. Craft - a duty to defend under the 2002 policy. Santa's Best, 2004 WL 1730332.

Monogram's defense costs have been satisfied. The court addresses only some of these below because it finds sufficient triable issues of fact to preclude summary judgment.

In support of their argument that the fees they incurred were reasonable as a matter of law, plaintiffs cite to numerous decisions suggesting that an important factor in considering the reasonableness of attorneys' fees is the fact that the bills were paid. Plaintiffs rely heavily on Knoll Pharm. Co. v. Automobile Ins. Co., 210 F. Supp. 2d 1017 (N.D. Ill. 2002), but their reliance on this and other attorneys' fee cases is misplaced because of factual distinctions. For example, the court in Knoll held that all of the insured's fees and costs were reasonable as a matter of law and recoverable by the insurer, but the Knoll court's decision was premised on its findings that: (1) the insurer had breached its duty to defend; (2) the insured had paid all of its bills; and (3) the bills were paid at a time when ultimate recovery was uncertain. As discussed below, none of these circumstances have been found in the instant case, and Knoll is thus inapposite.

Plaintiffs also rely on the recent Seventh Circuit opinion in Taco Bell, which reaffirmed that the market price paid for legal services may be an indication of reasonableness. Taco Bell Corp. v. Continental Casualty Co., 388 F.3d 1069, 1075-76(7th Cir. 2004). The court does not read Taco Bell, however, to hold that the amount of fees paid alone is always sufficient to find fees reasonable as a matter of law, particularly when, as here, issues of material fact exist. Moreover, unlike in Taco Bell, defendant in the instant case does not argue that plaintiffs overpaid their lawyers in the JLJ action. Defendant, therefore, is not seeking the kind of "excruciatingly detailed" audit and "painstaking judicial review" of plaintiffs' expenses that was sought by the insurance company in Taco Bell, and which was cited by the Seventh Circuit as

one reason to grant the plaintiff summary judgment for its total fees. 388 F.3d at 1076. Instead, defendant here argues that it is not liable for certain types of expenses included in plaintiffs' total calculation. For example, defendant argues that it is not liable for the expenses attributable to the defense of Monogram because Monogram is not an insured under the 2002 policy, Monogram is not a plaintiff in the instant action, and there has been no determination that defendant owes Monogram a duty to defend. This is readily distinguishable from the request by the defendant in Taco Bell that the court conduct a line-by-line review of the bills submitted by the plaintiff.

Even if the court found that the price paid for legal services was the best evidence of their market value and thus the reasonableness of the fees, plaintiffs have not established that they have paid all of the defense bills to date. In their reply brief plaintiffs claim that "Santa's has paid and incurred defense expenses of $2,023,874.64 from the date of tender to St. Paul through the end of June 2004." Plaintiffs have not, however, established that all of the outstanding fees have been paid in full. In fact, Barry Hausauer, chief financial officer of Santa's Best, testified in his declaration in support of plaintiffs' instant motion, dated August 24, 2004, that only $1,709,852.48 of the total invoices had actually been paid by plaintiffs. Further, plaintiffs' motion quantifies defenses expenses only through June 30, 2004, although the JLJ action was not settled until December 2004. According to defendant's counsel, defendant has received subsequent requests from plaintiffs to remit reimbursement of invoices from June 2004 through October 2004 totaling over $500,000. It is appears, therefore, that the instant motion does not encompass the entire amount of defenses fees for which plaintiffs seek reimbursement from defendant. The court sees little sense or judicial efficiency in quantifying defense expenses

14

piecemeal. Multiple issues of material fact regarding the amount of fees paid by plaintiffs thus remain in dispute.

Plaintiffs argue that another indicator of the reasonableness of attorneys' fees is that because the insured paid the bills at a time when its ultimate recovery was uncertain, the insured had a market incentive to economize costs and expenses. See Taco Bell, 388 F.3d at 1075-76; Medcom Holding Co. v. Baxter Travenol Labs., Inc., 200 F.3d 518, 521 (7th Cir. 1999). Again, even if the court accepts plaintiffs' legal theory, there are issues of material fact regarding the uncertainty of plaintiffs' recovery at the time they were paying their defense expenses. Zurich agreed on May 23, 2003, to provide a defense in the JLJ action. Plaintiffs assert that it is "undisputed that Zurich's promise to defend has not resulted in anything like a real defense." Plaintiffs' claim, however, is contradicted by the pending Zurich action in which Zurich and plaintiffs are litigating precisely this issue: Zurich's defense obligations and its performance of these obligations. The court cannot see how this question can accurately be characterized as "undisputed." Triable issues of fact thus exist as to whether the defense provided by Zurich removed the uncertainty from plaintiffs' expectations of reimbursement by an insurer.

In addition to triable issues of fact regarding Zurich's performance of its purported defense obligations, defendant has raised issues of fact regarding payments by Zurich to plaintiffs. Plaintiffs admit that they have received at least three payments from Zurich, totaling more than $650,000. According to defendant's counsel, counsel for Zurich asserted on December 16, 2004, in open court during a status hearing in state court in the Zurich action, that Zurich had recently made an additional payment of $140,000 to plaintiffs. Plaintiffs do not address this additional payment in their briefs or declarations, although plaintiffs' sur-reply in

15

support of the motion for partial summary judgment was filed on December 17, 2004. Plaintiffs assert in their sur-reply that "St. Paul is not required to pay amounts already reimbursed," but plaintiffs fail to establish exactly how much they have been reimbursed to date, by whom, and for what expenses or invoices. There is therefore an issue of material fact regarding what amount of plaintiffs' legal fees have been paid and what amount remain un-reimbursed.

A final note is warranted on the cumbersome posture of the instant case, and the ongoing Zurich action in state court. The fact that Zurich has already paid a portion of plaintiffs' expenses raises several troubling issues for the court. First, that Zurich is the subject of plaintiffs' separate, pending declaratory judgment action in state court, but is not a party to this action, raises the specter of inconsistent judgments, especially since defendant St. Paul is a third-party defendant in the Zurich action. Second, that plaintiffs have already received substantial payments from both Zurich and defendant creates the potential for improper double recovery of defense expenses by plaintiffs. Clearly, an insured is not entitled to recover defense costs from one insurer that have already been paid by another. See Illinois Tool Works, Inc. v. The Home Indem. Co., 24 F. Supp. 2d 851, 857 (N.D. Ill. 1998). The need to avoid piecemeal litigation and inconsistent or duplicative rulings is another factor mitigating against summary judgment at this stage in the litigation.

For the reasons stated above, the court denies plaintiffs' motion for partial summary judgment on the ground that the fees incurred are reasonable as a matter of law.

4.  Prejudgment Interest

Because the court denies plaintiffs' motion to quantify defense expenses, it need not reach the issue of prejudgment interest at this time.

5.  Indemnification

Plaintiffs appear to seek a declaratory judgment that defendant is required to indemnify plaintiffs for the settlement reached in the JLJ action, although plaintiffs do not explain how such a request is properly part of the instant motion regarding the payment of defense expenses. The court agrees with defendant that it would be premature to address defendant's indemnity obligation at this stage in the litigation.

The duty to indemnify is much narrower than the duty to defend. TIG Ins. Co. v. Joe Rizza Lincoln-Mercury, Inc., 2002 WL 406982, at *10 (N.D. Ill. 2002), citing Atlantic Mutual Ins. Co. v. American Academy of Orthopaedic Surgeons, 315 Ill. App. 3d. 552, 559 (1st Dist. 2000). The duty to indemnify arises only when the facts alleged actually fall within the coverage of the policy at issue. Id., citing Crum & Forster, 156 Ill.2d 384, 398 (1993). "If an insured settles an underlying claim prior to verdict, it must show that it settled an otherwise covered loss in 'reasonable anticipation of personal liability.'" United Stated Gypsum Co. v. Admiral Ins. Co., 268 Ill. App. 3d 598, 625 (1st Dist. 1994), quoting Westamerica Mortgage Co. v. Tri-County Reports, Inc., 670 F. Supp. 819 (N.D. Ill. 1987).

Plaintiffs have provided no details regarding the settlement of the underlying JLJ action in December 2004, including whether the settlement was paid for any claim actually, not just potentially, within the coverage provided by the St. Paul policy. To the extent that plaintiffs'

17

motion for summary judgment asks the court to find that defendant has a duty to indemnify plaintiffs for the settlement, plaintiffs' motion is denied as defendant's duty to indemnify.

6.  Stay

Defendant has moved to stay the instant case under the abstention doctrine announced in Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976). As stated above, on January 4, 2005, the court denied without prejudice defendant's motion to vacate the court's ruling date on the instant motion and stay the proceedings, but indicated that it would consider defendant's arguments with the motion for partial summary judgment. For the reasons discussed herein, particularly including that all of the parties and the full universe of defense expenses incurred and reimbursed are before the state court in the Zurich action, avoiding piecemeal and duplicative litigation strongly favors staying this case. See Clark v. Lacy, 276 F.3d 382, 387 (7th Cir. 2004); Liebert v. Mazur, 2004 WL 2095666, at *3 (N.D. Ill. Sep. 17, 2004). Accordingly, the court exercises its discretion and grants defendant's motion to stay this action until resolution of the Zurich action.

## CONCLUSION

For the reasons stated herein, plaintiffs' motion for partial summary judgment quantifying defense expenses is denied, and defendant's motion to stay is granted. This matter is set for a hearing on status on April 27, 2005, at 9:00 a.m.

**ENTER:** **January 25, 2005**

_Robert W. Gettleman_
**Robert W. Gettleman**
**United States District Judge**