IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SANTA'S BEST CRAFT, LLC; SANTA'S BEST )
CRAFT; and H.S. CRAFT MANUFACTURING )
CO., )
              )
   Plaintiffs,        )  No. 04 C 1342
 v.              )
              )  Judge Robert W. Gettleman
ST. PAUL FIRE AND MARINE INSURANCE )
COMPANY, )
              )
   Defendant.        )

**MEMORANDUM OPINION AND ORDER**

   Plaintiffs Santa's Best Craft, LLC ("SBC"), Santa's Best Craft ("Santa's Best"), and H.S. Craft Manufacturing Co. ("H.S. Craft")[1] have filed a two-count second amended complaint against defendant St. Paul Fire and Marine Insurance Company ("St. Paul"). That complaint alleges that defendant breached its contractual obligations under a general liability policy (the "St. Paul Policy" or "Policy") by refusing to defend plaintiffs in a lawsuit filed in the Southern District of Ohio, JLJ, Inc. et al. v. Santa's Best Craft, LLC, et al., No. C-3-02-00513 (the "JLJ action"). On July 20, 2004, this court held that defendant had a duty to defend plaintiffs in the JLJ action. Santa's Best Craft LLC et al. v. St. Paul Fire and Marine Ins. Co., 2004 WL 1730332 (N.D. Ill. July 30, 2004) ("Santa's Best I").

---

[1] Santa's Best, a partnership, and H.S. Craft are two principal members of SBC.

1

Defendant has now filed a motion asking this court to reconsider its July 20, 2004, decision. Additionally, the parties have filed cross-motions for summary judgment regarding defendant's duty to reimburse defense expenses of Monogram Licensing, Inc., a licensee of SBC, as well as plaintiffs' settlement expenses. For the reasons discussed below, the court: denies defendant's motion for reconsideration; grants defendant's motion for summary judgment as to the Monogram expenses; grants defendant's motion for summary judgment as to the settlement reimbursement; denies plaintiffs' motion for prejudgment interest; denies defendants' motion to strike plaintiffs' L.R. 56.1 Statement; and denies as moot defendant's motions for summary judgment as to Count II of the second amended complaint and its affirmative defenses.

## FACTS[2]

**Facts Relevant to Defendant's Motion for Reconsideration**

Santa's Best manufactures and distributes strings of Christmas lights under the name "STAY-ON." Defendant issued two Commercial General Liability Coverage policies to Santa's Best: No. CK01204882, for the period of January 1, 2002, through January 1, 2003 (the "2002 policy"), and No. CK0205353, for the period of January 1, 2003, through January 1, 2004 (the "2003 policy"). Both policies included the following "advertising injury" provisions:

> **Advertising Injury Liability.** We'll pay amounts any protected person is legally required to pay as damages for covered advertising injury that:
> - results from the advertising of your products, your work, or your completed work; and
> - is caused by an advertising injury offense committed while this agreement is in effect.

---

[2]These facts are those relevant to the instant motions for reconsideration and summary judgment. For a fuller recitation of the underlying facts, see Santa's Best I, 2004 WL 1730332 (N.D. Ill. Jul. 30, 2004), Santa's Best II, 353 F. Supp. 2d 966 (N.D. Ill. Jan. 25, 2005), and Santa's Best III, unpub., 04 C 1342 (N.D. Ill. Mar. 21, 2006).

*Advertising injury* means injury, other than bodily injury or personal injury, that's caused by an advertising injury offense.

*Advertising injury offense* means any of the following offenses:
- Libel, or slander, in or with covered material.
- Making known to any person or organization covered material that disparages the business, premises, products, services, work, or completed work of others.

…
- Unauthorized use of any advertising idea or advertising material, or any slogan or title, of others in your advertising.

*Advertising* means attracting the attention of others by any means for the purpose of:
- seeking customers or supporters; or
- increasing sales or business.

*Advertising idea* means a manner or style of advertising that others use and intend to attract attention in their advertising…

*Advertising material* means any covered material that:
- is subject to copyright law; and
- others use and intend to attract attention in their advertising.

*Slogan* means a phrase that others use and intent to attract attention in their advertising.

But we won't consider slogan to include a phrase used as, or in, the name of:
- any person or organization, other than you; or
- any business, or any of the premises, products, services, work, or completed work, of any person or organization, other than you.

The 2002 and 2003 policies provided certain exclusions, including:

**Intellectual property.** We won't cover injury or damage or medical expenses that result from any actual or alleged infringement or violation of any of the following rights or laws:
- Copyright.
- Patent.
- Trade dress.
- Trade name.
- Trade secret.
- Trademark.
- Other intellectual property rights or laws.

But we won't apply this exclusion to bodily injury or property that results from your products or your completed work.

Nor will we apply this exclusion to advertising injury that results from the unauthorized use of any:
- copyrighted advertising material;
- trademarked slogan; or
- trademarked title
of others in your advertising.

…

**Material previously made known or used.** We won't cover personal injury or advertising injury that results from:

- any material that was first made known before this agreement begins; or

- any advertising idea or advertising material, or any slogan or title, of others, whose unauthorized use in your advertising was first committed before this agreement begins.

On August 7, 2002, SBC received a cease and desist letter from counsel for JLJ, Inc., stating that SBC "has been marketing a competing [seasonal lighting] product, STAY-ON, in packaging that is virtually identical to the packaging that our client used for several years. Such conduct constitutes trade dress infringement in violation of…the federal Lanham Act…as well as the unfair competition laws of various states."

SBC forwarded JLJ's letter to defendant to obtain coverage under the "advertising injury" portion of the insurance policy. Defendant responded on October 23, 2002, stating that "there is no coverage available for this matter." According to defendant, "[t]he potentially covered claim falls squarely within the Intellectual Property exclusion of the policy." Defendant also stated that the alleged offense "began prior to inception of the St. Paul policy and would be precluded by the Material previously made known exclusion," because the STAY-ON product "was marketed in October, November and December 2001."

On November 5, 2002, JLJ filed a complaint against SBC in the Southern District of Ohio, alleging trademark infringement of the "STAY LIT" mark and trade dress infringement for allegedly similar packaging of Christmas tree lights.[3] According to the JLJ complaint, SBC "copied" at least four "slogans" from the STAY-LIT package: "Patent-pending 'Stay-On' feature keeps bulbs lit"; "New Technology"; "String Stays Lit even if a bulb is loose or missing!"; and

---

[3]The complaint also contained allegations of false designation of origin, false advertising, trademark dilution, and deceptive trade practices under Ohio law.

"worry-free lighting." The references to these slogans were contained in the trade dress claim of the complaint.

On December 23, 2003, defendant refused to defend SBC in the JLJ action, asserting that JLJ's claims were "either outside the coverage grant in the policy or fall squarely within the Intellectual Property exclusion of the policy." Defendant again added that because the first STAY-ON packaging prototypes were shown to customers in October 2001, "any potential advertising injury began prior to inception of St. Paul's coverage" and therefore fell within the "Material previously made known" exclusion.

On September 16, 2003, JLJ filed an amended complaint. The amended complaint named Santa's Best, H.S. Craft, and Monogram Licensing, Inc. ("Monogram"), a licensee of SBC (as discussed below), as additional defendants and added three additional counts: piercing the veil of limited liability, unjust enrichment of Monogram, and civil conspiracy. The allegations relating to trademark, trade dress, and slogans remained essentially the same as they appeared in the original complaint.

On January 13, 2004, defendant reaffirmed its denial of an obligation to defend plaintiffs. On January 28, 2004, a claim representative for defendant told plaintiffs that defendant was investigating the claim but "proceeding under a full reservation of rights, including the right to determine there is no coverage for the claim."

Plaintiffs then filed the instant suit, seeking a declaratory judgment that defendant had a duty to defend plaintiffs in the JLJ action under the "advertising injury" portion of the insurance policies. Defendant disagreed, claiming that the Intellectual Property exclusion in the insurance policies absolved it of its duty to defend, because the allegations regarding "slogans" were only "components of the alleged trade dress infringement," rather than separate claims. Defendant also argued that the "trademarked slogan" exception to the Intellectual Property exclusion did

5

not apply because the JLJ complaints did not allege that the slogans at issue had been trademarked.[4]

On July 20, 2004, this court held that defendant did, in fact, have a duty to defend plaintiffs in the JLJ action. The court, resolving all ambiguities in favor of plaintiff, found that the Intellectual Property exclusion did not apply, and that the allegations regarding slogans could yield a judgment for the JLJ plaintiffs separate and apart from their trade dress claims. The court also found that even if the Intellectual Property exclusion were to apply, the exception for "trademarked slogans" would potentially apply as well, given that the slogans at issue are potentially worthy of trademark protection. The court therefore held that defendant did have a duty to defend plaintiffs in the underlying action, which was settled in December 2004 for $3.5 million. Defendant now asks the court to reconsider that ruling.

**Facts Relevant to Cross-Motions for Summary Judgment**

*Monogram*

On June 7, 2000, Santa's Best entered into a trademark licensing agreement with Monogram. That licensing agreement permitted Santa's Best to market and sell Santa's Best products under the brand name GE (General Electric Co.) and using GE's trademarks. Santa's Best's licensing agreement with Monogram contained an indemnity provision requiring Santa's Best to defend and hold Monogram harmless against various claims made by third parties arising from activities under the license. The agreement also required Santa's Best to purchase and maintain insurance for such potential defense and indemnity.

---

[4]Defendant also contended that the Material Previously Made Known or Used exclusion barred plaintiffs' claims because plaintiffs used the slogan at issue as early as 2001, at which point plaintiff were insured by Zurich American Insurance Company. Plaintiffs argued that that exclusion relied on material extraneous to the underlying JLJ action. This court found that not all slogan infringement allegations in the JLJ complaints related to conduct occurring before 2002, and that the exclusion therefore did not apply. Santa's Best I, 2004 WL 1730332 at *10.

As discussed above, JLJ filed an amended complaint in the underlying suit adding Monogram as a defendant. Plaintiffs agreed to pay for Monogram's defense in the JLJ action and to coordinate defense of that suit with Monogram. Plaintiffs now claim that defendant was obligated to pay for Monogram's defense because Monogram is an indemnitee of plaintiffs. Monogram is not an insured of defendant or included in the St. Paul Policy. The Policy states:

[I]f you have agreed under the same covered contract to defend, or pay for the defense of, an indemnitee against a claim or suit for such injury or damage covered by this agreement, we'll defend the indemnitee against the claim or suit. But we'll do so because of that covered contract only if:
- that indemnitee isn't a protected person for that injury or damage;
- that claim or suit is for injury or damage for which you have assumed the liability of the indemnitee under the covered contract;
- the injury or damage is covered by this agreement;
- the claim or suit is made or brought against you and the indemnitee;
- we are defending you against the claim or suit under this agreement;
- all of our indemnitee defense control and authority requirements are fulfilled; and
- all of our indemnitee defense cooperation and notice requirements are fulfilled.

When we provide that contract liability indemnitee defense coverage, we'll do the following:
- We'll defend the indemnitee even if all of the allegations of the claim or suit are groundless, false, or fraudulent. But we won't have a duty to perform any other act or service.

We'll pay all covered indemnitee defense expenses incurred by us in connection with such claim or suit. Such payments are in addition to the limits of coverage.

According to defendant, plaintiffs never tendered Monogram's defense, even when they tendered their own defense when they filed the second amended complaint in this action. Defendant also contends that Monogram itself never tendered its defense.

*Zurich*

Prior to obtaining coverage from defendant, plaintiff had been insured by Zurich American Insurance Company ("Zurich"). In November 2002, plaintiffs tendered their defense in the underlying JLJ action to Zurich, which initially refused, but subsequently agreed to defend plaintiffs.

In January 2004, plaintiffs filed suit against Zurich in the Circuit Court of Cook County,

7

Illinois, alleging that Zurich had paid only a portion of defense costs and expenses in the JLJ action. Plaintiffs then filed an amended complaint in the Zurich action, assigned to Judge Richard Siebel, alleging that Zurich had paid one-third of plaintiffs' defense expenses to date. In August 2004, Zurich filed a third-party complaint against defendant St. Paul in the Zurich action, seeking contribution from defendant.

On October 25, 2005, the Zurich court held a hearing on the reasonableness of defense costs, in which St. Paul participated as a third-party defendant. Defendant agreed to be bound by Judge Siebel' ruling regarding the reasonableness of fees for plaintiffs' defense in the JLJ action. On December 14, 2005, Judge Siebel entered a judgment of $1,536,134.20 for the Santa's Best plaintiffs. That judgment included $1,265,116.30 for Monogram fees, and $271,017.90 in defense costs for plaintiffs, the latter of which Zurich has paid plaintiffs. Judge Siebel made no ruling as to Zurich's contribution claim against St. Paul. The Zurich court did, however, deny plaintiffs' motion for prejudgment interest, and plaintiffs did not appeal that ruling.

### DISCUSSION

Motion for Reconsideration

Generally, "[t]his Court's opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." Quaker Alloy Casting Co. v. Gulfco Industries, Inc., 123 F.R.D. 282, 288 (N.D. Ill. 1988). Such motions are appropriate only to correct manifest errors of law or fact. Oto v. Metropolitan Life Ins. Co., 224 F.3d 601, 606 (7th Cir. 2002).[5]

This court initially found that the Intellectual Property exclusion did not apply because the allegations regarding the slogans could potentially constitute "[u]nauthorized use of any advertising idea or advertising material, or any slogan or title, of others in your advertising" as

---

[5] See also Gettleman, Robert, "How to Tell a Judge He Screwed Up," ABA Litigation Magazine, Vol. 32, No. 4 (Summer 2006), p. 49.

defined in the insurance policies, and could yield a judgment for JLJ separate and apart from JLJ's trade dress claim. Defendant now argues that JLJ did not claim ownership or an exclusive right to the slogans at issue and cannot claim that they were used without authorization. Defendant argues that for this reason, the Intellectual Property exclusion must apply, and that it has no duty to defend plaintiffs in the underlying action.

Defendant is incorrect that JLJ has never alleged ownership or exclusive rights to the slogans at issue ("Patent Pending 'Stay-On' feature keeps bulbs lit"; "New Technology"; "String Stays Lit even if a bulb is loose or missing!"; and "worry-free lighting"). The original JLJ complaint makes specific reference to "copying" by Santa's Best and alleges that Santa's Best "deliberately copied" their slogans. Defendant notes that these allegations fall within the "trade dress" section of the JLJ complaint, and that trade dress claims fall under the Intellectual Property exclusion. The allegations regarding the slogans, however, are also sufficient to trigger the defense obligation for an "advertising injury offense" caused by the "[u]nauthorized use of any advertising idea of advertising material, or any slogan or title, of others in your advertising."

Defendant makes much of the fact that the slogans on JLJ's packaging are not trademarked or allegedly worthy of trademark protection. As a preliminary note, the court reminds defendant of its earlier determination that this issue is one to be resolved by the court adjudicating the underlying JLJ action. Perhaps more significant, though, is defendant's own definition of "slogan" in the insurance policies under consideration: "a phrase that others use and intend to attract attention in their advertising." Nowhere in that definition does it require a party to trademark a slogan before alleging its unauthorized use by another. Construing all facts in favor of plaintiffs, the court finds that the JLJ could have prevailed on a claim for unauthorized

9

use of its slogans separate and apart from its trade dress claims.[6]  Defendant's motion for reconsideration is denied.

Cross-Motions for Summary Judgment

The parties have filed cross-motions for summary judgment regarding defendant's duty to reimburse Monogram's defense expenses and plaintiffs' settlement expenses.  Under Fed. R. Civ. P. 56(c), a court should grant a motion for summary judgment if "there is no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law."  The burden is on the moving party to identify portions of the pleadings, answers to interrogatories, and affidavits which demonstrate an absence of material fact.  See Celotrex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(c).  When reviewing a summary judgment motion, the court must read the facts in the light most favorable to the non-moving party.  Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255 (1986).  The court's role "is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact."  Doe v. R.R. Donnelley & Sons Co., 42 F.3d 439, 443 (7th Cir. 1994).

Defendant's Duty to Reimburse Monogram's Expenses

According to plaintiffs, defendant owes $1,265,116.30 in unpaid expenses incurred in defending Monogram in the underlying JLJ action.  That amount was entered by Judge Siebel in the Zurich action, but for reasons explained by neither party, Zurich is "not currently responsible" for reimbursing plaintiffs.

---

[6]Plaintiffs also claim that the "unauthorized use of any advertising idea" policy provision and the "copyrighted advertising material" exception to the Intellectual Property exclusion apply in the instant case.  Because the court has upheld its earlier ruling, it need not address these issues here.

Plaintiffs claim that under the St. Paul Policy, defendant has an obligation to reimburse them for the Monogram defense expenses. Plaintiffs contend that they met all requirements set forth in the Policy with the exception of those made impossible by defendant when it refused to defend plaintiff and Monogram in the JLJ action. Defendant disputes plaintiffs' claim and asserts several other arguments as to why it is not obligated to pay for Monogram's expenses. For several reasons, the court agrees with defendant.

First and foremost, defendant is not obligated under the St. Paul Policy to reimburse Santa's Best for the defense of Monogram that was paid for by SBC. The St. Paul Policy is a contract entered into by defendant and Santa's Best. SBC is not a party to that contract. The licensing agreement is a contract between Monogram and SBC, and Santa's Best is not a party to that contract. Any legal obligation defendant had under the St. Paul Policy, therefore, is only to Santa's Best. Plaintiffs attempt to confuse the court, claiming that Santa's Best was "acting on behalf of SBC," and that it was doing so "for bookkeeping convenience." Plaintiffs also try to persuade the court that doing so is simply a "common sense business practice." Plaintiffs provide no legal support whatever for this "common sense" approach to contract interpretation, and the court is not persuaded. As a member of SBC, Santa's Best has no legal obligation for SBC's liabilities. SBC is responsible for its own liabilities, and only SBC entered into the contract with Monogram. For that reason, the court finds that defendant does not owe plaintiffs any reimbursement for Monogram's defense expenses.[7]

Even assuming that defendant had owed SBC some obligation under the St. Paul Policy, it would have owed that duty only if SBC had informed St. Paul of its intention to defend Monogram and to seek reimbursement for those expenses. According to the St. Paul Policy,

---

[7]Plaintiffs claim that this court, in Santa's Best II, found that Santa's had a duty to defend Monogram. Plaintiffs mischaracterize this court's finding. In Santa's Best II, the court merely noted that "Santa's Best license agreement with Monogram contains an indemnity provision requiring Santa's Best to defend and hold Monogram harmless against various claims made by third parties arising from activities under the license." 353 F. Supp. 2d at 969 n.3. The court clarified in Santa's Best III that it "did not hold that St. Paul was responsible for Monogram's defense costs." 04 C 1342, p. 6 n.3.

Santa's Best may "[n]ot assume any financial obligation to pay out any money without [defendant's] consent." Santa's Best voluntarily funded Monogram's defense, without defendant's consent, for more than eight months before informing defendant that it intended to seek reimbursement. Such funding is contrary to the St. Paul Policy.

Finally, plaintiffs cannot seek reimbursement from defendant because, as defendant correctly argues, they cannot meet all requirements for "contract liability indemnitee defense coverage" as set forth in the St. Paul Policy. Specifically, plaintiffs were required to meet all "indemnitee defense control and authority requirements" for Monogram to be entitled to a defense as an indemnitee under the Policy. One of those "control and authority requirements" is that there is "no conflict between [SBC's] interests and those of [Monogram]." As plaintiffs themselves have conceded on numerous occasions, a conflict of interest existed between plaintiffs and Monogram, and for that reason Monogram employed its own counsel in connection with the JLJ action. By plaintiffs' own admissions, they cannot meet the requirements for coverage established by the St. Paul policy. For that reason, as well as the others discussed above, the court denies plaintiffs' motion and grants defendant's motion for summary judgment as to the reimbursement of Monogram's defense expenses.

Defendant's Duty to Reimburse Settlement Payment[8]

---

[8] Defendant has raised numerous policy defenses to its obligation to reimburse plaintiffs. Plaintiffs continue to argue that defendant is estopped from raising any policy defenses because it breached its duty to defend. See, e.g., Supreme Laundry Service, LLC v. Hartford Casualty Ins. Co., 521 F.3d 743, 749 (7th Cir. 2008); Maneikis v. St. Paul Ins. Co., 655 F.2d 818, 821 (7th Cir. 1981) (under Illinois law, estoppel applies when there is a duty to defend and that duty has been breached). What plaintiffs fail to recognize, even though the court is now repeating itself for the third time, is that this court never held that defendant breached its duty to defend. Santa's Best II, 353 F. Supp. 2d 966 (N.D. Ill. Jan. 25, 2005). Because defendant did not breach its duty to defend, it is entitled to raise policy defenses. Plaintiffs also argue that defendant is estopped from raising policy defenses because it did not institute a declaratory judgment action. As this court has noted before, the Seventh Circuit has already rejected an identical argument. When an insurer believes an insured's claim "is beyond the policy's coverage: (1) it may seek a declaratory judgment relieving it of the obligation to defend; (2) it may defend the insured under

After requesting a defense from defendant several times, plaintiffs moved forward without defendant and entered into a settlement agreement with JLJ for $3.5 million. Plaintiffs now seek reimbursement of that settlement payment from defendant. Defendant argues that it is not obligated to reimburse plaintiffs for that settlement payment.

Defendant must reimburse plaintiffs only if it has a duty of indemnification. Plaintiffs attempt to persuade this court that defendant's duty to reimburse plaintiffs is one of defense, not of indemnification, but plaintiffs are incorrect. The cases cited by plaintiffs in support of their various arguments, in fact, make reference to settlement reimbursement as part of the duty of indemnification. See, e.g., United States Gypsum Co. v. Admiral In. Co., 268 Ill. App. 3d 598, 622-23 (1st Dist. 1994) (trial needed to determine whether defendant had duty to indemnify plaintiff in settlement); Guillen, 785 N.E. 2d at 6 (referring to "right to indemnification" after entering into settlement agreement). As both parties well know, the duty to indemnify is much narrower than the duty to defend. TIG Ins. Co. v. Joe Rizza Lincoln-Mercury, Inc., 2002 WL 406982, *10 (N.D. Ill. 2002). In a situation such as the instant case, defendant has a duty to indemnify plaintiffs if plaintiffs can show that they "settled an otherwise covered loss in 'reasonable anticipation of personal liability.'" United States Gypsum, 268 Ill. App. 3d at 625, quoting West America Mortgage Co. v. Tri-County Reports, Inc., 670 F. Supp. 819 (N.D. Ill. 1987). Plaintiffs must therefore show that: (1) they acted reasonably in entering into the settlement; and (2) the claims were otherwise covered by the St. Paul policy.

*Reasonableness*

---

a reservation of rights; or (3) it may do neither and risk a subsequent finding that it breached the duty to defend…." Roman Catholic Diocese v. Maryland Casualty Co., 139 F.3d 561, 565-66 (7th Cir. 1998); Eclipse Manufacturing Co. V. United States Compliance Co., 2007 WL 4259439, *5 Ill. App. Nov. 30, 2007). As this court has previously held in Santa's Best II (353 F. Supp. 2d at 966), defendant availed itself of the second option.

13

Defendant is correct that Illinois courts generally hold that "if an insurer does not breach the insurance contract, the insured must get the insurer's approval before settling the case." In re HA 2003, Inc. v. Federal Ins. Co., 310 B.R. 710, 723 (N.D. Ill. 2004). When an insurer reserves its right to deny coverage, however, "an insured may enter a reasonable settlement without the insurer's consent and without losing coverage." Id. at 725. As discussed, defendant reserved its right to deny coverage to plaintiffs, even after this court held that defendant had a duty to defend plaintiffs in the underlying lawsuit. Defendant is therefore obligated to reimburse plaintiffs for the settlement so long as the settlement payment was reasonable. See also Flodine v. State Farm Ins. Co., 2003 WL 1394977, *9 (N.D. Ill. Mar. 19, 2003) ("an insurer will be liable for the full amount of an insured's settlement, as long as that settlement was made in reasonable anticipation of personal liability and the settled amount was reasonable….").

"The litmus test for deciding whether a settlement was reasonable is 'what a reasonably prudent person in the position of the [insured] would have settled for on the merits of plaintiff's claim." Id. at *10, citing Guillen v. Potomac Ins. Co. of Illinois, 785 N.E. 2d 1, 12 (Ill. 2003). Further, "an insured who settles without notice to the insurer need not prove that it was in fact liable in the [underlying] action, but 'need prove only that by settling, [it] was responding to a reasonable anticipation of personal liability rather than acting as a mere volunteer.'" Flodine, 2003 WL 1394977 at *9, citing St. Paul Fire and Marine Ins. Co. v. Michelin Tire Co., 12 Ill. App. 3d 165, 169 (1973).

In the instant case, plaintiffs have shown that JLJ obtained a preliminary injunction in the underlying suit, which was issued because the court in that case found it reasonably likely that JLJ would prevail on at least some of its claims. Although, as defendant notes, the court found JLJ's trade dress claim to be weaker than its other claims, plaintiffs still had a reasonable belief that JLJ could prevail on its claims at trial. The court therefore finds that plaintiffs were reasonable in entering into a settlement.

*Actual Coverage*

Plaintiffs must also demonstrate that the claims made in the underlying suit are actually covered under the terms of the St. Paul policy. "[T]he existence of coverage is an essential element of the insured's case, and the insured has the burden of proving that his loss falls within the terms of his policy." St. Michael's Orthodox Catholic Church v. Preferred Risk Mutual Co., 146 Ill. App. 3d 107, 109 (Ill. App. 1986).

Defendant attacks the claims in the underlying suit in several ways. First, defendant argues that JLJ's trademark claim is excluded by the Intellectual Property exclusion, discussed at length above. The court agrees. JLJ's trademark claim involved only their "Stay On" mark, on which the lower court found JLJ had a high likelihood of success. The trial court also enjoined Santa's Best from using the "Stay On" mark. As defendant asserts, this trademark claim falls within the Intellectual Property exclusion to the Policy, a fact which plaintiffs do not dispute. For that reason, the trademark claim is not "actually covered" by the St. Paul Policy.

Defendant next addresses JLJ's false advertising claim, which alleged that Santa's Best misrepresented that its light sets "would stay lit even if the bulb is loose or missing." The trial court ruled that the claim appearing on the box of light sets was "literally false," because the light sets did not stay lit when a bulb was loose or missing. Defendant notes that the St. Paul Policy contains an exclusion for "poor quality or performance," which precludes coverage for "advertising injury that result from the failure of your products, your work, or your completed work to conform with advertised quality of performance." Plaintiffs do not dispute that JLJ's false advertising claim falls within this "poor quality or performance" exclusion. That claim is therefore not "actually covered" by the St. Paul policy.

The remaining claim at issue is JLJ's trade dress claim, which may be actually covered by the St. Paul Policy. The court need not reach the issue of whether that claim is actually covered, however, because plaintiffs have not allocated between the settlement amount paid for claims actually covered by the Policy and those not actually covered by the Policy, as required

15

by Illinois law. Plaintiffs are entitled to indemnification only for those claims for which the Policy provides actual coverage – in the instant case, possibly the trade dress claim. Plaintiffs, though, have not established which portion of the $3.5 million settlement is attributable to that claim and which portion is attributable to the claims not actually covered by the Policy, as discussed above. Plaintiffs are required to make such an allocation, and failure to do so requires this court to enter a judgment against them. See, e.g., Fidelity & Cas. Co. of New York v. Mobay Chemical Corp., 252 Ill. App. 3d 992, 1004 (Ill. App. 1992); Illinois School Dist. Agency v. Pacific Ins. Co., 471 F.3d 714, 723 ("[w]here part of a loss resulted...from a peril not covered by insurance, the insured must show the amount of loss that is covered by [its] policy").[9] The court therefore grants defendant's motion for summary judgment as to the settlement reimbursement.

Plaintiffs' Motion for Prejudgment Interest

Once again, plaintiffs ask this court to award prejudgment interest on both reimbursed sums: the settlement payment and the Monogram defense expenses. Because the court has granted defendant's motion for summary judgment as to the settlement payment and the Monogram expenses, plaintiffs cannot recover interest on those sums. Plaintiffs' motion is denied.

---

[9]Plaintiffs ask this court to apply Wisconsin law in deciding this issue, and they argue that under Wisconsin law, an allocation of claims is not required. In support of this claim, plaintiffs cite to United States Fire Ins. Co. v. Green Bay Packaging, Inc., 66 F. Supp. 2d 987 (E.D. Wis. 1999). As defendant notes, however, this case is inapposite. It does not address the allocation of claims for purposes of settlement payments; it makes reference only to the allocation of damages owed after a jury verdict was entered against the insured. Further, the damages were actually allocated between the two claims at issue. The court sees no reason, based on plaintiffs' faulty arguments, to apply Wisconsin law to the instant issue.

Defendant's Motion to Strike Plaintiffs' L.R. 56.1 Statement

Defendant has filed a motion to strike plaintiffs' L.R. 56.1 Statement of Facts, as well of portions of several declarations. The majority of defendant's objections to the L.R. 56.1 Statement concern its length and form. The court recognizes that plaintiffs' L.R. 56.1 Statement is lengthy, but it also acknowledges the size of the record in the instant case. The court is capable of reviewing plaintiffs' statement, as well as dealing with matters of form. As for the declarations presented by plaintiffs, defendant claims that they contain irrelevant and immaterial information. Again, the court is capable of reviewing these declarations and weighing their content.

Finally, defendant argues that references to settlement discussions that took place in the JLJ action are prohibited under Fed. R. Evid. 408. Defendant is mistaken. References to such discussions are inadmissible if they are submitted to prove the validity of the claims in the JLJ action. Plaintiffs, however, do not submit them for that purposes; instead they submit them to support their claims in the instant case. Such references are therefore admissible. Defendant's motion is denied.

Remaining Motions

In addition to the motions addressed above, defendant has also filed motions for summary judgment as to Count II of the second amended complaint and its affirmative defenses. Those motions are denied as moot.

**CONCLUSION**

For the reasons discussed above, the court: denies defendant's motion for reconsideration; grants defendant's motion for summary judgment as to the Monogram expenses; grants defendant's motion for summary judgment as to the settlement reimbursement; denies plaintiffs' motion for prejudgment interest; denies defendants' motion to strike plaintiffs' L.R. 56.1 Statement; and denies as moot defendant's motions for summary judgment as to Count II of

the second amended complaint and its affirmative defenses. Final judgment is entered accordingly.[10]

**ENTER:** September 16, 2008

_____
**Robert W. Gettleman**
**United States District Judge**

---

[10]In light of the hundreds of pages of motions and supporting briefs filed in this case, along with no fewer than four memorandum opinions, the court will not look favorably upon additional motions for reconsideration.

18